Defendant Avon granted an Open-End Mortgage Deed and Security Agreement of the Property in favor of Bankwell, as subsequently modified by those instruments described in paragraph 5 below (as modified, the "$2,687,500 Mortgage"), which $2,687,500 Mortgage is conditioned upon the payment of the $2,687,500 Note according to its tenor, and the performance of certain covenants and conditions contained in the $2,687,500 Note.  A copy of the $2,687,500 Mortgage is attached hereto and incorporated herein pursuant to Practice Book § 10-29 as Exhibit I and incorporated herein.

5.    The $2,687,500 Mortgage was recorded in Volume 781 at Page 503 of the Avon, Connecticut Land Records, which $2,687,500 Mortgage was modified by a First Amendment of Note, Open-End Mortgage and Other Loan Documents dated January 31, 2023, and recorded in Volume 782 at Page 707 of the Avon, Connecticut Land Records, as modified by Second Amendment of Note, Open-End Mortgage and Other Loan Documents dated May 4, 2023, and recorded in Volume 784 at Page 736 of the Avon, Connecticut Land Records.

6.    The Plaintiff is the current holder and owner of the $2,687,500 Note and $2,687,500 Mortgage.

7.    The Defendant Avon is in default pursuant to the terms and conditions of the $2,687,500 Note and $2,687,500 Mortgage for its failure to make payments when due.

11.    The Town of Avon may claim an interest in the Property by virtue of the following:

◇a.  Lien in the amount of $298,013.89 for Avon Property Under the Uniform Relocation Assistance Act dated October 31, 2024, and recorded in Volume 798 at Page 328 of the Avon, Connecticut Land Records;

b.  Lien in the amount of $46,504.24 for Avon Property Under the Uniform Relocation Assistance Act dated January 23, 2025, and recorded in Volume 800 at Page 352 of the Avon, Connecticut Land Records;

c.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 258 of the Avon, Connecticut Land Records;

d.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 259 of the Avon, Connecticut Land Records;

e.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 260 of the Avon, Connecticut Land Records;

f.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024; and recorded in Volume 791, Page 261 of the Avon, Connecticut Land Records;

g.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 262 of the Avon, Connecticut Land Records;

h.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 263 of the Avon, Connecticut Land Records;

i.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 264 of the Avon, Connecticut Land Records;

j.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 265 of the Avon, Connecticut Land Records;

k.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 266 of the Avon, Connecticut Land Records;

◇l.  Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 268 of the Avon, Connecticut Land Records;

m.    Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 269 of the Avon, Connecticut Land Records; and

n.    Tax Lien - $265.23 -in favor of the Town of Avon dated February 5, 2024, and recorded in Volume 791, Page 273 of the Avon, Connecticut Land Records.

Said unpaid claims are prior in right to the Plaintiff's to the $2,687,500 Mortgage and will not be affected by this action.

12.    Avon Place Condominium Association, Inc. may claim an interest in the Property by virtue of a lien for unpaid condominium fees, pursuant to 47-258 of the Connecticut General Statues, for nine (9) months of unpaid condominium fees, which claim is prior in right to the Plaintiff's $2,687,500 Mortgage and will not be affected by this action.

13.    The Defendant Altbanque Lending, LLC may claim an interest in the Property by virtue of (i) an Open-End Mortgage Deed and Security Agreement in the original principal amount of $3,000,000.00 dated November 20, 2024, and recorded in Volume 798, Page 1124 of the Avon, Connecticut Land Records; and (ii) a Collateral Assignment of Leases and Rents in the original principal amount of $3,000,000.00 dated November 20, 2024, and recorded in Volume 798, Page 1160 of the Avon, Connecticut Land Records.  These interests are junior and subsequent in right to the Plaintiff's $2,687,500 Mortgage and will be affected by this action.

14.    The Defendant Avon Place Condominium Association, Inc. may claim an interest in the Property by virtue of a lien for unpaid condominium fees, which lien is not entitled to

priority by virtue of 47-258 of the Connecticut General Statues.  Said interest is junior and

subsequent in right to the Plaintiff's $2,687,500 Mortgage and will be affected by this action.

15.    The Defendant Avon is the record owner of the Property.

16.    The Plaintiff caused a Notice of Lis Pendens ("Notice") to be recorded in the

Avon, Connecticut Land Records and a true and attested copy thereof were served upon the

Defendant Avon as the owner of record of the Property, evidencing the pendency of the instant

action.  A copy of the Notice is attached hereto and incorporated herein pursuant to Practice

Book § 10-29 as Exhibit G and incorporated herein.

WHEREFORE, the Plaintiff hereby respectfully requests:

1. A foreclosure of the $25,312,500 Mortgage and the $2,687,500 Mortgage;

2. Immediate possession of the Property;

3. The appointment of a receiver;

4. A deficiency judgment against the Defendant Avon Place LLC and the Defendant Ahron Rudich;

5. Any and all monies in the possession of any receiver;

6. Attorney's fees;

7. Damages;

8. Interest, default interest and post judgment interest;

9. Costs and expenses; and

10. Such other and further relief as to equity may pertain.

Dated at Hartford, Connecticut, this 13th day of February, 2025.

THE PLAINTIFF,
44 AVONWOOD ROAD CREDIT LLC

By: _____
Houston Putnam Lowry
Ford & Paulekas, LLP
280 Trumbull Street
Hartford, CT  06103
(860) 527-0400
Juris No.  100342
Its Attorneys

RETURN DATE: MARCH 11, 2025 : JUDICIAL DISTRICT OF HARTFORD
:
:
44 AVONWOOD ROAD CREDIT LLC : AT HARTFORD
:
:
V. :
:
AVON PLACE LLC, AHRON RUDICH, :
ALTBANQ LENDING LLC AND :
AVON PLACE CONDOMINIUM :
ASSOCIATION, INC. : FEBRUARY 13, 2025

## STATEMENT IN RE: AMOUNT IN DEMAND

The Plaintiff states that the amount in demand is more than $15,000.00, exclusive of

interest and costs.

THE PLAINTIFF,
44 AVONWOOD ROAD CREDIT LLC

By:_____
Houston Putnam Lowry
Ford & Paulekas, LLP
280 Trumbull St
Hartford, CT 06103
(860) 527-0400
Juris No. 100342
Its Attorneys

G:\2351 Constitution Real Estate, LLC\024 44 Avonwood Road Credit, LLC v. Avon Place, LLC\Litigation\Complaint.01.doc

13

DOCKET NO.: HHD-CV25-6199961-S    :   JUDICIAL DISTRICT OF HARTFORD
   :
   :
44 AVONWOOD ROAD CREDIT LLC    :   AT HARTFORD
   :
   :
V.    :
   :
AVON PLACE LLC, AHRON RUDICH,    :
ALTBANQ LENDING LLC AND    :
AVON PLACE CONDOMINIUM    :
ASSOCIATION, INC.    :   MARCH 20, 2025

## DISCLOSURE OF EXHIBITS TO COMPLAINT

Pursuant to Practice Book §10-29 *et seq.*, Plaintiff 44 Avonwood Road Credit LLC attaches a copy of its exhibits to the complaint.

THE PLAINTIFF,
44 AVONWOOD ROAD CREDIT LLC

By:
Houston Putnam Lowry
Ford & Paulekas, LLP
280 Trumbull St.
Hartford, CT 06103
(860) 527-0400
Juris No. 100342
Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent on this 20th day of March 2025 to:

Louis Joseph Dagostine, Esq.
Ciulla & Donofrio LLP
127 Washington Avenue
P.O. Box 291
North Haven, CT  06473
Ldagostine@cd-LLP.com

Houston Putnam Lowry, Esq.

G:\2351 Constitution Real Estate, LLC\024 44 Avonwood Road Credit, LLC v. Avon Place, LLC\Litigation\Disclosure of Exhibits to Complaint.doc

# EXHIBIT A

### PROMISSORY NOTE

**Amount:** US $25,312,500.00

**Date of this Note:**  September 30, 2022

    **FOR VALUE RECEIVED**, the undersigned, **AVON PLACE LLC**, a Connecticut limited liability company, with a notification address of 710 Avenue L, Brooklyn, New York 11230-5112 (herein referred to as the **"Borrower"**), promises to pay to the order of **BANKWELL BANK**, 258 Elm Street, New Canaan, Connecticut 06840 (the **"Lender"**), the principal sum in the amount of up to TWENTY FIVE MILLION THREE HUNDRED TWELVE THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($25,312,500.00) plus interest (the "**Loan**"), payable at the rate and in the manner provided in Sections 1 and 2 of this Note, together with all taxes assessed upon said sum against the Holder of this Note (the **"Holder"**) and any costs and expenses, including reasonable documented attorneys' fees, incurred in the collection of this Note or in protecting or sustaining the lien of the loan documents executed by Borrower and delivered to Lender in connection with the Loan (the **"Loan Documents"**).

## 1.    INTEREST RATE

    The outstanding principal balance of this Note shall bear a fixed interest rate per annum equal to 4.95%, on the unpaid balance from time to time outstanding until the Maturity Date (as hereinafter defined).

## 2.    REPAYMENT.

    Interest only payments shall be due and payable in arrears commencing November 1, 2022 and on the first day of each month thereafter until October 1, 2023.  Thereafter, principal and interest shall be payable in arrears in equal consecutive monthly installments of One Hundred Thirty Six Thousand Two Hundred Thirty Three and 42/100 Dollars ($136,233.42), which payments are based on a hypothetical thirty (30) year term, commencing November 1, 2023, and continuing on the same day of each month thereafter until October 1, 2025 (the **"Maturity Date"**) when all then unpaid principal and interest shall be due and payable.

    The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

    Monthly repayment of the Loan may be made from the Borrower's operating account at the Lender and the Borrower hereby authorizes the Lender to automatically debit Borrower's account on each payment due date in the amount of Borrower's monthly installment payment.

    All payments of principal and interest shall be made in lawful money of the United States which shall be legal tender in payment of all debts at the time of payment.  Any check, draft or money order remitted in settlement of this Note, may be handled for collection in accordance with the practice of the collecting bank or banks and shall not be deemed payment until the money is actually received by the Holder of this Note.

3.    **USE OF LOAN PROCEEDS.**

A.    The Borrower covenants and agrees that the proceeds of the Loan shall be used to for the acquisition of certain condominium units located in the Town of Avon, County of Hartford, State of Connecticut, more particularly described as Unit Nos. 101A, 102A, 103A, 104A, 105A, 106A, 107A, 108A, 109A, 110A, 111A, 112A, 113A, 114A, 116A, 117A, 118A, 120A, 121A, 202A, 203A, 204A, 205A, 206A, 207A, 208A, 209A, 210A, 211A, 212A, 213A, 214A, 215A, 216A, 217A, 218A, 219A, 220A, 221A, 301A, 302A, 303A, 304A, 305A, 306A, 307A, 308A, 310A, 311A, 312A, 313A, 314A, 316A, 317A, 318A, 319A, 320A, 101B, 102B, 103B, 104B, 105B, 106B, 107B, 108B, 109B, 111B, 112B, 114B, 115B, 116B, 117B, 118B, 120B, 121B, 201B, 202B, 204B, 205B, 206B, 207B, 208B, 209B, 210B, 212B, 213B, 214B, 215B, 216B, 217B, 218B, 219B, 220B, 221B, 301B, 302B, 303B, 304B, 305B, 306B, 307B, 308B, 309B, 311B, 312B, 313B, 314B, 315B, 316B, 317B, 318B, 320B, 101C, 102C, 103C, 105C, 106C, 107C, 108C, 109C, 110C, 111C, 112C, 113C, 114C, 115C, 116C, 117C, 118C, 119C, 120C, 121C, 201C, 202C, 204C, 205C, 206C, 207C, 208C, 209C, 210C, 211C, 212C, 214C, 216C, 217C, 218C, 219C, 220C, 221C, 301C, 303C, 305C, 306C, 307C, 311C, 313C, 316C, 317C, 318C, 319C, 320C, 101D, and 102D in the Declaration of Condominium by Arnold C. Greenberg, Trustee, dated November 12, 1979, and recorded in Volume 115, Page 505 of the Avon Land Records, which Declaration has been amended by the Amendment to Declaration of Condominium By Arnold C. Greenberg, Trustee Regarding Avonwood Condominium dated October 22, 1992, and recorded in Volume 267, Page 726 of the Avon Land Records (collectively, the **"Property"**).

B.    The Borrower agrees that no part of the Loan proceeds will be used, in whole or in part, for the purpose of purchasing or carrying any "margin security" as such term is defined in Regulations promulgated by the Board of Governors of the Federal Reserve System.

4.    **COVENANTS.**

A.    Debt Service Coverage Ratio:  The Borrower shall maintain a Debt Service Coverage Ratio of not less than 1.25 to 1, measured annually, commencing with the amortizing Loan term. "**Debt Service Coverage Ratio**" or "**DSCR**" is calculated by taking the Net Operating Income of the Property for the period in question divided by the aggregate principal and interest payable on the Loan for the same period.  "**Net Operating Income**" means all actual income from the Property minus all operating expenses (including a reasonable management fee) and reasonable reserves for capital repairs and replacements.

B.    Subordinate Financing:  No other financing will be permitted throughout the term of the Loan without Lender's prior consent.

C.    Operating Account:  The Borrower shall be required to maintain its operating account for the Property and tenant security deposits with the Lender for the term of the Loan. The Borrower's failure to establish and maintain the operating account shall constitute an Event of Default under the Loan.

5.    **APPLICATION OF PAYMENTS.**

Payments will be applied first to fully pay costs and expenses incurred by the Holder in collecting this Note or in sustaining and/or enforcing any security granted to secure this Note, if

any, then to fully pay any outstanding late charges or prepayment fees, then to fully pay accrued interest and the remainder will be applied to principal.

## 6.    LATE CHARGE.

Maker shall pay the Holder a late charge of five percent (5%) of any monthly installment not received by the Holder within ten (10) days after the installment is due, to cover the additional expenses involved in handling such overdue installment. This charge shall be in addition to, and not in lieu of, any other remedy the Holder may have and is in addition to any reasonable fees and documented charges of any agents or attorneys which the Holder is entitled to employ in the event of default hereunder, whether authorized herein or by law. Maker will pay this late charge promptly but only once for each late payment.

## 7.    DEFAULT.

Upon the occurrence and during the continuance of any Event of Default (as hereinafter defined), the entire outstanding balance of this Note shall, at the option of the Holder, become immediately due and payable without notice or demand, and in any event, interest shall immediately accrue at a "default rate" which means the rate of interest which is Eighteen (18%) percent per annum, but in no event to exceed the maximum rate allowed by law.

An "**Event of Default**" is defined as the occurrence of any one or more of the following:

A.     the failure to pay the Loan in full upon maturity, or the failure to pay any other installment of principal and/or interest, or any other sum due hereunder upon maturity or within ten (10) days from the date when such installment is otherwise due and payable

B.     default in the performance of any of the other conditions or stipulations of this Note for thirty (30) days after written notice thereof from the Holder;

C.     the occurrence of any Event of Default (as defined therein) under any of the Loan Documents executed and delivered by in the Loan Agreement;

D.     a default beyond any applicable notice or cure period in the payment or performance of any other obligation of Maker (or any guarantor of this Note) to the Lender;

E.     The occurrence of a default (beyond the expiration of all applicable notice, grace and cure periods) under, or demand for the payment of, any other note or obligation secured by a mortgage on or security interest in any portion of the Property; or

F.     The death, or incapacity, or the attempted revocation or termination by any Ahron Rudich or any additional or replacement guarantor (the "**Guarantor**") of their guaranty of the Loan unless such guarantor is replaced in accordance with this **Section 7**. Borrower shall be permitted to substitute a replacement guarantor and no Event of Default shall be deemed to have occurred hereunder, provided that each of the following terms and conditions are satisfied: (a) within ninety (90) days after the occurrence of such death or incapacity, Borrower delivers to Lender notice of its intent to substitute such guarantor and, concurrently therewith, gives Lender all such information concerning the proposed substitute guarantor as Lender may reasonably require; (b) the replacement guarantor is satisfactory to Lender in its reasonable discretion; and (c) within fifteen (15) days after receipt of the applicable documents, such guarantor executes and delivers to Lender a

3

replacement guaranty agreement and a replacement environmental indemnity agreement in each case in form and substance as delivered to Lender at the Loan closing or as otherwise deemed reasonably acceptable to Lender.

8.    **PREPAYMENT.**

The Borrower may prepay the Loan in full at any time upon payment of a prepayment fee as follows: (i) commencing on the date hereof, and continuing until (but not including) the first (1st) Anniversary Date, the prepayment fee shall be three percent (3%) of the principal prepayment; (ii) commencing on the first (1st) Anniversary Date and continuing until the Maturity Date, the prepayment fee shall be one percent (1%) of the principal prepayment. Notwithstanding the foregoing, there shall be no prepayment fee due on any principal prepayments made within the ninety (90) day period prior to the Maturity Date. As used herein, the term **"Anniversary Date"** shall mean October 1, 2022.

All prepayments of principal shall be accompanied by and applied first to the payment of costs and expenses, then to unpaid late charges, then to accrued and unpaid interest and the balance on account of the unpaid principal. Any partial prepayments shall not affect the Maker's obligation to make the regular installments required hereunder until the Loan is fully paid.

9.    **PREJUDGMENT REMEDY WAIVER.**

**BORROWER ACKNOWLEDGES AND REPRESENTS THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND THAT THE PROCEEDS OF THE LOAN SHALL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. BORROWER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER HEREBY VOLUNTARILY WAIVE ANY RIGHTS TO NOTICE OR HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES AS NOW OR HEREAFTER AMENDED, OR AS OTHERWISE REQUIRED BY ANY LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE HOLDER MAY ELECT TO USE OR WHICH IT MAY AVAIL ITSELF. THE BORROWER FURTHER WAIVES, TO THE GREATEST EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISEMENT, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS. THE BORROWER FURTHER WAIVES ANY REQUIREMENTS THAT LENDER OBTAIN A BOND OR ANY SIMILAR DEVICE IN CONNECTION WITH THE EXERCISE OF ANY REMEDY OR THE ENFORCEMENT OF ANY RIGHT HEREUNDER OR PERTAINING TO THE LOAN.**

10.    **WAIVER OF RIGHT TO TRIAL BY JURY.**

**BORROWER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER (COLLECTIVELY THE "MAKER") WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE OR ANY CONDUCT RELATING TO THE ADMINISTRATION OR ENFORCEMENT OF THIS NOTE OR ARISING FROM THE DEBTOR/CREDITOR RELATIONSHIP OF THE PARTIES HERETO. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE MAKER, AND THE MAKER ACKNOWLEDGES THAT LENDER HAS NOT MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE MAKER ACKNOWLEDGES THAT THIS WAIVER MAY DEPRIVE MAKER OF AN IMPORTANT RIGHT AND THAT SUCH WAIVER HAS KNOWINGLY AND**

4

VOLUNTARILY BEEN AGREED TO BY THE MAKER.    THE MAKER FURTHER ACKNOWLEDGES THAT MAKER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED BY MAKER AND THAT MAKER HAS HAD THE TIME TO DISCUSS THIS WAIVER WITH HIS LEGAL COUNSEL.

11.    **DELAY IN ENFORCEMENT.**

The liability of Maker and any subsequent endorser, guarantor or other accommodation maker under this Note is unconditional and shall not be affected by an extension of time, renewal, waiver or any other modification whatsoever, granted or consented to by the Holder.  Any failure by the Holder to exercise any right it may have under this Note is not a waiver of the Holder's right to exercise the same or any other right at any other time.

12.    **CHANGES.**

No agreement by the Holder to change, waive or release the terms of this Note will be valid unless it is in writing and signed by Maker and the Holder.

13.    **WAIVER.**

**MAKER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER WAIVES PRESENTMENT, DEMAND FOR PAYMENT AND NOTICE OF DISHONOR.**

14.    **CONNECTICUT LAW.**  The provisions of this Note shall be governed by the laws of the State of Connecticut.

15.    **JURISDICTION AND VENUE.**

Any action or proceeding to enforce or defend any rights under this Note or under any agreement, instrument or other document contemplated hereby or related hereto, directly or indirectly related to or connected with the Loan or the administration or enforcement thereof; or arising from the debtor/creditor relationship of the Maker and the Lender shall be brought only in the Superior Court of Connecticut or the United States District Court for the District of Connecticut. The parties hereto agree that any proceeding instituted in either of such courts shall be of proper venue, that such courts shall have personal jurisdiction over the parties and that any and all pleadings, summons, motions and other process in such proceeding shall be fully and effectively served when transmitted by United States Mail (registered or certified), postage and registry fees prepaid.  Any judgment or decree obtained in any such action or proceeding may be filed or enforced in any other appropriate court.

16.    **RIGHT OF SET-OFF.**

Upon the occurrence of any Event of Default, the Lender shall have the right to set-off against the Loan all of Maker's deposits, credit and property now or hereafter in the possession or control of the Lender, its agent or bailee or in transit to it.  The Lender may apply the same, or any part thereof, to the Loan without prior notice or demand.

DVD/232919/0679/1854445v3
09/29/22-HRT/TCR

### 17.  INVALIDITY.

If any provision of this Note or the application of any provision to any person or circumstance shall be invalid or unenforceable, neither the balance of this Note nor the application of the provision to other persons or circumstances shall be affected.

### 18.  JOINT AND SEVERAL LIABILITY, BINDING EFFECT.

This Note and all obligations hereunder, to the extent signed by more than one party, shall be the joint and several obligations of each Maker, and any endorsers or other accommodation makers, and each provision hereof shall apply to each and all jointly and severally. The provisions of this Note are binding on the successors and assigns of Maker and shall inure to the benefit of the Lender, its successors and assigns and to subsequent Holders of this Note.

### 19.  INTERPRETATION.

Captions and headings used in this Note are for convenience only. The term **"Maker"** and any pronoun referring thereto as used herein shall be construed in the masculine, feminine or neuter as the context may require. The singular includes the plural and the plural includes the singular. **"Any"** means any and all.

### 20.  RECOVERY OF PAYMENT.

To the extent the Loan is reduced or paid in full by reason of any payment to the Lender by any subsequent accommodation maker, endorser or guarantor, and all or any part of such payment is rescinded, avoided or recovered from the Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy or reorganization of such accommodation maker, endorser or guarantor, the amount of such rescinded, avoided or refused payment shall be added to or, in the event the Note has been previously-paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the Loan and all terms and provisions herein shall thereafter apply to same.

### 21.  NO VIOLATIONS OF GOVERNMENTAL PROHIBITIONS.

Neither the making of the Loan, nor the receipt of Loan proceeds by Borrower, violates any Law applicable to Borrower, including, without limitation, any of the Terrorism Laws. Neither the making of the Loan, nor the receipt of Loan proceeds by Borrower (a **"Principal Party"**) violates any of the Terrorism Laws applicable to any of the Principal Parties. To Borrower's best knowledge, no holder of any direct or indirect equitable, legal or beneficial interest in Borrower or any Principal Party is the subject of any of the Terrorism Laws. No portion of the Loan proceeds will be used, disbursed or distributed by Borrower for any purpose, or to any Person, directly or indirectly, in violation of any Law including, without limitation, any of the Terrorism Laws. As used in this Agreement, the term **"Terrorism Laws"** means Executive Order 13224 issued by the President of the United States of America, the Terrorism Sanctions Regulations (Title 31 Part 595 of the U.S. Code of Federal Regulations), the Terrorism List Governments Sanctions Regulations (Title 31 Part 596 of the U.S. Code of Federal Regulations), and the Foreign Terrorist Organizations Sanctions Regulations (Title 31 Part 597 of the U.S. Code of Federal Regulations), and all other present and future federal, state and local laws, ordinances, regulations, policies and any other requirements of any Governmental Agency (including, without limitation, the United

DVD/232919/0679/1854445v3
09/29/22-HRT/TCR

States Department of the Treasury Office of Foreign Assets Control) addressing, relating to, or attempting to eliminate, terrorist acts and acts of war, each as hereafter supplemented, amended or modified from time to time, and the present and future rules, regulations and guidance documents promulgated under any of the foregoing, or under similar laws, ordinances, regulations, policies or requirements of other States or localities.

[Remainder of page intentionally left blank.]

DVD/232919/0679/1854445v3
09/29/22-HRT/TCR

## 22.    COMPLIANCE WITH GOVERNMENTAL PROHIBITIONS.

No portion of the Loan proceeds will be used, disbursed or distributed by Borrower for any purpose, or to any Person, in violation of any Law including, without limitation, any of the Terrorism Laws. Borrower shall provide Lender with immediate written notice (a) of any failure of any of the representations and warranties set forth in **Section 21** of this Note to be true, correct and complete in all respects at any time, or (b) if Borrower obtains knowledge that Borrower, or any holder at any time of any direct or indirect equitable, legal or beneficial interest in Borrower is the subject of any of the Terrorism Laws. Borrower shall immediately and diligently take, or cause to be immediately and diligently taken, all necessary action to comply with all Terrorism Laws and to cause the representations and warranties set forth in **Section 21** of this Note to be true, correct and complete in all respects.

**BORROWER:**

**AVON PLACE LLC**

By:_____

Name:

Its:

## EXHIBIT B

### NON-REVOLVING LINE OF CREDIT NOTE

**Amount:** US $2,687,500.00

**Date of this Note:** October 21, 2022

      **FOR VALUE RECEIVED**, the undersigned, **AVON PLACE LLC,** a Connecticut limited liability company with its principal place of business and mailing address at 710 Avenue L, Brooklyn, New York 11230-5112 (the **"Maker"** or **"Borrower"**), promises to pay to the order of **BANKWELL BANK,** 258 Elm Street, New Canaan, Connecticut 06840 (the **"Lender"**), the principal sum of up to Two Million Six Hundred Eighty-Seven Thousand Five Hundred and 00/100 Dollars ($2,687,500.00) (the **"Loan"**), or such much thereof that may be advanced hereunder as provided in accordance with the Loan Agreement (defined below), not to exceed a maximum outstanding at any time of $2,687,500.00, plus interest, payable at the rate and in the manner provided in Sections 1.1 and 2.1 of this Note, together with all taxes assessed upon said sum against the holder of this Note (the **"Holder"**) and any costs and expenses, including reasonable attorneys' fees, incurred in the collection of this Note or in protecting or sustaining the lien of the same.

      This Note has been issued by Borrower in accordance with and pursuant to the terms of the Commercial Non-Revolving Loan Agreement dated of even date herewith between the Borrower and the Lender (the **"Loan Agreement"**) and is the "Note" referred to therein. This Note evidences borrowings made from time to time pursuant to the terms of the Loan Agreement, and this Note shall remain in full force and effect notwithstanding that the principal balance may be reduced to zero from time to time. The Lender and any holder hereof is entitled to the benefits of the Loan Agreement and other Loan Documents (as defined in the Loan Agreement) and may enforce the agreements of the Borrower contained therein, and the Lender may exercise the respective remedies provided for thereby or otherwise available in respect thereof. Without limiting the foregoing, this Note is secured by all collateral granted to or held by the Lender from time to time under or pursuant to the Loan Documents.

      This Note evidences a revolving line of credit. Advances under this Note (each, a **"Loan Advance"**) may be requested only in writing by Borrower as provided in this paragraph and the provisions of Section 3(i) below. All communications, instructions, or directions to Lender are to be directed to Lender's office as shown in the introductory paragraph of this Note. Borrower agrees to be liable to the Lender for all sums either: (A) advanced in accordance with the instructions of an authorized person of Borrower or (B) requested by Borrower as a Loan Advance and credited to any of Borrower's accounts with Lender. All Loan Advances made hereunder shall be: (i) recorded in an account on Lender's books in which shall also be recorded accrued interest on Loan Advances, payments on such Loan Advances, and other appropriate debits and credits in connection with this Note, and such account absent manifest error shall constitute prima facie evidence of the information contained therein; (ii) deemed to be a loan to Borrower which is repayable together with interest from the date each said Loan Advance is made by Lender until the date of repayment at the interest rate set forth herein; and (iii) subject to all the terms and conditions contained herein. Notwithstanding the foregoing, Lender will have no obligation to advance funds under this Note if: (A) an Event of Default is then occurring hereunder or under any of the other Loan Documents; (B) Borrower ceases doing business or is insolvent; (C) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guarantee of this Note or any other loan with

Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized hereunder.

## 1.1    INTEREST RATE.

Loan Advances requested by the Borrower hereunder shall bear interest at the fixed rate of four and ninety-five hundredths percent (4.95%) per annum (the "**Fixed Rate**") payable monthly in arrears.

## 2.1    REPAYMENT.

Interest only on the outstanding principal balance of the Loan shall be due and payable monthly in arrears commencing November 1, 2022 and continuing on the same day of each month thereafter until October 1, 2025 (the **"Maturity Date"**), when all the then unpaid principal and accrued interest shall be due and payable.

The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

All payments of principal and interest shall be made in lawful money of the United States which shall be legal tender in payment of all debts at the time of payment. Any check, draft or money order remitted in settlement of this Note, may be handled for collection in accordance with the practice of the collecting bank or banks and shall not be deemed payment until the money is actually received by the Holder of this Note.

## 2.2    USE OF LOAN PROCEEDS.

(a)    The Borrower covenants and agrees that the proceeds and all advances under the Loan shall be used to acquire the remaining twenty-four (24) condominium units (each, a **"Unit"**) located in the Town of Avon, County of Hartford, State of Connecticut, more particularly described in the Declaration of Condominium by Arnold C. Greenberg, Trustee, dated November 12, 1979, and recorded in Volume 115, Page 505 of the Avon Land Records, which Declaration has been amended by the Amendment to Declaration of Condominium By Arnold C. Greenberg, Trustee Regarding Avonwood Condominium dated October 22, 1992, and recorded in Volume 267, Page 726 of the Avon Land Records (the **"Property"**).

(b)    The Borrower agrees that no part of the Loan proceeds will be used, in whole or in part, for the purpose of purchasing or carrying any "margin security" as such term is defined in Regulations promulgated by the Board of Governors of the Federal Reserve System.

(c)    This Loan is a commercial non-revolving line of credit. Any amounts advanced hereunder, if repaid before the expiration date of this line of credit, permanently reduces the remaining funds available for advance under the Loan.

## 3.    COVENANTS.

(i)    Loan to Cost: The Loan to cost ratio for each separate Loan Advance shall not exceed seventy-five percent (75%) of the cost of each Unit.

DVD/232919/0679/1859819v2
10/20/22-HRT/DVD

(ii)    Loan to Value: The Borrower shall maintain a Loan to Value ratio for each Loan Advance of seventy-five percent (75%) at the "as is" value of each unit as determined by an appraisal delivered to Lender.

(iii)    Subordinate Financing: No other financing, will be permitted as long as any portion of the Loan remains unpaid without prior Lender's consent, other than indebtedness in the ordinary course of business.

(iv)    Operating Account: The Borrower will be required to maintain its operating account for the Property and the security deposit account for the Property with the Lender throughout the term of the Loan.

(v)    Debt Service Coverage Ratio:   The property securing each Loan Advance hereunder shall maintain a Debt Service Coverage Ratio of not less than 1.25 to 1, measured annually commencing December 31, 2022.  **"Debt Service Coverage Ratio"** is calculated by taking the Net Operating Income of the property for the period in question divided by assumed amortizing payments on the Loan Advance allocated to such property, which payments are based on a hypothetical thirty (30) year amortization for the same period.  **"Net Operating Income"** means all actual income from the Property minus all operating expenses (including a reasonable management fee) and reasonable reserves for capital repairs and replacements.

## 4.    APPLICATION OF PAYMENTS.

Payments will be applied first to fully pay costs and expenses incurred by the Lender in collecting this Note or in sustaining and/or enforcing any security granted to secure this Note, if any, then to fully pay any outstanding late charges or prepayment fees, then to fully pay accrued interest and the remainder will be applied to principal.

## 5.    LATE CHARGE.

Maker shall pay the Holder a late charge of five percent (5%) of any monthly installment not received by the Holder within ten (10) days after the installment is due, to cover the additional expenses involved in handling such overdue installment.  This charge shall be in addition to, and not in lieu of, any other remedy the Lender may have and is in addition to any reasonable fees and charges of any agents or attorneys which the Lender is entitled to employ in the event of default hereunder, whether authorized herein or by law.  Maker will pay this late charge promptly but only once for each late payment.

## 6.    DEFAULT.

Upon the occurrence of any Event of Default (as hereinafter defined) beyond the expiration of any applicable notice and cure periods, the entire outstanding balance of this Note shall, at the option of the Holder, become immediately due and payable without notice or demand, and in any event, interest shall immediately accrue at a "default rate" which means the rate of interest which is eighteen percent (18%) per annum, but in no event to exceed the maximum rate allowed by law.

An **"Event of Default"** is defined as any one of the following: (i) default in the payment of any interest, principal or other amounts due hereunder during the term of this Note and such default continuing for a period of ten (10) days after the due date thereof; (ii) default in the

DVD/232919/0679/1859819v2
10/20/22-HRT/DVD

payment of any principal or other amounts due at the end of the term of this Note; (iii) default in the performance of any of the other conditions or stipulations of this Note for thirty (30) days after written notice thereof from the Lender; (iv) the occurrence of any Event of Default as defined in the Loan Agreement; or (v) a default beyond any applicable notice or cure period in the payment or performance of any other obligation of Maker (or any guarantor of this Note) to the Lender.

## 7.    PREPAYMENT FEE.

The outstanding principal balance under the Loan may be prepaid in full at any time upon payment of a prepayment fee as follows:  from the date hereof and continuing until (but not including) the first (1st) Anniversary Date, the prepayment fee shall be three percent (3%) of the principal prepayment.  Thereafter, until the Maturity Date, the prepayment fee shall be one percent (1%) of the principal prepayment.  Notwithstanding the foregoing, there shall be no prepayment fee due on any principal payments made within the ninety (90) day period prior to the Maturity Date.  The term **"Anniversary Date"** as used herein shall mean October 1, 2022.

All prepayments of principal shall be accompanied by and applied first to the payment of costs and expenses, then to unpaid late charges, then to accrued and unpaid interest and the balance on account of the unpaid principal.  Any partial prepayments shall not affect the Maker's obligation to make the regular installments required hereunder until the Loan is fully paid.  If the Loan shall be accelerated for any reason whatsoever, the applicable prepayment fee in effect as of the date of such acceleration shall be paid.

## 8.    PREJUDGMENT REMEDY WAIVER.

**MAKER ACKNOWLEDGES AND REPRESENTS THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND THAT THE PROCEEDS OF THE LOAN SHALL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. MAKER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER HEREBY VOLUNTARILY WAIVE ANY RIGHTS TO NOTICE OR HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES AS NOW OR HEREAFTER AMENDED, OR AS OTHERWISE REQUIRED BY ANY LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE HOLDER MAY ELECT TO USE OR WHICH IT MAY AVAIL ITSELF. THE MAKER FURTHER WAIVES, TO THE GREATEST EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISEMENT, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS. THE MAKER FURTHER WAIVES ANY REQUIREMENTS THAT LENDER OBTAIN A BOND OR ANY SIMILAR DEVICE IN CONNECTION WITH THE EXERCISE OF ANY REMEDY OR THE ENFORCEMENT OF ANY RIGHT HEREUNDER OR PERTAINING TO THE LOAN.**

## 9.    WAIVER OF RIGHT TO TRIAL BY JURY.

**MAKER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER (COLLECTIVELY THE "MAKER") WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE OR ANY CONDUCT RELATING TO THE ADMINISTRATION OR ENFORCEMENT OF THIS NOTE OR ARISING FROM THE DEBTOR/CREDITOR RELATIONSHIP OF THE PARTIES HERETO.  THIS WAIVER IS**

DVD/232919/0679/1859819v2
10/20/22-HRT/DVD

KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE MAKER, AND THE MAKER ACKNOWLEDGES THAT LENDER HAS NOT MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  THE MAKER ACKNOWLEDGES THAT THIS WAIVER MAY DEPRIVE MAKER OF AN IMPORTANT RIGHT AND THAT SUCH WAIVER HAS KNOWINGLY AND VOLUNTARILY BEEN AGREED TO BY THE MAKER.  THE MAKER FURTHER ACKNOWLEDGES THAT MAKER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED BY MAKER AND THAT MAKER HAS HAD THE TIME TO DISCUSS THIS WAIVER WITH HIS LEGAL COUNSEL.

## 10.  DELAY IN ENFORCEMENT.

The liability of Maker and any subsequent endorser, guarantor or other accommodation maker under this Note is unconditional and shall not be affected by an extension of time, renewal, waiver or any other modification whatsoever, granted or consented to by the Holder. Any failure by the Holder to exercise any right it may have under this Note is not a waiver of the Holder's right to exercise the same or any other right at any other time.

## 11.  CHANGES.

No agreement by the Lender to change, waive or release the terms of this Note will be valid unless it is in writing and signed by Maker and the Lender.

## 12.  WAIVER.

MAKER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER WAIVES PRESENTMENT, DEMAND FOR PAYMENT AND NOTICE OF DISHONOR.

## 13.  CONNECTICUT LAW.

The provisions of this Note shall be governed by the laws of the State of Connecticut.

## 14.  JURISDICTION AND VENUE.

Any action or proceeding to enforce or defend any rights under this Note or under any agreement, instrument or other document contemplated hereby or related hereto; directly or indirectly related to or connected with the Loan or the administration or enforcement thereof; or arising from the debtor/creditor relationship of the Maker and the Lender shall be brought only in the state courts of Connecticut or the United States District Court for the District of Connecticut.  The parties hereto agree that any proceeding instituted in either of such courts shall be of proper venue, that such courts shall have personal jurisdiction over the parties and that any and all pleadings, summons, motions and other process in such proceeding shall be fully and effectively served when transmitted by United States Mail (registered or certified), postage and registry fees prepaid.  Any judgment or decree obtained in any such action or proceeding may be filed or enforced in any other appropriate court.

## 15.  RIGHT OF SET-OFF.

DVD/232919/0679/1859819v2
10/20/22-HRT/DVD

Upon the occurrence of any Event of Default, the Lender shall have the right to set-off against the Loan all of Maker's deposits, credit and property now or hereafter in the possession or control of the Lender, its agent or bailee or in transit to it. The Lender may apply the same, or any part thereof, to the Loan without prior notice or demand.

## 16.    INVALIDITY.

If any provision of this Note or the application of any provision to any person or circumstance shall be invalid or unenforceable, neither the balance of this Note nor the application of the provision to other persons or circumstances shall be affected.

## 17.    JOINT AND SEVERAL LIABILITY, BINDING EFFECT.

This Note and all obligations hereunder, to the extent signed by more than one party, shall be the joint and several obligations of each Maker, and any endorsers or other accommodation makers, and each provision hereof shall apply to each and all jointly and severally. The provisions of this Note are binding on the successors and assigns of Maker and shall inure to the benefit of the Lender, its successors and assigns and to subsequent Holders of this Note.

## 18.    INTERPRETATION.

Captions and headings used in this Note are for convenience only. The term "Maker" and any pronoun referring thereto as used herein shall be construed in the masculine, feminine or neuter as the context may require. The singular includes the plural and the plural includes the singular. "Any" means any and all.

## 19.    RECOVERY OF PAYMENT.

To the extent the Loan is reduced or paid in full by reason of any payment to the Lender by any subsequent accommodation maker, endorser or guarantor, and all or any part of such payment is rescinded, avoided or recovered from the Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy or reorganization of such accommodation maker, endorser or guarantor, the amount of such rescinded, avoided or refused payment shall be added to or, in the event the Note has been previously-paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the Loan and all terms and provisions herein shall thereafter apply to same.

## 20.    NO VIOLATIONS OF GOVERNMENTAL PROHIBITIONS.

Neither the making of the Loan, nor the receipt of Loan proceeds by Borrower, violates any Law applicable to Borrower, including, without limitation, any of the Terrorism Laws. Neither the making of the Loan, nor the receipt of Loan proceeds by Borrower (a "**Principal Party**") violates any of the Terrorism Laws applicable to any of the Principal Parties. To Borrower's best knowledge, no owner of any direct or indirect equitable, legal or beneficial interest in Borrower or any Principal Party is the subject of any of the Terrorism Laws. No portion of the Loan proceeds will be used, disbursed or distributed by Borrower for any purpose, or to any Person, directly or indirectly, in violation of any Law including, without limitation, any of the Terrorism Laws. As used in this Agreement, the term "**Terrorism Laws**" means Executive Order 13224 issued by the President of the United States of America, the

6

Terrorism Sanctions Regulations (Title 31 Part 595 of the U.S. Code of Federal Regulations), the Terrorism List Governments Sanctions Regulations (Title 31 Part 596 of the U.S. Code of Federal Regulations), and the Foreign Terrorist Organizations Sanctions Regulations (Title 31 Part 597 of the U.S. Code of Federal Regulations), and all other present and future federal, state and local laws, ordinances, regulations, policies and any other requirements of any Governmental Agency (including, without limitation, the United States Department of the Treasury Office of Foreign Assets Control) addressing, relating to, or attempting to eliminate, terrorist acts and acts of war, each as hereafter supplemented, amended or modified from time to time, and the present and future rules, regulations and guidance documents promulgated under any of the foregoing, or under similar laws, ordinances, regulations, policies or requirements of other States or localities.

### 21.    COMPLIANCE WITH GOVERNMENTAL PROHIBITIONS.

No portion of the Loan proceeds will be used, disbursed or distributed by Borrower for any purpose, or to any Person, in violation of any Law including, without limitation, any of the Terrorism Laws. Borrower shall provide Lender with immediate written notice (a) of any failure of any of the representations and warranties set forth in Section 20 of this Note to be true, correct and complete in all respects at any time, or (b) if Borrower obtains knowledge that Borrower, or any owner at any time of any direct or indirect equitable, legal or beneficial interest in Borrower is the subject of any of the Terrorism Laws. Borrower shall immediately and diligently take, or cause to be immediately and diligently taken, all necessary action to comply with all Terrorism Laws and to cause the representations and warranties set forth in Section 20 of this Note to be true, correct and complete in all respects.

Remainder of Page Intentionally Left Blank

DVD/232919/0679/1859819v2
10/20/22-HRT/DVD

22.    <u>NOTICES</u>.

A demand upon or notice to Borrower hereunder shall be deemed sufficient and commercially reasonably notice and shall be effective only upon its receipt and sent by a recognized overnight courier addressed to Borrower at the address set forth on the first page hereof.  Any notice to Lender hereunder shall be effective only upon its receipt by Lender in writing at the following address:  Bankwell Bank, 258 Elm Street, New Canaan, CT 06840, Attn:  Commercial Lending Department.

**BORROWER**

**AVON PLACE LLC**

By _____
    Ahron Rudich
    Its Member

# EXHIBIT C

## LIMITED GUARANTY AND INDEMNIFICATION AGREEMENT

**LIMITED GUARANTY AND INDEMNIFICATION AGREEMENT** dated as of September 30, 2022 (this "**Guaranty**" or this "**Guaranty**"), by **AHRON RUDICH**, an individual having a mailing address of 710 Avenue L, Brooklyn, New York 11230-5112 (the "**Guarantor**"), in favor of **BANKWELL BANK**, a Connecticut banking corporation having its principal place of business at 258 Elm Street, New Canaan, Connecticut 06840 (the "**Lender**").

**WHEREAS, AVON PLACE LLC** (the "**Borrower**") is indebted to the Lender in the original principal amount of $25,312,500.00 (the "**Loan**") as evidenced by the Promissory Note in said amount of even date herewith (the "**Note**"); and

**WHEREAS,** the Loan is secured by, among other things, an Open-End Mortgage Deed and Security Agreement (the "**Mortgage**") encumbering certain property and improvements thereon commonly known as Unit Nos. 101A, 102A, 103A, 104A, 105A, 106A, 107A, 108A, 109A, 110A, 111A, 112A, 113A, 114A, 116A, 117A, 118A, 120A, 121A, 202A, 203A, 204A, 205A, 206A, 207A, 208A, 209A, 210A, 211A, 212A, 213A, 214A, 215A, 216A, 217A, 218A, 219A, 220A, 221A, 301A, 302A, 303A, 304A, 305A, 306A, 307A, 308A, 310A, 311A, 312A, 313A, 314A, 316A, 317A, 318A, 319A, 320A, 101B, 102B, 103B, 104B, 105B, 106B, 107B, 108B, 109B, 111B, 112B, 114B, 115B, 116B, 117B, 118B, 120B, 121B, 201B, 202B, 204B, 205B, 206B, 207B, 208B, 209B, 210B, 212B, 213B, 214B, 215B, 216B, 217B, 218B, 219B, 220B, 221B, 301B, 302B, 303B, 304B, 305B, 306B, 307B, 308B, 309B, 311B, 312B, 313B, 314B, 315B, 316B, 317B, 318B, 320B, 101C, 102C, 103C, 105C, 106C, 107C, 108C, 109C, 110C, 111C, 112C, 113C, 114C, 115C, 116C, 117C, 118C, 119C, 120C, 121C, 201C, 202C, 204C, 205C, 206C, 207C, 208C, 209C, 210C, 211C, 212C, 214C, 216C, 217C, 218C, 219C, 220C, 221C, 301C, 303C, 305C, 306C, 307C, 311C, 313C, 316C, 317C, 318C, 319C, 320C, 101D, and 102D in the Declaration of Condominium by Arnold C. Greenberg, Trustee, dated November 12, 1979, and recorded in Volume 115, Page 505 of the Avon Land Records, which Declaration has been amended by the Amendment to Declaration of Condominium By Arnold C. Greenberg, Trustee Regarding Avonwood Condominium dated October 22, 1992, and recorded in Volume 267, Page 726 of the Avon Land Records, such property, together with all improvements thereon (the "**Mortgaged Property**") (all capitalized terms used herein and not defined shall have the meaning therefor set forth in the Mortgage); and

**WHEREAS,** Guarantor desires that Lender enter into the Loan with Borrower and is willing to execute this Agreement in order to induce Lender to enter into the Loan.

**NOW, THEREFORE,** in order to induce Lender to enter into the Loan, and in consideration therefor, and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees with Lender as follows:

## ARTICLE 1
## GUARANTY AND INDEMNITY

1.01    Payment Guaranty.  The Guarantor unconditionally and irrevocably guaranties to the Lender the full and prompt payment and performance of all liabilities of the Borrower to the Lender pursuant to the Note and all other documents and agreements relating to the Loan (collectively, the "**Loan Documents**"). As used herein, "**liabilities**" means any and all liabilities and obligations of the Borrower to the Lender under the Loan Documents, whether direct or indirect, primary or secondary, absolute or contingent, due or to become due, now existing or hereafter arising, regardless of how

they arise or by what agreement or instrument they may be evidenced, or whether evidenced by any agreement or instrument, including, without limitation, the Note, and further including, without limitation, all costs, expenses and reasonable attorneys' fees and professionals' fees incurred in the collection of the liabilities and in any litigation arising from any liability or this Agreement or in the defense, protection, preservation and enforcement of any rights, liens or remedies against the Borrower or in the defense, protection, preservation and enforcement of this Agreement. All payments by the Guarantor shall be paid in lawful money of the United States of America. Each and every payment, obligation or liability guaranteed hereunder shall give rise to a separate cause of action and separate lawsuits, lawsuit may, but need not be, brought hereunder as each cause of action arises.

Notwithstanding anything set forth herein to the contrary, the Guarantor's liability under the terms of this Guaranty shall be limited to twenty-five percent (25%) of the liabilities under the Loan.

1.02    Recourse Guaranty.

(a)    Subject to the specific limitations and conditions set forth in this Section, the Guarantor unconditionally guaranties the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all obligations of the Borrower to the Lender under the Note and under any amendment, modification, renewal, extension, substitution or replacement thereof or thereto, whether for principal, interest, fees, expenses or otherwise, and all reasonable out-of-pocket expenses incurred by the Lender in enforcing any of its rights under this Guaranty including reasonable attorneys' fees (such obligations being referred to collectively as the "**Obligations**") upon the occurrence of any of the following events in subsections (i) through (iii) below (each a "**Recourse Event**"):

(i)    Borrower files for relief or protection under any federal, state or other bankruptcy, insolvency, reorganization or other creditor-relief laws, or an involuntary filing against the Borrower or petition against the Borrower is made by any Guarantor or any entity owned or controlled by any Guarantor (collectively "**Related Party**") and any Guarantor or Related Party objects to a motion for relief from stay following a voluntary or involuntary bankruptcy or insolvency proceeding, under any of such laws, against Borrower and such involuntary filing is not unconditionally dismissed or vacated within ninety (90) days

(ii)    A voluntary transfer or assignment (except an involuntary encumbrance) of any interest by the Guarantor or a Related Party in the Borrower to any other person or entity in violation of the Loan Documents;

(iii)    any enforcement of the Lender's rights or remedies under the Loan Documents, or in connection with any litigation relating to the Loan Documents wherein, in either such case, the Borrower, the Guarantor or any Related Party (A) in bad faith interferes with, hinders or delays the exercise of the Lender's remedies, (B) contests the validity or enforceability of any of the Loan Documents or (C) asserts a claim against the Lender (other than a mandatory counterclaim), provided that, in the case of this clause (C) only, the Lender shall not be entitled to recover in the event that the Borrower, the Guarantor or the Related Party, as the case may be, obtains a final judgment in a court of competent jurisdiction to the effect that its contest or claim was valid.

(b)        Sections 1.01 and 1.02 hereof are a guaranty of payment and not of collection. The liability of the Guarantor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against the Borrower or any other person (including, without limitation, other Guarantors, if any), nor against the collateral for the Loan. The Guarantor waives any right to require that an action be brought against the Borrower or any other person or to require that resort be had to any collateral for the Loan or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or any other person. In the event, on account of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, the Borrower shall be relieved of or fail to incur any debt, obligation or liability as provided in the Loan Documents, the Guarantor shall nevertheless be fully liable therefor subject to the limitations set forth in this Agreement. In the event of an Event of Default under the Loan Documents which is not cured before the expiration of all applicable grace or cure periods, the Lender shall have the right to enforce its rights, powers and remedies (including, without limitation, foreclosure of all or any portion of the collateral for the Loan) thereunder or hereunder, in any order, and all rights, powers and remedies available to the Lender in such event shall be non-exclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity.

(c)        Without limiting the generality of this Section 1.02, the Guarantor shall indemnify, defend (with counsel reasonably acceptable to the Lender) and save harmless the Lender from and against all actual damages, actual losses, liabilities, obligations, penalties, claims, demands, defenses, judgments, suits, proceedings, penalties, expenditures, costs, disbursements and expenses (including, without limitation, court costs and reasonable attorneys' and experts' fees and expenses) of any kind or nature whatsoever which may, at any time or from time to time, be imposed upon, incurred by or asserted or awarded against the Lender by reason of, or arising from or out of, the Lender's enforcement (or attempted enforcement) of this Guaranty; provided, however, that any enforcement of this Guaranty shall at all times remain subject to the limitations and conditions of Guarantor's liability hereunder.

1.03    Indemnity.  Subject to the specific limitations and conditions set forth in this Section, Guarantor shall indemnify and hold harmless Lender from and against, and reimburse Lender for, any and all actual reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by Lender by reason of, arising out of or attributable or relating to (collectively and inclusive of (A) through (E) hereof) and Lender shall have no rights or remedies against Guarantor hereunder unless one or more of the following circumstances occur:

(A)        fraud, material misrepresentation or criminal acts by Borrower in connection with the Loan;

(B)        removal or disposal of any material portion of the Mortgaged Property in violation of the terms of the Note, the Mortgage, the Environmental Indemnification Agreement, or any other Loan Document by Borrower or Guarantor;

(C)        misappropriation or conversion by Borrower of (1) any insurance proceeds paid to Borrower by reason of any loss, damage or destruction to the Mortgaged Property; (2) any awards or other amounts received by Borrower in connection with the condemnation of all or a portion of the Mortgaged Property; or (3) rents, income, accounts

receivable, issues, profits, proceeds, accounts or other amounts received by Borrower subsequent to an Event of Default from the operation of the Premises;

    (D)    to the extent revenue is available for application and has been received by Borrower from the operations of the Premises, Borrower's failure to pay taxes, assessments, charges for labor or materials or other charges that result in liens on any portion of the Mortgaged Property, subject to Borrower's right to contest the same;

    (E)    any security deposits, advance deposits or retained rents and profits collected by Borrower from tenants with respect to the Mortgaged Property (not previously applied by Borrower in accordance with the terms of the tenants' leases) which are not delivered to Lender upon foreclosure of the Mortgaged Property or action in lieu thereof;

The obligations and liability of Guarantor with respect to the matters set forth in this Section 1.03 shall survive the foreclosure of the Mortgage, any other sale of all or any part of the Mortgaged Property in extinguishment of the indebtedness secured by the Mortgage and any payment, release or discharge of the Mortgage or the indebtedness secured thereby. Said obligations and liability shall run in favor of and benefit Lender and any affiliate of Lender which may succeed to Lender's position under the Mortgage or which may acquire ownership of all or any part of the Mortgaged Property.

    1.04    Right of the Lender to Proceed Against the Guarantor. (A) Upon any failure in the payment or performance of any liability guarantied hereunder, the liability of the Guarantor shall be effective immediately without notice and shall be payable or performable on demand without any suit or action against the Borrower. No delay or omission in exercising any right hereunder shall operate as a waiver of such right or any other right.

    (B)    The Lender, in its sole discretion, shall have the right to proceed first and directly against the Guarantor under this Agreement, without proceeding against or exhausting any other remedies which it may have and without resorting to any other security held by the Lender.

    (C)    This Agreement is entered into by the Guarantor and shall be binding upon the Guarantor and his executors, administrators, successors and assigns and inure to and for the benefit of the Lender and its successors and assigns, all of whom shall be entitled to enforce performance and observance of this Agreement.

    1.05    Liquidation of Collateral. Without in any way limiting the Lender's right to enforce this Agreement against the Guarantor, the Guarantor acknowledges that the Lender shall have the right to apply the proceeds of the liquidation of any collateral first to the obligations outstanding under the Loan.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES

    2.01    Guarantor's Representations and Warranties. The Guarantor represents and warrants that:

    (1)    The Guarantor has received reasonably equivalent value in exchange

for its execution of this Agreement. The aggregate fair value of the assets of the Guarantor is, on the date hereof, and will be after execution of this Agreement, in excess of the aggregate amount of the liabilities and obligations of the Guarantor (fixed, contingent or otherwise). The Guarantor anticipates that it will have sufficient net cash flow to pay all of its liabilities and obligations as they become due after the execution of this Agreement.

(2)     The Guarantor has the legal capacity to enter into this Agreement.

(3)     The execution and delivery of this Agreement, the consummation of the transactions contemplated hereby and the fulfillment of and compliance with the terms and conditions of this Agreement is not prevented, or limited by, and does not conflict with, or result in, a breach of the terms, conditions or provisions of any contractual or other restriction on the Guarantor, or agreement or instrument of any nature to which the Guarantor is now a party or by which the Guarantor or its property is bound, or constitutes a default under any of the foregoing.

(4)     The assumption by the Guarantor of the obligations hereunder will result in a direct and material financial benefit to the Guarantor.

(5)     This Agreement constitutes a valid and legally binding obligation of the Guarantor, enforceable in accordance with its terms.

(6)     There is no action, suit or proceeding pending, or to the knowledge of the Guarantor threatened in writing, against or materially affecting the Guarantor or its assets before any court or administrative agency that would adversely affect the ability of the Guarantor to perform the obligations under this Agreement if resolved in a manner adverse to Guarantor.

(7)     All reports, statements and other data furnished by the Guarantor to the Lender in connection with the Loan are true, correct and complete in all material respects and do not omit any fact or circumstance which would make the statements contained therein misleading in a material respect; present fairly the financial position of the Guarantor as of the date stated therein; and that no material adverse change has occurred in the financial condition of the Guarantor or its assets since the date of the financial statement.

(8)     The Guarantor, subject to extension, has filed all required federal, state and local tax returns and has paid all taxes as shown on such returns. No claims have been assessed and remain unpaid with respect to such taxes.

(9)     The Guarantor has not received any notice, order, petition or similar document in connection with or arising out of any violation or possible violation, of any environmental, health or safety law, regulation or order relating to the Mortgaged Property, and knows of no basis for any such violation or threat thereof.

2.02    Affirmative Covenants. Until payment in full of the liabilities and so long as any loan provided by the Lender to the Borrower remains in effect, the Guarantor agrees that it will deliver to the Lender within thirty (30) days of filing copies of the signed federal tax returns of the Guarantor together with all supporting schedules. The Guarantor annually shall furnish the Lender or cause to be furnished, (a) within one hundred twenty (120) days after the close of each year that ends during the life of the Loan, signed and dated personal financial statements, including contingent liabilities and (b) such other financial information relating to Guarantor in such

detail as the Lender may reasonably require within fifteen (15) days of the Lender's written request for same. All of such financial statements shall be in form and substance reasonably acceptable to Lender.

## ARTICLE 3
### NOTICE AND SERVICE OF PROCESS, PLEADINGS AND OTHER PAPERS

3.01    Designation of Agent for Services of Process. The Guarantor represents, warrants and covenants that he is subject to service of process in the state of Connecticut and that he will remain so subject (or shall designate an agent on his behalf) so long as any of the liabilities are outstanding.

3.02    Consent to Service of Process. The Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of this Agreement may be brought in the courts of record of the state of Connecticut or the courts of the United States located in Connecticut, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which the Guarantor may have to the laying of venue of any such suit, action or proceeding in any of such courts.

3.03    Notices. All notices or other communications required or permitted to be given hereunder shall be considered properly given if sent by a nationally recognized overnight messenger service or mailed first class United States mail, postage prepaid, registered or certified mail, with return receipt requested, or by delivery of same to the address listed below by prepaid messenger or telegram, as follows:

| | |
|---|---|
| If to Guarantor: | Ahron Rudich<br>710 Avenue L<br>Brooklyn, New York 11230 |
| With a copy to: | Potok Law, LLC<br>747 Farmington Avenue, Suite 9<br>New Britain, Connecticut 06053<br>Attn: Benjamin Potok, Esq. |
| If to Lender to: | Bankwell Bank<br>258 Elm Street<br>New Canaan, Connecticut 06840<br>Attention:  Commercial Lending Officer |
| With a copy to: | McElroy, Deutsch, Mulvaney & Carpenter, LLP<br>One State Street, 14th Floor<br>Hartford, Connecticut 06103<br>Attention:  Daniel V. D'Aprile Jr., Esq. |

or such other place as any party hereto may be notified in writing as a place for service or notice hereunder. Notice so sent shall be effective upon delivery to such address, whether or not receipt thereof is acknowledged or is refused by the addressee or any person at such address.

## ARTICLE 4

DVD/232919/0679/1855208v1<br>09/28/22-HRT/DVD

## GENERAL PROVISIONS

4.01    Other Guarantors. The Guarantor acknowledges that other individuals or entities may also guaranty the liabilities of the Borrower (the "**Other Guarantors**") and that it is unconditionally delivering this Agreement to the Lender. The Guarantor further acknowledges that the failure of any of the Other Guarantors to execute and deliver their respective guarantees or the discharge of any of the Other Guarantors and their respective guarantied obligations shall not discharge the liability of the Guarantor.

4.02    Final Expression' Modifications. The Guarantor acknowledges that this writing is a final expression and a complete and exclusive statement of the terms of this Agreement. No course of prior dealing between the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement or modify any terms, and there are no conditions to the full effectiveness of this Agreement.

4.03    No Remedy Exclusive; Effect of Waiver. No remedy conferred herein upon or reserved to the Lender is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or now or hereafter existing at law or in equity. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Lender to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement. A waiver on one occasion shall not be a bar to or waiver of any right on any other occasion.

4.04    Counterparts    This Agreement supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

4.05    Severability. The invalidity or unenforceability of any one or more phrases, sentences, clauses or sections contained in this Agreement shall not affect the validity or enforceability of the remaining portions of this Agreement, or any part thereof.

4.06    Connecticut Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut applicable to contracts made and to be performed therein without giving effect to the principles of conflict of laws thereof.

4.07    Amendments. This Agreement and any term, covenant or condition hereof may not be changed, waived, discharged, modified or terminated except by a writing executed by the parties hereto.

4.08    Waivers; Payment of Costs. (A) The Guarantor expressly waives demand, presentment, protest, and notice of the acceptance of this Agreement and of any loans made, extensions granted or other action taken in reliance hereon and all other demands and notices of

7

any description in connection with this Agreement, the liabilities hereunder or otherwise.

        (B)      The Guarantor agrees to pay all reasonable out-of-pocket costs and expenses, including reasonable attorney's fees and professional fees, arising out of or with respect to the validity, enforcement or preservation of this Agreement provided that a final judgment in a court of competent jurisdiction is obtained by Lender to the effect that Lender's claim hereunder was valid.

        (C)      EACH OF THE GUARANTOR AND, BY ACCEPTANCE HEREOF, LENDER ACKNOWLEDGES THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION.

        (D)      THE GUARANTOR AND, BY ACCEPTANCE HEREOF, LENDER, WAIVES TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART AND THE DEFENSE OR THE ENFORCEMENT OF ANY OF THE LENDER'S RIGHTS AND REMEDIES. HEREUNDER EACH OF THE GUARANTOR AND, BY ACCEPTANCE HEREOF, LENDER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEY.

Remainder of page intentionally left blank.