This Agreement is made with the knowledge that Lender will rely upon the statements made herein and the indemnity contained herein in making the Loan and is made for the purpose of inducing Lender to consummate and close the Loan.

GUARANTOR:

_____

Ahron Runich

# EXHIBIT D

## LIMITED GUARANTY AND INDEMNIFICATION AGREEMENT

**LIMITED GUARANTY AND INDEMNIFICATION AGREEMENT** dated as of October 21, 2022 (this **"Agreement"** or this **"Guaranty"**), by **AHRON RUDICH**, an individual having a mailing address of 710 Avenue L, Brooklyn, New York 11230-5112 (the **"Guarantor"**), in favor of **BANKWELL BANK**, a Connecticut banking corporation having its principal place of business at 258 Elm Street, New Canaan, Connecticut 06840 (the **"Lender"**).

**WHEREAS**, subject to certain terms and conditions, Lender has agreed to lend to **AVON PLACE LLC** (the **"Borrower"**) the sum of up to $2,687,500.00 (the **"Loan"**) as evidenced by the Non-Revolving Line of Credit Note of even date herewith in the amount of up to $2,687,500.00 (the **"Note"**) and a Commercial Non-Revolving Loan Agreement between Borrower and Lender of even date herewith (the **"Loan Agreement"**). All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement; and

**WHEREAS**, the Loan is, or will be, secured by, among other things, the remaining twenty-four (24) condominium units (each a **"Unit"**) located in the Town of Avon, County of Hartford, State of Connecticut, more particularly described in the Declaration of Condominium by Arnold C. Greenberg, Trustee, dated November 12, 1979, and recorded in Volume 115, Page 505 of the Avon Land Records, which Declaration has been amended by the Amendment to Declaration of Condominium By Arnold C. Greenberg, Trustee Regarding Avonwood Condominium dated October 22, 1992, and recorded in Volume 267, Page 726 of the Avon Land Records (the **"Property"**); and

**WHEREAS**, Guarantor desires that Lender enter into the Loan with Borrower and is willing to execute this Agreement in order to induce Lender to enter into the Loan.

**NOW, THEREFORE**, in order to induce Lender to enter into the Loan, and in consideration therefor, and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees with Lender as follows:

## ARTICLE 1
## GUARANTY AND INDEMNITY

1.01    Payment Guaranty. The Guarantor unconditionally and irrevocably guaranties to the Lender the full and prompt payment and performance of all liabilities of the Borrower to the Lender pursuant to the Note and all other documents and agreements relating to the Loan (collectively, the **"Loan Documents"**). As used herein, **"liabilities"** means any and all liabilities and obligations of the Borrower to the Lender under the Loan Documents, whether direct or indirect, primary or secondary, absolute or contingent, due or to become due, now existing or hereafter arising, regardless of how they arise or by what agreement or instrument they may be evidenced, or whether evidenced by any agreement or instrument, including, without limitation, the Note, and further including, without limitation, all costs, expenses and reasonable attorneys' fees and professionals' fees incurred in the collection of the liabilities and in any litigation arising from any liability or this Agreement or in the defense, protection, preservation and enforcement of any rights, liens or remedies against the Borrower or in the defense, protection, preservation and enforcement of this Agreement. All payments by the Guarantor shall be paid in lawful money of the United States of America. Each and every payment, obligation or liability guaranteed hereunder shall give rise to a separate cause of action and separate lawsuits, lawsuit may, but need not be, brought hereunder as each cause of

antion arises

Notwithstanding anything set forth herein to the contrary, the Guarantor's liability under the terms of this Guaranty shall be limited to twenty-five percent (25%) of the liabilities under the Loan.

1.02    Recourse Guaranty

(a)      Subject to the specific limitations and conditions set forth in this Section, the Guarantor unconditionally guaranties the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all obligations of the Borrower to the Lender under the Note and under any amendment, modification, renewal, extension, substitution or replacement thereof or thereto, whether for principal, interest, fees, expenses or otherwise, and all reasonable out-of-pocket expenses incurred by the Lender in enforcing any of its rights under this Guaranty including reasonable attorneys' fees (such obligations being referred to collectively as the "**Obligations**") upon the occurrence of any of the following events in subsections (i) through (iii) below (each a "**Recourse Event**"):

(i)      Borrower files for relief or protection under any federal, state or other bankruptcy, insolvency, reorganization or other creditor-relief laws, or an involuntary filing against the Borrower or petition against the Borrower is made by any Guarantor or any entity owned or controlled by any Guarantor (collectively "**Related Party**") and any Guarantor or Related Party objects to a motion for relief from stay following a voluntary or involuntary bankruptcy or insolvency proceeding, under any of such laws, against Borrower and such involuntary filing is not unconditionally dismissed or vacated within ninety (90) days.

(ii)      A voluntary transfer or assignment (except an involuntary encumbrance) of any interest by the Guarantor or a Related Party in the Borrower to any other person or entity in violation of the Loan Documents;

(iii)      any enforcement of the Lender's rights or remedies under the Loan Documents, or in connection with any litigation relating to the Loan Documents wherein, in either such case, the Borrower, the Guarantor or any Related Party (A) in bad faith interferes with, hinders or delays the exercise of the Lender's remedies, (B) contests the validity or enforceability of any of the Loan Documents or (C) asserts a claim against the Lender (other than a mandatory counterclaim), provided that, in the case of this clause (C) only, the Lender shall not be entitled to recover in the event that the Borrower, the Guarantor or the Related Party, as the case may be, obtains a final judgment in a court of competent jurisdiction to the effect that its contest or claim was valid.

(b)      Sections 1.01 and 1.02 hereof are a guaranty of payment and not of collection. The liability of the Guarantor under this Agreement shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against the Borrower or any other person (including, without limitation, other Guarantors, if any), nor against the collateral for the Loan. The Guarantor waives any right to require that an action be brought against the Borrower or any other person or to require that resort be had to any collateral for the Loan or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or any other person. In the event, on account of the Bankruptcy Reform Act of 1978, as amended, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction

whatsoever, now or hereafter in effect, which may be or become applicable, the Borrower shall be relieved of or fail to incur any debt, obligation or liability as provided in the Loan Documents, the Guarantor shall nevertheless be fully liable therefor subject to the limitations set forth in this Agreement. In the event of an Event of Default under the Loan Documents which is not cured before the expiration of all applicable grace or cure periods, the Lender shall have the right to enforce its rights, powers and remedies (including, without limitation, foreclosure of all or any portion of the collateral for the Loan) thereunder or hereunder, in any order, and all rights, powers and remedies available to the Lender in such event shall be non-exclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder or by law or in equity.

(c)        Without limiting the generality of this Section 1.02, the Guarantor shall indemnify, defend (with counsel reasonably acceptable to the Lender) and save harmless the Lender from and against all actual damages, actual losses, liabilities, obligations, penalties, claims, demands, defenses, judgments, suits, proceedings, penalties, expenditures, costs, disbursements and expenses (including, without limitation, court costs and reasonable attorneys' and experts' fees and expenses) of any kind or nature whatsoever which may, at any time or from time to time, be imposed upon, incurred by or asserted or awarded against the Lender by reason of, or arising from or out of, the Lender's enforcement (or attempted enforcement) of this Guaranty; provided, however, that any enforcement of this Guaranty shall at all times remain subject to the limitations and conditions of Guarantor's liability hereunder.

1.03    Indemnity.    Subject to the specific limitations and conditions set forth in this Section, Guarantor shall indemnify and hold harmless Lender from and against, and reimburse Lender for, any and all actual reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by Lender by reason of, arising out of or attributable or relating to (collectively and inclusive of (A) through (E) hereof) and Lender shall have no rights or remedies against Guarantor hereunder unless one or more of the following circumstances occur:

(A)        fraud, material misrepresentation or criminal acts by Borrower in connection with the Loan;

(B)        removal or disposal of any material portion of the Property in violation of the terms of the Note, the Mortgage, the Environmental Indemnification Agreement, or any other Loan Document by Borrower or Guarantor;

(C)        misappropriation or conversion by Borrower of (1) any insurance proceeds paid to Borrower by reason of any loss, damage or destruction to the Property; (2) any awards or other amounts received by Borrower in connection with the condemnation of all or a portion of the Property; or (3) rents, income, accounts receivable, issues, profits, proceeds, accounts or other amounts received by Borrower subsequent to an Event of Default from the operation of the Property;

(D)        to the extent revenue is available for application and has been received by Borrower from the operations of the Property, Borrower's failure to pay taxes, assessments, charges for labor or materials or other charges that result in liens on any portion of the Property, subject to Borrower's right to contest the same;

(E)        any security deposits, advance deposits or retained rents and profits

collected by Borrower from tenants with respect to the Property (not previously applied by Borrower in accordance with the terms of the tenants' leases) which are not delivered to Lender upon foreclosure of the Property or action in lieu thereof;

The obligations and liability of Guarantor with respect to the matters set forth in this Section 1.03 shall survive the foreclosure of any mortgage delivered by Borrower to Lender, any other sale of all or any part of the Property in extinguishment of the indebtedness secured by the Mortgage and any payment, release or discharge of the Mortgage or the indebtedness secured thereby. Said obligations and liability shall run in favor of and benefit Lender and any affiliate of Lender which may succeed to Lender's position under the Mortgage or which may acquire ownership of all or any part of the Property.

    1.04   Right of the Lender to Proceed Against the Guarantor. (A) Upon any failure in the payment or performance of any liability guarantied hereunder, the liability of the Guarantor shall be effective immediately without notice and shall be payable or performable on demand without any suit or action against the Borrower. No delay or omission in exercising any right hereunder shall operate as a waiver of such right or any other right.

    (B)   The Lender, in its sole discretion, shall have the right to proceed first and directly against the Guarantor under this Agreement, without proceeding against or exhausting any other remedies which it may have and without resorting to any other security held by the Lender.

    (C)   This Agreement is entered into by the Guarantor and shall be binding upon the Guarantor and his executors, administrators, successors and assigns and inure to and for the benefit of the Lender and its successors and assigns, all of whom shall be entitled to enforce performance and observance of this Agreement.

    1.05   Liquidation of Collateral. Without in any way limiting the Lender's right to enforce this Agreement against the Guarantor, the Guarantor acknowledges that the Lender shall have the right to apply the proceeds of the liquidation of any collateral first to the obligations outstanding under the Loan.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES

    2.01   Guarantor's Representations and Warranties. The Guarantor represents and warrants that:

    (1)   The Guarantor has received reasonably equivalent value in exchange for its execution of this Agreement. The aggregate fair value of the assets of the Guarantor is, on the date hereof, and will be after execution of this Agreement, in excess of the aggregate amount of the liabilities and obligations of the Guarantor (fixed, contingent or otherwise). The Guarantor anticipates that it will have sufficient net cash flow to pay all of its liabilities and obligations as they become due after the execution of this Agreement.

    (2)   The Guarantor has the legal capacity to enter into this Agreement.

    (3)   The execution and delivery of this Agreement, the consummation of the

transactions contemplated hereby and the fulfillment of and compliance with the terms and conditions of this Agreement is not prevented, or limited by, and does not conflict with, or result in, a breach of the terms, conditions or provisions of any contractual or other restriction on the Guarantor, or agreement or instrument of any nature to which the Guarantor is now a party or by which the Guarantor or its property is bound, or constitutes a default under any of the foregoing.

(4)     The assumption by the Guarantor of the obligations hereunder will result in a direct and material financial benefit to the Guarantor.

(5)     This Agreement constitutes a valid and legally binding obligation of the Guarantor, enforceable in accordance with its terms.

(6)     There is no action, suit or proceeding pending, or to the knowledge of the Guarantor threatened in writing, against or materially affecting the Guarantor or its assets before any court or administrative agency that would adversely affect the ability of the Guarantor to perform the obligations under this Agreement if resolved in a manner adverse to Guarantor.

(7)     All reports, statements and other data furnished by the Guarantor to the Lender in connection with the Loan are true, correct and complete in all material respects and do not omit any fact or circumstance which would make the statements contained therein misleading in a material respect; present fairly the financial position of the Guarantor as of the date stated therein; and that no material adverse change has occurred in the financial condition of the Guarantor or its assets since the date of the financial statement.

(8)     The Guarantor, subject to extension, has filed all required federal, state and local tax returns and has paid all taxes as shown on such returns. No claims have been assessed and remain unpaid with respect to such taxes.

(9)     The Guarantor has not received any notice, order, petition or similar document in connection with or arising out of any violation or possible violation, of any environmental, health or safety law, regulation or order relating to the Property, and knows of no basis for any such violation or threat thereof.

2.02    Affirmative Covenants. Until payment in full of the liabilities and so long as any loan provided by the Lender to the Borrower remains in effect, the Guarantor agrees that it will deliver to the Lender within thirty (30) days of filing copies of the signed federal tax returns of the Guarantor together with all supporting schedules.  The Guarantor annually shall furnish the Lender or cause to be furnished, (a) within one hundred twenty (120) days after the close of each year that ends during the life of the Loan, signed and dated personal financial statements, including contingent liabilities and (b) such other financial information relating to Guarantor in such detail as the Lender may reasonably require within fifteen (15) days of the Lender's written request for same.  All of such financial statements shall be in form and substance reasonably acceptable to Lender.

## ARTICLE 3
## NOTICE AND SERVICE OF PROCESS, PLEADINGS AND OTHER PAPERS

3.01    Designation of Agent for Services of Process. The Guarantor represents, warrants and covenants that he is subject to service of process in the state of Connecticut and that he will

remain so subject (or shall designate an agent on his behalf) so long as any of the liabilities are outstanding. The Guarantor hereby appoints Potok Law, LLC, 747 Farmington Avenue, Suite 9, New Britain, Connecticut 06053 as its agent for service of process in the State of Connecticut.

3.02    Consent to Service of Process. The Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of this Agreement may be brought in the courts of record of the state of Connecticut or the courts of the United States located in Connecticut, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which the Guarantor may have to the laying of venue of any such suit, action or proceeding in any of such courts.

3.03    Notices. All notices or other communications required or permitted to be given hereunder shall be considered properly given if sent by a nationally recognized overnight messenger service or mailed first class United States mail, postage prepaid, registered or certified mail, with return receipt requested, or by delivery of same to the address listed below by prepaid messenger or telegram, as follows:

| If to Guarantor: | Ahron Rudich |
| | 710 Avenue L |
| | Brooklyn, New York 11230 |
| | |
| With a copy to: | Potok Law, LLC |
| | 747 Farmington Avenue, Suite 9 |
| | New Britain, Connecticut 06053 |
| | Attn: Benjamin Potok, Esq. |
| | |
| If to Lender to: | Bankwell Bank |
| | 258 Elm Street |
| | New Canaan, Connecticut 06840 |
| | Attention: Commercial Lending Officer |
| | |
| With a copy to: | McElroy, Deutsch, Mulvaney & Carpenter, LLP |
| | One State Street, 14th Floor |
| | Hartford, Connecticut 06103 |
| | Attention: Daniel V. D'Aprile Jr., Esq. |

or such other place as any party hereto may be notified in writing as a place for service or notice hereunder. Notice so sent shall be effective upon delivery to such address, whether or not receipt thereof is acknowledged or is refused by the addressee or any person at such address.

## ARTICLE 4
## GENERAL PROVISIONS

4.01    Other Guarantors. The Guarantor acknowledges that other individuals or entities may also guaranty the liabilities of the Borrower (the **"Other Guarantors"**) and that it is unconditionally delivering this Agreement to the Lender. The Guarantor further acknowledges that the failure of any of the Other Guarantors to execute and deliver their respective guarantees or the discharge of any of the Other Guarantors and their respective guarantied obligations shall not discharge the liability of the Guarantor.

4.02    Final Expression: Modifications. The Guarantor acknowledges that this writing is a final expression and a complete and exclusive statement of the terms of this Agreement. No course of prior dealing between the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement or modify any terms, and there are no conditions to the full effectiveness of this Agreement.

4.03    No Remedy Exclusive; Effect of Waiver. No remedy conferred herein upon or reserved to the Lender is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or now or hereafter existing at law or in equity. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Lender to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement. A waiver on one occasion shall not be a bar to or waiver of any right on any other occasion.

4.04    Counterparts. This Agreement supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument

4.05    Severability. The invalidity or unenforceability of any one or more phrases, sentences, clauses or sections contained in this Agreement shall not affect the validity or enforceability of the remaining portions of this Agreement, or any part thereof.

4.06    Connecticut Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut applicable to contracts made and to be performed therein without giving effect to the principles of conflict of laws thereof.

4.07    Amendments. This Agreement and any term, covenant or condition hereof may not be changed, waived, discharged, modified or terminated except by a writing executed by the parties hereto.

4.08    Waivers; Payment of Costs. (A) The Guarantor expressly waives demand, presentment, protest, and notice of the acceptance of this Agreement and of any loans made, extensions granted or other action taken in reliance hereon and all other demands and notices of any description in connection with this Agreement, the liabilities hereunder or otherwise.

(B)    The Guarantor agrees to pay all reasonable out-of-pocket costs and expenses, including reasonable attorney's fees and professional fees, arising out of or with respect to the validity, enforcement or preservation of this Agreement provided that a final judgment in a court of competent jurisdiction is obtained by Lender to the effect that Lender's claim hereunder was valid.

(C)    EACH OF THE GUARANTOR AND, BY ACCEPTANCE HEREOF, LENDER ACKNOWLEDGES THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION.

(D)    THE GUARANTOR AND, BY ACCEPTANCE HEREOF, LENDER, WAIVES TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART AND THE DEFENSE OR THE ENFORCEMENT OF ANY OF THE LENDER'S RIGHTS AND REMEDIES. HEREUNDER EACH OF THE GUARANTOR AND, BY ACCEPTANCE HEREOF, LENDER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEY.

Remainder of page intentionally left blank.

This Agreement is made with the knowledge that Lender will rely upon the statements made herein and the indemnity contained herein in making the Loan and is made for the purpose of inducing Lender to consummate and close the Loan.

**GUARANTOR:**

_____

Ahron Rudich

# EXHIBIT E

All the that certain real property, situated in the Town of Avon, County of Hartford, State of Connecticut being part of a Condominium known as AVON PLACE CONDOMINIUM and designated as Unit Nos. 101A, 102A, 103A, 104A, 105A, 106A, 107A, 108A, 109A, 110A, 111A, 112A, 113A, 114A, 116A, 117A, 118A, 120A, 121A, 202A, 203A, 204A, 205A, 206A, 207A, 208A, 209A, 210A, 211A, 212A, 213A, 214A, 215A, 216A, 217A, 218A, 219A, 220A, 221A, 301A, 302A, 303A, 304A, 305A, 306A, 307A, 308A, 310A, 311A, 312A, 313A, 314A, 316A, 317A, 318A, 319A, 320A, 101B, 102B, 103B, 104B, 105B, 106B, 107B, 108B, 109B, 111B, 112B, 114B, 115B, 116B, 117B, 118B, 120B, 121B, 201B, 202B, 204B, 205B, 206B, 207B, 208B, 209B, 210B, 212B, 213B, 214B, 215B, 216B, 217B, 218B, 219B, 220B, 221B, 301B, 302B, 303B, 304B, 305B, 306B, 307B, 308B, 309B, 311B, 312B, 313B, 314B, 315B, 316B, 317B, 318B, 320B, 101C, 102C, 103C, 105C, 106C, 107C, 108C, 109C, 110C, 111C, 112C, 113C, 114C, 115C, 116C, 117C, 118C, 119C, 120C, 121C, 201C, 202C, 204C, 205C, 206C, 207C, 208C, 209C, 210C, 211C, 212C, 214C, 216C, 217C, 218C, 219C, 220C, 221C, 301C, 303C, 305C, 306C, 307C, 311C, 313C, 316C, 317C, 318C, 319C, 320C, 101D and 102D.

Together with all appurtenances thereto, being more particularly set forth and described in a Declaration of Condominium dated November 12, 1979 and recorded in Volume 115 at Page 505; as amended by Amendment dated April 19, 1989 and recorded in Volume 221 at Page 144; as further amended by Amendment dated October 22, 1992 and recorded in Volume 267 at Page 726; as further amended by Amendment dated October 13, 1994 and recorded in Volume 301 at Page 446, as further amended by Amendment dated February 1, 2019 and recorded in Volume 726 at Page 469, all of the Avon Land Records.

All that certain real property, situated in the Town of Avon, County of Hartford and State of Connecticut being part of a condominium known as AVON PLACE CONDOMINIUM and designated as Units 104C, 110B, 113B, 115A, 119A, 119B, 203B, 211B, 215C, 304C, 308C, 309A, 309C, 310B, 310C and 315A.

Together with all appurtenances thereto, being more particularly set forth and described in a Declaration of Condominium dated November 12, 1979 and recorded in Volume 115 at Page 505; as amended by Amendment dated April 19, 1989 and recorded in Volume 221 at Page 144; as further amended by Amendment dated October 22, 1992 and recorded in Volume 267 at Page 726; as further amended by Amendment dated October 13, 1994 and recorded in Volume 301 at Page 445; as further amended by Amendment dated February 1, 2019 and recorded in Volume 726 at Page 469, all of the Avon Land Records.

# EXHIBIT F

Record and Return To:
Daniel V. D'Aprile Jr., Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
One State Street, 14th Floor
Hartford, Connecticut 06103

## OPEN-END MORTGAGE DEED AND SECURITY AGREEMENT

**TO ALL PEOPLE TO WHOM THESE PRESENTS SHALL COME, GREETINGS:**

Effective as of this 30th day of September, 2022, **AVON PLACE LLC,** a Connecticut limited liability company, with a notification address of 710 Avenue L, Brooklyn, New York 11230-5112 (hereinafter called **"Mortgagor"**), for the consideration of Ten Dollars ($10.00) and other good and valuable consideration received to Mortgagor's full satisfaction of **BANKWELL BANK,** a Connecticut banking corporation having an office located at 258 Elm Street, New Canaan, Connecticut 06840 (hereinafter called **"Mortgagee"**); does hereby freely give, grant, bargain, sell, alienate, convey and confirm, WITH MORTGAGE COVENANTS, unto the Mortgagee, its successors and assigns, forever, the following property, interests and rights now or hereafter acquired (collectively, the **"Mortgaged Property"**):

(a)    All those certain condominium units and an undivided interest in common elements of the condominiums in the Town of Avon, County of Hartford, State of Connecticut and being more particularly described as Unit Nos. 101A, 102A, 103A, 104A, 105A, 106A, 107A, 108A, 109A, 110A, 111A, 112A, 113A, 114A, 116A, 117A, 118A, 120A, 121A, 202A, 203A, 204A, 205A, 206A, 207A, 208A, 209A, 210A, 211A, 212A, 213A, 214A, 215A, 216A, 217A, 218A, 219A, 220A, 221A, 301A, 302A, 303A, 304A, 305A, 306A, 307A, 308A, 310A, 311A, 312A, 313A, 314A, 316A, 317A, 318A, 319A, 320A, 101B, 102B, 103B, 104B, 105B, 106B, 107B, 108B, 109B, 111B, 112B, 114B, 115B, 116B, 117B, 118B, 120B, 121B, 201B, 202B, 204B, 205B, 206B, 207B, 208B, 209B, 210B, 212B, 213B, 214B, 215B, 216B, 217B, 218B, 219B, 220B, 221B, 301B, 302B, 303B, 304B, 305B, 306B, 307B, 308B, 309B, 311B, 312B, 313B, 314B, 315B, 316B, 317B, 318B, 320B, 101C, 102C, 103C, 105C, 106C, 107C, 108C, 109C, 110C, 111C, 112C, 113C, 114C, 115C, 116C, 117C, 118C, 119C, 120C, 121C, 201C, 202C, 204C, 205C, 206C, 207C, 208C, 209C, 210C, 211C, 212C, 214C, 216C, 217C, 218C, 219C, 220C, 221C, 301C, 303C, 305C, 306C, 307C, 311C, 313C, 316C, 317C, 318C, 319C, 320C, 101D, and 102D in the Declaration of Condominium by Arnold C. Greenberg, Trustee, dated November 12, 1979, and recorded in Volume 115, Page 505 of the Avon Land Records, which Declaration has been amended by the Amendment to Declaration of Condominium By Arnold C. Greenberg, Trustee Regarding Avonwood Condominium dated October 22, 1992, and recorded in Volume 267, Page 726 of the Avon Land Records (the **"Declaration"**) which real property is more particularly set forth and described in the attached **Schedule "A"** (hereinafter called the **"Premises"**).

(b)    All the right, title and interest of Mortgagor, now owned or hereafter acquired, in or to the land lying in the bed of any street, road or avenue, opened or proposed, and any and all sidewalks, plazas, alleys, strips and gores, in front of, adjoining or adjacent to the Premises; and any and all privileges, tenements, hereditaments, licenses, easements, rights, royalties, mineral, oil and gas rights, issues and profits, water, water rights, water stock, and appurtenances, reversion or reversions and remainder or remainders belonging or in any way appurtenant to the Premises.

(c)    All right, title and interest of Mortgagor in or to any and all equipment, machinery, apparatus, appliances, fittings, fixtures, chattels of every kind and nature whatsoever,

now or hereafter located in, upon or about the Premises, or any part thereof, and used or usable in connection with any present or future occupancy or operation of the Premises, and all renewals and replacements thereof and additions and accessions thereto, whether or not the same are or shall be attached to the Premises in any manner (hereinafter collectively called the **"Service Equipment"**).

(d)     All of the right, title and interest of Mortgagor in and to all machinery, building supplies and materials, goods, contract rights relating to construction upon the Premises, inventory, all refundable, returnable or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Mortgagor with any governmental agencies, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs, trade names, trademarks, logos, and all other personal property (other than the Service Equipment) of any kind or character, as defined in and subject to the provisions of the Connecticut Uniform Commercial Code (the **"Code"**), now or hereafter located, or to be located, upon, within or about the Premises, or which are or may be used in or related to the planning, development, financing or operation of all or any portion of the Premises, or which are or may be used in or related to the planning, development, financing or operation of all or any portion of the Premises, together with all accessories, additions, replacements and substitutions thereto or therefor and the proceeds thereof and Mortgagor agrees with respect to all additions and replacements to execute and deliver from time to time such further instruments as may be reasonably requested by Mortgagee to confirm the conveyance, transfer and assignment of any of the foregoing.

(e)     Any and all plans, specifications, shop drawings, and other technical descriptions prepared for any construction of any improvements on the Premises and all amendments and modifications thereof.

(f)     All right, title and interest of Mortgagor in and under all escrows, documents, instruments, chattel paper, and general intangibles, as the foregoing terms are defined in the Code, and all contract rights, franchises, books, records, plans, specifications, permits, licenses, approvals, actions and causes of action, which now or hereafter relate to, are derived from or are used in connection with the Premises or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon.

(g)     All right, title and interest of Mortgagor in and under all leases, lettings, tenancies and licenses of the Premises, or any part thereof now or hereafter entered into and all amendments, extensions, renewals and guaranties thereof, all security therefor, and moneys payable thereunder (collectively, the **"Leases"**).

(h)     All of the rents, receipts, revenues, issues thereof and profits now due or which may become due or to which Mortgagor may now or hereafter shall become entitled (whether upon the expiration of any applicable period of redemption or otherwise) or may demand or claim, arising or issuing from or out of any and all using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying the Mortgaged Property or any part thereof, including, without limiting the generality of the foregoing, minimum rents, additional rents, percentage rents, parking maintenance charges or fees, tax and insurance contributions, proceeds of sale of electricity, gas, chilled and heated water and other utilities and services, deficiency rents, security deposits and liquidated damages following default or late payment of rent, premiums payable by any lessee upon the exercise of a cancellation privilege provided for in any of the Leases and all proceeds payable under any policy of insurance covering loss of rents

2

resulting from untenantability caused by destruction or damage to the Mortgaged Property, together with any and all rights and claims of any kind which Mortgagor may have against any lessee under any of the Leases or any subtenants or occupants of the Mortgaged Property

(i)    Any and all unearned premiums, accrued, accruing or to accrue under any insurance policy or policies now or hereafter obtained by Mortgagor and all proceeds payable by reason of the conversion, voluntary or involuntary, of the Mortgaged Property, the improvements now or hereafter constructed thereon and/or any other property or rights encumbered or conveyed hereby, or any part thereof, into cash or liquidated claims.

(j)    Any and all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease in the value of the Mortgaged Property, to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by Mortgagee, and of the reasonable attorneys' fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment, and Mortgagor agrees to execute and deliver, from time to time, such further instruments as may be reasonably requested by Mortgagee to confirm such assignment to Mortgagee of any such award or payment.

(k)    Any and all further estate, right, title, interest, property, claim and demand whatsoever, either in law or in equity, of Mortgagor, in or to any of the above.

(l)    Any and all "proceeds" of any of the above-described Mortgaged Property, which term "proceeds" shall have the meaning given to it in the Code.

TO HAVE AND TO HOLD the above granted and bargained Mortgaged Property, with the privileges and appurtenances thereof, unto Mortgagee, its successors and assigns forever, to Mortgagee and its own proper use and behoof. Mortgagor does for itself and its successors and assigns also covenant with Mortgagee, its successors and assigns, that at and until the ensealing of these presents Mortgagor is well seized of the Mortgaged Property as a good indefeasible estate in FEE SIMPLE; and has good right to bargain and sell the same in manner and form as above written; and that the same is free from all encumbrances whatsoever, except the encumbrances, if any, set forth and listed on the Schedule B to the Title Insurance Policy delivered to Mortgagee in connection herewith (the **"Permitted Encumbrances"**).

AND FURTHERMORE, Mortgagor does by these presents bind itself and its successors and assigns forever to warrant and defend the above granted and bargained Mortgaged Property to Mortgagee, its successors and assigns, against all claims and demands whatsoever, except as aforesaid.

THE CONDITION OF THIS DEED IS SUCH THAT:

WHEREAS, the Mortgagee as of this date has made to the Mortgagor a loan in the principal amount of Twenty Five Million Three Hundred Twelve Thousand Five Hundred and 00/100 Dollars ($25,312,500.00) (the "**Loan**"), as evidenced by a Promissory Note dated of even date herewith in such amount payable to the Mortgagee or order, a copy of which is attached hereto as **Schedule B** and made a part hereof (the "**Note**").

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

AND, WHEREAS, IN CONSIDERATION THEREOF, AND IN ORDER MORE FULLY TO PROTECT THE SECURITY OF THIS MORTGAGE, MORTGAGOR HEREBY REPRESENTS, WARRANTS, COVENANTS AND AGREES AS FOLLOWS.

## I.
## COVENANTS OF MORTGAGOR

**1.1.    Competence to Execute Financing Agreements**. Mortgagor is a limited liability company in existence in the State of Connecticut and has full power and authority to execute and deliver the Note, this Mortgage, all Financing Agreements (as hereafter defined) and all other agreements and documents required of Mortgagor, to Mortgagee, and the execution and delivery of the same is not in violation of and will not result in a default (or with the giving of notice or the passage of time, or both, would constitute such a default) pursuant to any agreements or understanding, whether written or oral, which Mortgagor has or may have with any person or entity.

**1.2.    Legal Tender and Application of Payments**. Mortgagor shall pay the entire Indebtedness stated in the Note, including, but not limited to, all outstanding principal and the interest thereon in lawful money of the United States at the times and in the manner set forth in the Note and herein. All amounts due to Mortgagee under the Note, this Mortgage or any of the Loan Documents shall be secured by the lien of this Mortgage and shall hereinafter be referred to as the "**Indebtedness**."

Unless applicable law provides otherwise, all payments received by Mortgagee under the Note and this Mortgage, at the option of Mortgagee, shall be applied by Mortgagee in the following order:

(a)    to the then outstanding reasonable charges and expenses incurred by Mortgagee in sustaining and/or enforcing any security granted to Mortgagee in connection with the Note and as otherwise provided herein and in the Financing Agreements;

(b)    to the then outstanding late charges imposed against Mortgagor in connection with the Loan evidenced by the Note;

(c)    to any unpaid and accrued interest; and then

(d)    to the outstanding principal Indebtedness of Mortgagor in favor of Mortgagee.

**1.3.    Taxes, Assessments and Other Charges**. Mortgagor shall pay and discharge promptly, before the same shall become delinquent, all taxes, assessments, sewer rents, water rates and other charges of any kind now or hereafter levied or assessed upon the Mortgaged Property or any part thereof, or upon the Note, or upon the interest of Mortgagee in the Mortgaged Property (hereinafter collectively referred to as the "**Impositions**"); and upon request of Mortgagee, Mortgagor shall exhibit to Mortgagee receipts for the payment of all Impositions prior to the date when the same shall become delinquent. Mortgagor shall not be required to pay, discharge or remove any Imposition so long as Mortgagor contests in good faith such Imposition or the validity, applicability or amount thereof by an appropriate legal proceeding which operates to prevent the collection of such amounts and the sale of the Mortgaged Property or any portion thereof; provided, however, that prior to the date on which such Imposition would otherwise have become delinquent Mortgagor shall have given Mortgagee prior notice of such contest and

4

deposited with Mortgagee an amount equal to at least one hundred percent (100%) of the total of (1) the balance of such Imposition then remaining unpaid, and (2) all interest, penalties, costs and charges accrued or accumulated thereon. Mortgagor shall increase such deposit as and when necessary in order for such deposit to continue at all times to be not less than one hundred percent (100%) of the total of such clauses (i) and (ii). Any such contest shall be prosecuted with due diligence, and Mortgagor shall promptly pay the amount of such Imposition as finally determined, together with all interest and penalties payable in connection therewith. Mortgagee shall have the full power and authority to apply any amount deposited with Mortgagee under this Section to the payment of any unpaid Imposition in order to prevent the sale or forfeiture of the Mortgaged Property for non-payment thereof. Mortgagee shall bear no liability, however, for failure to so apply any amount deposited hereunder unless Mortgagor requests the application of such amount to the payment of the particular Imposition for which such amount was deposited. Any surplus retained by Mortgagee after payment of the Imposition for which a deposit was made shall be repaid to Mortgagor (without interest) unless an Event of Default shall have occurred under the provisions of this Mortgage, in which case said surplus may be retained by Mortgagee to be applied to the Indebtedness in such order and manner as Mortgagee may reasonably determine. Notwithstanding any provision of this Section to the contrary, Mortgagor shall pay any Imposition which it might otherwise be entitled to contest if, in the sole discretion of Mortgagee, the Mortgaged Property is in jeopardy or in danger of being forfeited or foreclosed. If Mortgagor refuses to pay any such Imposition, Mortgagee may (but shall not be obligated to) make such payment and Mortgagor shall reimburse Mortgagee on demand with interest at the rate accruing on the Note.

### 1.4.    Insurance

(a)    Hazard Insurance. Mortgagor shall be cited as a first mortgagee/loss payee with respect to the Premises. In the event of any loss, Mortgagor will give immediate notice thereof to Mortgagee. Subject to the terms of the Declaration, Mortgagor hereby authorizes Mortgagee, at its option, and is hereby constituted and appointed the true and lawful attorney-in-fact of Mortgagor, in the name and stead of Mortgagor, but in the uncontrolled discretion of said attorney, to collect, adjust and compromise any losses under any of the insurance policies, to endorse Mortgagor's name on any document or instrument in payment of any insured loss and, after deducting the costs of collection, to apply the proceeds, at Mortgagee's sole option, as follows, (i) as a credit upon the Indebtedness secured hereby, whether or not the same shall be then due and payable, or (ii) to repairing or restoring the Mortgaged Property or any part thereof, in which event, Mortgagee shall not be obligated to see to the proper application thereof, nor shall the amount so released or used by deemed a payment on any Indebtedness as secured hereby and, if any amounts are applied to principal, they shall be applied to installments in inverse order of maturity. Any failure on the part of the Mortgagee to secure physical evidence of any insurance required herein shall not relieve the Mortgagor of its responsibilities hereunder.

(b)    Liability Insurance. Mortgagor shall obtain, carry and maintain such comprehensive casualty, general liability and indemnity insurance, including, but not limited to, Workers' Compensation insurance as may be reasonably required from time to time by Mortgagee in forms and with companies reasonably approved by Mortgagee, and in an amount of not less than $1,000,000 per occurrence/$2,000,000 aggregate with $3,000,000 of umbrella liability coverage for bodily injury and/or property damage liability written on an occurrence basis with a broad form endorsement. Such insurance policies, including renewals thereof, shall be deposited with Mortgagee and shall contain a provision designating Mortgagee as an additional insured party and provide for not less than thirty (30) days written notice to Mortgagee prior to any cancellation thereof or material change therein.

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

(c)    Other Insurance. Mortgagee may, at its option, require Mortgagor to obtain additional insurance in forms, amounts, substance and with companies, institutions or persons reasonably satisfactory to Mortgagee. Such insurance shall provide coverage for, but not be limited to: earthquakes, including subsidence; errors and omissions; fidelity bond insurance; and/or such other insurance reasonably requested by Mortgagee from time to time. If at any time, the Mortgaged Property shall be deemed to be "nonconforming" due to the enactment of any building code, ordinance or regulation, Mortgagor shall immediately insure the Mortgaged Property against: (i) contingent liability from the operation of any such building laws; (ii) demolition insurance; (iii) increased cost of construction insurance; and (iv) increased time to rebuild insurance protection, all in such formats and amounts as shall be satisfactory to Mortgagee. Mortgagor shall maintain rental interruption insurance for not less than twelve (12) months during the entire term of the Loan.  Mortgagor shall also provide boiler and machinery insurance as required by Mortgagee.

If, at any time during the term of this Mortgage, including any extensions thereof, the area in which the Premises, or any part thereof, is located is designated as a "flood prone" area pursuant to the Flood Disaster Protection Act of 1973, or any amendment or supplements thereto, or if such area is identified on official flood maps published by the Department of Housing and Urban Development as either an "A," "A1-30," "AE," "A99," "AO," "V," "V1-30," "VE," "VO," "M," or "E," "flood" area/zone, then, in such event, Mortgagor shall promptly obtain flood insurance (or a formal policy application and evidence as to its payment of the full initial annual premium therefor in the event such determination is made immediately prior to the date hereof and during such initial insurance acquisition waiting period) in an amount equal to that coverage available pursuant to regulations adopted from time to time by the National Flood Insurance Program or the amount of indebtedness hereby secured, whichever is less, and shall otherwise comply with the National Flood Insurance Program as set forth in the Flood Disaster Protection Act of 1973. Mortgagor further covenants and agrees to fully comply with the requirements of the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, as the same may be amended from time to time, and any other law, order, rule, ordinance or regulation concerning flood insurance, to the extent that the same apply to the Premises, or any part thereof.

**1.5.    Eminent Domain.** In the event that the whole or any part of the Mortgaged Property shall be taken by eminent domain, or in the event of any alteration of the grade of any street or highway, or of any other injury to or decrease in value of the Mortgaged Property, or in the event of the reacquisition of the whole or any part of the Mortgaged Property pursuant to the terms of any redevelopment plan or agreement affecting the Mortgaged Property or if any agreement shall be made between Mortgagor and any entity vested with the power of eminent domain, any and all awards and payments on account thereof shall be deposited with Mortgagee. Mortgagor shall give Mortgagee immediate notice of the actual or threatened commencement of any of the foregoing proceedings, and shall deliver to Mortgagee copies of all papers served in connection with any such proceedings. The Mortgagee shall have the right to intervene and participate in any proceedings for and in connection with any such taking, unless such intervention shall be prohibited by the court having jurisdiction over such taking, in which event Mortgagor shall consult with Mortgagee in connection with such proceedings; and Mortgagor shall not enter into any agreement with regard to the Mortgaged Property or any award or payment on account thereof unless Mortgagee shall have consented thereto in writing, which consent shall not be unreasonably withheld. Mortgagor hereby appoints Mortgagee its Attorney-in-Fact, coupled with an interest, and authorizes and empowers such Attorney, at Mortgagee's option, on behalf of Mortgagor, to adjust, compromise or settle the claim for any such award or payment, to collect, receive and retain the proceeds thereof, and to give proper receipts therefor. Mortgagor further

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

agrees, on request, to make, execute, and deliver to Mortgagee any and all assignments and other instruments, as Mortgagee may reasonably require, to confirm or assign all such awards and payments to Mortgagee free and clear of any and all encumbrances of any nature whatsoever.

Notwithstanding any such taking, alteration of grade, other injury to or decrease in value of the Mortgaged Property, or reacquisition of title, or agreement, Mortgagor shall continue to pay interest on the principal sum secured hereby at the rate provided in the Note, and to make any and all payments required by said Note and this Mortgage. Any reduction in the principal sum resulting from the application by Mortgagee of such award or payment as hereinafter set forth shall be deemed to take effect only on the date of such application. The proceeds of any award or payment, after deducting the expenses of collection, including, but not limited to, the counsel fees, other costs and disbursements, incurred by Mortgagee, may be applied by Mortgagee, at its option, toward payment of the indebtedness secured hereby whether or not the same shall be then due or payable (and, if any portion thereof is applied to the principal of the Note, it will be applied in inverse order of maturity), or be paid over wholly or in part to Mortgagor for the purposes of altering or restoring any part of the Mortgaged Property which may have been damaged as a result of any such taking, alteration of grade, or other injury to the Mortgaged Property, or for any other purpose or object satisfactory to Mortgagee, but Mortgagee shall not be obligated to see to the proper application of any amount paid over to Mortgagor, nor shall the amount so paid over to Mortgagor be deemed a payment on any indebtedness secured hereby. The Mortgagee agrees that so long as it is reasonably practical to do so, it will pay over such proceeds to the Mortgagor for restoration of the Mortgaged Property upon the same terms and conditions as applicable to the use of insurance proceeds under **Section 1.4** above.

If prior to the receipt by Mortgagee of such award or payment, the Mortgaged Property shall have been sold on foreclosure of this Mortgage, Mortgagee shall have the right to receive said award or payment to the extent of the debt secured by this Mortgage remaining unsatisfied after such sale of the Mortgage Property, with interest thereon at the rate set forth in the Note, whether or not a deficiency judgment on this Mortgage shall have been sought or recovered or denied, and to the extent of the counsel fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment.

1.6.    **Tax and Insurance Escrow.** Mortgagor agrees, upon an Event of Default, to add to each installment due under the Note, an amount estimated by Mortgagee to be sufficient to enable Mortgagee to pay, prior to the date the same shall become due, all taxes and Impositions provided such monthly sum shall not exceed a sum equal to (i) the taxes and Impositions which will next become due, divided by (ii) the number of payments to become due before one (1) month prior to the date when such taxes and Impositions will become due. Further, Mortgagor agrees, upon an Event of Default, to add to each such installment an additional amount set forth above to be sufficient to enable Mortgagee to pay the premiums that will next become due and payable on the policies of fire, hazard, or other insurance to be obtained pursuant to this Mortgage. Any deficiencies because of the insufficiency of such additional payments shall be promptly deposited by Mortgagor with Mortgagee upon demand by Mortgagee. No trust relationship shall exist between Mortgagor and Mortgagee as to said funds so deposited, and said funds may be co-mingled with Mortgagee's other funds, and no interest shall be paid by Mortgagee to Mortgagor for any funds so deposited. After the occurrence of an Event of Default hereunder, Mortgagee, at its option at any time after such default, may apply the balance remaining of said funds so deposited, as a credit against the Indebtedness in such manner as Mortgagee may determine.

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

**1.7.    Statement on Encumbrances**. Upon request by Mortgagee, Mortgagor shall make all reasonable efforts to obtain from all persons hereafter having or acquiring any interest in or encumbrance on the Mortgaged Property or any part thereof, a writing, duly acknowledged and stating the nature and extent of such interest or encumbrance and that the same is subordinate to this Mortgage and that no offsets or defenses exist in favor thereof against this Mortgage or the Note secured hereby, and Mortgagor shall deliver such writing to Mortgagee.

**1.8.    Books, Records and Accounts**. Mortgagor will keep and maintain or will cause to be kept and maintained proper and accurate books, records and accounts reflecting all items of income and expense in connection with the ownership and operation of the Mortgaged Property or any part thereof, including, but not limited to, any services, equipment or furnishings provided in connection therewith, whether such income or expenses be realized by Mortgagor or by any other person or entity whatsoever and will furnish the same to Mortgagee upon request. Mortgagee or its designee shall have the right from time to time but at all times during normal business hours to examine such books, records and accounts at the office of Mortgagor or other person or entity maintaining such books, records and accounts and to make such copies or extracts thereof as Mortgagee shall desire.

**1.9.    Right to Enter Premises**. Mortgagor hereby grants to Mortgagee and any persons authorized by Mortgagee the unobstructed right to enter and inspect the Mortgaged Property at all reasonable times upon prior reasonable notice during normal business hours.

**1.10.    Protection of Mortgage Lien**. Mortgagor shall pay all reasonable costs and expenses, including reasonable documented counsel fees, incurred by Mortgagee in protecting, sustaining or enforcing the lien of this Mortgage. Mortgagor shall indemnify and hold Mortgagee harmless from all such costs and expenses, including, but not limited to, documented counsel fees, recording fees, costs of title searches, continuation of abstract and preparation of survey, incurred by reason of any action, suit, proceeding, hearing, motion or application before any court or administrative body in which Mortgagee may be a party by reason hereof, including, but not limited to, condemnation, bankruptcy and administrative proceedings, as well as any other proceedings wherein proof of claim is required to be filed or in which it becomes necessary, in Mortgagee's sole opinion, to defend or uphold the terms and priority of this Mortgage. All money reasonably paid or expended by Mortgagee in that regard, together with interest thereon from the date of such payment at the rate set forth in the Note, shall be additional indebtedness secured hereby and shall be immediately and without notice due and payable to Mortgagee by Mortgagor.

**1.11.    Waiver of Liens**. Mortgagor shall furnish to Mortgagee all such waivers and releases of liens or claims upon any Service Equipment as Mortgagee may reasonably require, and shall keep and maintain the Mortgaged Property free from the claim of all persons supplying labor or materials in connection with the construction or repair of any building on the Premises, to the extent applicable. If any mechanic's lien is filed against the Mortgaged Property, Mortgagor shall cause, at its sole cost and expense, the same to be released and discharged of record within thirty (30) days after the date of filing thereof.

**1.12.    Right to Cure**. Mortgagor agrees that, at Mortgagee's option, in case Mortgagor shall fail to pay the same when due, Mortgagee may pay any expense or item (including, but not limited to, taxes, rates, assessments, other charges, insurance premiums, maintenance and repair expenses, and expenses incurred in protection of the lien of this Mortgage) which Mortgagor herein agrees to pay; and may perform any acts or covenants which Mortgagor herein agrees to perform and shall fail to perform, and may add the same, and the expense thereof, including, but not limited to, reasonable documented counsel fees and other costs, charges and

8

disbursements incurred by Mortgagee in connection therewith, to the Indebtedness or may, at its option, deduct the same from any part of money thereafter advanced and Mortgagor agrees to repay on demand, the same to Mortgagee, together with interest thereon at the rate set forth in the Note, from the date on which such payment or expense is made or incurred by Mortgagee, and the same shall be a lien upon the Mortgaged Property prior to any right, title, interest, lien or claim thereto or thereon attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage.

1.13.  **Reliance on Documents**. Mortgagor covenants and agrees that Mortgagee, in making any payment herein authorized in the place and stead of Mortgagor which (i) relates to taxes, assessments, or any other Impositions and any other governmental or municipal charges, fines, impositions or liens asserted against the Mortgaged Property, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy thereof or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof; or (ii) relates to insurance premiums, may do so according to any notice, bill, statement or estimate procured from the appropriate insurer without inquiry into the accuracy or validity thereof; or (iii) relates to any apparent or threatened adverse title, lien, statement of lien, encumbrance, claim or charge, shall be the sole judge of the legality or validity of same; or (iv) relates to the expense of repairs or replacement of any buildings, improvements, Service Equipment or any other Mortgaged Property, shall be the reasonable judge of the state of repairs and the necessity for incurring the expense of any such repairs or replacement; or (v) otherwise relates to any other purpose not specifically enumerated in this Article, may do so whenever, in its reasonable judgment and discretion, such payment shall seem necessary or desirable to protect the full security intended to be created by this Mortgage, and provided further that, in connection with any such payment, Mortgagee, at Mortgagee's option, may and is hereby authorized to obtain a continuation report of title prepared by a title insurance company, the costs and expenses of which shall be repayable by Mortgagor upon demand and shall be secured hereby.

1.14.  **Indemnification**. Mortgagor expressly agrees that any and all expenses incurred in connection with the Indebtedness shall be paid by Mortgagor, including, but not limited to, the cost of title insurance premiums and charges, recording fees, survey costs, brokerage fees, fees charged for the placement and servicing of the Indebtedness, appraisal fees, construction inspection fees, fees charged by consulting architects and engineers, costs of document preparation, and Mortgagee's reasonable attorneys' fees and out-of-pocket expenses and disbursements. Mortgagor agrees to pay all such fees and indemnify and save Mortgagee harmless against the claims of any persons claiming any fees, reimbursements, commissions and/or costs arising out of the Indebtedness. Mortgagor shall indemnify, defend and hold Mortgagee and Mortgagee's directors, officers, employees and agents harmless from and against and reimburse them on demand for all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including reasonable documented attorneys' fees and amounts paid in settlement) which may be imposed upon, asserted against, or incurred or paid by any of them (a) by reason of, on account of or in connection with any act or occurrence relating to the Mortgaged Property or any bodily injury, death, other personal injury or property damage occurring in, upon or in the vicinity of the Premises through any cause whatsoever, (b) as a result of the failure of Mortgagor to perform any of its obligations under any of the Financing Agreements, or (c) on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Property, this Mortgage any Financing Agreement or the Indebtedness, including, without limitation, all claims of any brokers arising out of or in connection with the Note and the transactions contemplated hereunder, except as a result of the gross and willful misconduct or negligence of

9

Mortgagee. Mortgagor shall indemnify and repay Mortgagee immediately upon demand for any expenditures or amounts advanced by Mortgagee at any time under the Financing Agreements, except that principal and interest under the Note shall be paid in accordance with the terms set forth in the Note.

    **1.15.**  **Maintenance and Repair.** Mortgagor shall maintain the Mortgaged Property in good condition, working order and repair, and shall not commit or suffer any waste thereon. Mortgagor shall promptly repair, restore, replace or rebuild any part of the Mortgaged Property which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to in the Article hereof entitled "Eminent Domain."

    **1.16.**  **Alteration and Demolition.** Mortgagor agrees that no building or other property now or hereafter covered by the lien of this Mortgage shall be removed, demolished, or structurally altered.

    **1.17.**  **Restrictions on Sale and Use of Premises and Collateral.** Mortgagor will not sell, lease, pledge, mortgage, grant a deed of trust, otherwise encumber, suffer change in title or ownership of, or otherwise transfer, or vest title in anyone other than Mortgagor to, all or any part of the Mortgaged Property or any other collateral granted to the Mortgagee as security for the Indebtedness or any other indebtedness or obligation owed by the Mortgagor to the Mortgagee, while any part of the Indebtedness secured hereby remains unpaid, except with Mortgagee's prior written consent, which consent shall not be unreasonably withheld. A **"transfer"** of the Property includes: (a) the direct or indirect sale, transfer or conveyance of the Property or any portion thereof or interest therein; (b) the execution of an installment sale contract or similar instrument affecting all or any portion of the Mortgaged Property; (c) if Mortgagor, or any general partner or member of Mortgagor, is a corporation, partnership, limited liability company or other business entity, the transfer of a controlling interest (whether in one transaction or a series of transactions) of any stock, partnership, limited liability company or other ownership interests in such corporation, partnership, limited liability company or entity or the Guarantor(s) fail to maintain management and operational control of the Mortgagor; (d) if Mortgagor, or any general partner or member of Mortgagor, is a corporation, the creation or issuance of new stock by which an aggregate of more than ten percent (10%) of such corporation's stock shall be vested in a party or parties who are not now stockholders; and (e) an agreement by Mortgagor leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of or the grant of a security interest in and to any Leases. Further, unless required by applicable law or unless Mortgagee has otherwise agreed in writing, not to be unreasonably withheld, Mortgagor shall not allow changes in the nature of the uses and occupancy for which the Premises were intended on the date of this Mortgage.

    **1.18.**  **Independence of Premises.** Mortgagor shall not by act or omission permit any building or other improvements on the Premises not subject to the lien of this Mortgage to rely on the Premises or any part thereof or any interest therein to fulfill any municipal or governmental requirement for the existence of such premises or such building or improvement; and no building or other improvement on the Premises shall rely on any premises not subject to the lien of this Mortgage or any interest therein to fulfill any governmental or municipal requirement. Mortgagor shall not by act or omission impair the integrity of the Premises as a single subdivided zoning lot separate and apart from all other premises.

    **1.19.**  **Compliance with Local, State and Federal Regulations.**

        Respecting the Mortgaged Property and the use and operation thereof, Mortgagor

and any guarantor are and shall at all times remain in compliance with all federal, state and local laws and ordinances with respect to the conduct of Mortgagor's business or business operations, and Mortgagor and any guarantor of the Indebtedness are not and shall not be at any time in violation of any zoning, environmental protection (including, without limitation, air pollution, water pollution, and inland wetland proscriptions), health, occupation, safety or other law, regulation or order.

## II.
## SECURITY AGREEMENT

**2.1.    Creation of Security Interest.** This Mortgage shall constitute a Security Agreement within the meaning of the Code with respect to all sums on deposit with Mortgagee hereunder (**"Deposits"**) and with respect to any property included in the definition herein of the words "Mortgaged Property," which interests or property may not be deemed to form a part of the real estate described in **Schedule "A"** or may not constitute a "fixture" (within the meaning of the Code), and all Service Equipment and all replacements of and substitutions for such property and interests, additions to such property, and the proceeds thereof (said property, interests, replacements, substitutions, the proceeds thereof being sometimes herein collectively referred to as the **"Collateral"**). A security interest in and to the Collateral is therefore hereby granted to Mortgagee. The Deposits and all of Mortgagor's right, title and interest therein are hereby assigned to Mortgagee. The foregoing rights and Collateral are hereby granted or assigned to Mortgagee to secure payment of the entire indebtedness secured hereunder and to secure performance by Mortgagor of the terms, covenants and provisions hereof. Accordingly, in addition to any other rights and remedies availed to Mortgagee hereunder, Mortgagee shall have all the rights of a "secured party" under the Code, as amended from time to time.

**2.2.    Warranties, Representations and Covenants of Mortgagor.** Mortgagor hereby warrants, represents and covenants as follows:

(a)    The Collateral shall be kept on or at the Premises, and Mortgagor shall not remove the Collateral from the Premises without the prior consent of Mortgagee, except as otherwise provided herein. Mortgagor shall execute, deliver, file and refile any financing statements, continuation statements, or other security agreements which Mortgagee may require from time to time to confirm the continuing lien of this Mortgage with respect to such Collateral.

(b)    The Mortgagor shall not change its name, identity, or its management while the Indebtedness remains outstanding without the prior written consent of the Mortgagee. In the event of any change in name, management, or identity of Mortgagor which is authorized hereunder, Mortgagor shall promptly, after written request, execute such UCC forms or statements as are deemed by Mortgagee or required pursuant to the Code to be necessary to maintain the continuing priority of Mortgagee's lien upon the Collateral, including future replacements thereof, and shall pay all expenses in connection with the filing and recording thereof.

(c)    To the extent permitted by law, Mortgagor hereby authorizes Mortgagee to sign and file financing or continuation statements at any time with respect to any of the Collateral, without such financing statements being executed by or on behalf of Mortgagor. Mortgagor also irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Mortgagee, as secured party, in connection with the Collateral now or hereafter covered by this Mortgage. Notwithstanding the foregoing, Mortgagor shall execute or cause to be executed, such additional

11

DVD/232919/0679/1854444v1
09/28/22 HRT/DVD)

or alternate financing or continuation statements required by Mortgagee and shall reimburse Mortgagee for all costs and expenses of any kind incurred in connection therewith, including, without limitation, Mortgagee's attorney's fees.

**2.3.   Financing Statements.** A carbon, photographic or other reproduction of this Mortgage or any financing statement relating to this Mortgage shall be sufficient as a financing statement within the meaning of the Code. This Mortgage is effective and shall be effective as a financing statement filed as a fixture filing with respect to the Service Equipment, Collateral and any and all goods which are or are to become fixtures included within the Mortgaged Property as shall be filed for record in the applicable land records. The mailing address of Mortgagee and the address of Mortgagor from which information concerning the security interest may be obtained are set forth on the cover sheet hereof and in the section hereof entitled "Notices."

## III
## ENVIRONMENTAL MATTERS

**3.1.   Representations and Indemnity.** Mortgagor represents, warrants and covenants that:

(a)    No toxic or hazardous substances have been, are or shall be generated, treated, stored or disposed of, or otherwise deposited in or located on the Premises by the Mortgagor or its tenants, including without limitation the surface and subsurface waters of the Premises;

(b)    No activity has been, is or shall be undertaken on the Premises by the Mortgagor or its tenants which has caused or would cause (1) the Premises to become a hazardous waste treatment, storage or disposal facility within the meaning of, or otherwise bring the Premises within the ambit of, the Resource Conservation and Recovery Act of 1976, 42 U.S.C §6901 et seq., as the same may be amended from time to time ("**RCRA**"), or any similar state laws, regulations or local ordinances, (2) a release or threatened release of hazardous waste from the Premises within the ambit of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§9601-9657, as the same may be amended from time to time ("**CERCLA**"), or the Toxic Substances Control Act, 15 U.S.C. §§2601-2629 ("**TSCA**"), or any similar state laws, regulations or local ordinances, or (3) the discharge of pollutants or effluents into any water source or system, or the discharge into the air of any emissions, which would require a permit under the Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq., or the Clean Air Act, 42 U.S.C. §7401, et seq., or any similar state laws, regulations or local ordinances;

(c)    During its term of ownership, neither Mortgagor, nor any tenant or other occupant of the Premises, has caused or suffered to occur, and Mortgagor shall not hereafter cause or suffer to occur, a discharge, spillage, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids or solids, liquid or gaseous products or hazardous waste, as those terms are used in Chapter 446k of the Connecticut General Statutes, Revision of 1958, as the same may be amended from time to time (the "**Environmental Act**"), at, upon, under or within the Premises or any contiguous real estate which has been included in the property description of the Premises within the preceding three (3) years, and during the term of its ownership, neither Mortgagor, nor any tenant or other occupant of the Premises, has been, is or shall be involved in operations at the Premises, nor are there or shall there be any substances or conditions in or on the Premises, which could support a claim or cause of action or lead to the imposition on Mortgagor or any other owner or operator of the Premises of liability or the creation of a lien on

12

the Premises, under RCRA, CERCLA, TSCA, the Environmental Act, or any other Federal, state or local environmental laws, regulations or ordinances (collectively, the **"Environmental Laws"**);

(d)     Mortgagor shall comply strictly and in all respects with the requirements of the Environmental Laws and shall notify Mortgagee promptly in the event of any spill or contamination upon the Premises, and shall promptly forward to Mortgagee copies of all orders, notices, permits, applications or other communications and reports in connection with any such spill or any other matters relating to the Environmental Laws as they may affect the Premises;

(e)     In the event of a change in circumstances relating to the current environmental condition of the Premises, Mortgagor agrees that Mortgagee may perform such reasonable additional environmental due diligence, from time to time, as Mortgagee deems necessary in its reasonable judgment at Mortgagor's expense. The failure of Mortgagor to commence to satisfy the requirements of Mortgagee pursuant to this provision with ninety (90) days after written notice thereof shall be deemed an Event of Default hereunder;

(f)     Mortgagor does hereby agree to, and shall, indemnify and hold harmless Mortgagee, and its directors, officers, employees, agents, successors and assigns forever, from and against all claims, demands, losses, liabilities, damages and expenses, penalties, fines and judgments, including reasonable attorneys' fees, suffered or incurred in connection with, (1) the Environmental Laws, including without limitation the assertion of any lien thereunder, or (2) any spill or contamination affecting the Premises whether or not the same originates or emanates from the Premises or any such contiguous real estate, including without limitation any loss of value of the Premises as a result of any such spill; or (3) the direct or indirect installation, use, generation, manufacture, production, storage, release, threatened release, discharge, disposal or presence of a Hazardous Substance on, under or about the Premises or any portion thereof, including all consequential damages, the costs of any required or necessary repair, cleanup or detoxification, and the costs of the preparation and implementation of any closure, remedial or other required plans. This indemnity shall survive the satisfaction, release or extinguishment of the lien of this Mortgage including any extinguishment of such lien by foreclosure or deed in lieu thereof; and

(g)     In the event of any spill affecting the Premises, whether or not the same originates or emanates from the Premises or any such contiguous real estate, and/or if Mortgagor shall fail to comply with any of the requirements of the Environmental Laws, Mortgagee may, at its election, but without the obligation so to do (or to continue to do so if it commences to do so), give such notices and/or cause such work to be performed at the Premises and/or take any and all other actions as Mortgagee shall deem necessary or advisable in order to remedy said spill or cure said failure of compliance, and any amounts paid as a result thereof, together with interest thereon from the date of payment by Mortgagee and until paid shall be added to and become a part of the indebtedness secured by this Mortgage.

### 3.2.     Remedial Work.

(a)     If any investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature (collectively, the **"Remedial Work"**) is required, or reasonably necessary under any applicable Environmental Law because of or in connection with the current presence, or release of a Hazardous Substance (as such term is defined by the Environmental Laws) into the air, soil, ground water, surface water, or soil vapor on, under or about the Premises or any portion thereof, Mortgagor shall promptly commence and diligently prosecute to completion all the Remedial Work. In all events, the Remedial Work shall

13

be commenced within sixty (60) days after any demand therefor by Mortgagee or such shorter period as may be required under any applicable Environmental Law.

(b) All the Remedial Work shall be performed by contractors, and under the supervision of a consulting engineer, each approved in advance by Mortgagee, which approval shall not be unreasonably withheld. All costs and expenses of the Remedial Work and Mortgagee's monitoring or review of the Remedial Work (including reasonable documented attorneys' fees) shall be paid by Mortgagor. If Mortgagor does not timely commence and diligently prosecute to completion the Remedial Work, Mortgagee may (but shall not be obligated to) cause the Remedial Work to be performed. Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all advances and expenses (including reasonable attorneys' fees) relating to or incurred by Mortgagee in connection with monitoring, reviewing or performing any Remedial Work.

(c) Except with Mortgagee's prior consent, Mortgagor shall not commence any Remedial Work or enter into any settlement agreement, consent decree or other compromise relating to any Hazardous Substances or Environmental Laws which might, in Mortgagee's reasonable judgment, impair the value of Mortgagee's security hereunder. Mortgagee's prior consent shall not be required, however, if the presence or threatened presence of Hazardous Substances on, under or about the Premises poses an immediate threat to the health, safety or welfare of any person or is of such a nature that an immediate remedial response is necessary, and it is not possible to obtain Mortgagee's prior consent. In such event Mortgagor shall notify Mortgagee as soon as practicable of any action taken.

3.3. **Inspection**. Mortgagee shall have the right at all times upon prior reasonable notice and during normal business hours to enter upon and inspect all or any portion of the Premises. Mortgagee may select a consulting engineer to conduct and prepare reports of such inspections, at Mortgagor's sole expense. Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for any and all expenses (including reasonable documented attorneys' fees) relating to or incurred by Mortgagee in connection with any such inspections and reports. The inspection rights granted to Mortgagee in this Section shall be in addition to, and not in limitation of, any other inspection rights granted to Mortgagee in this Mortgage and/or the Note, and shall expressly include the conduct of commercially reasonable construction progress and quality inspections, soil borings and other customary environmental tests, assessments and audits.

## IV.
## EVENTS OF DEFAULT AND REMEDIES

4.1. **Events of Default**. Upon the occurrence of an Event of Default hereunder, the whole of the principal sum, interest accrued thereon, and any and all Indebtedness shall become due and payable forthwith at the option of Mortgagee. Each of the following events shall be deemed to be an **"Event of Default"** hereunder: (a) failure to pay within ten (10) days of when due any installment of principal, interest or other amount due with respect to any and all Indebtedness; or (b) the occurrence of any event or circumstance constituting a default or Event of Default after lapse of any applicable notice and cure period, if any, under any of the Financing Agreements including, without limitation, the Note, this Mortgage or the Commitment Letter, between the Mortgagee and the Mortgagor; or (c) failure to promptly observe, perform or comply with any other material obligation, condition or covenant to be observed, performed or complied with by Mortgagor, the Note or any of the Financing Agreements and said failure continues for thirty (30) days after written notice thereof from Mortgagee provided that if such default cannot

14

reasonably be cured within such thirty (30) day period and Mortgagor shall have commenced to cure such default within such thirty (30) day period and thereafter diligently and expeditiously proceeds to cure the same, the cure period shall be extended for up to an additional sixty (60) days to allow Mortgagor in the exercise of due diligence to cure such default; or (d) the actual waste, removal or demolition of, or structural alteration to, all or any part of the Mortgaged Property except as specifically permitted herein and which waste continues for thirty (30) days from the date of notice thereof; or (e) assignment by Mortgagor of the whole or any part of the rents, income or profits arising from the Mortgaged Property without prior written consent of Mortgagee; or (f) any material default under any other indebtedness or obligation, owed to the Mortgagee by Mortgagor; or (g) Mortgagor shall change management, identity or cease to legally exist, or be deprived of title, possession or control of the Mortgaged Property by process or operation of law or order of any court, or if any foreclosure proceeding shall be instituted on any lien or mortgage of any kind affecting Mortgagor's interest in the Mortgaged Property, or (h) the filing by or against Mortgagor or any guarantor of the Indebtedness of any petition, arrangement, reorganization, or the like under any insolvency or bankruptcy law, or the adjudication of them or any of them as a bankrupt, or the making of an assignment for the benefit of the creditors of Mortgagor or any such guarantor, or the appointment of a receiver for any part of any of their respective properties and the failure to dismiss the same within one hundred twenty (120) days or the admission in writing by the Mortgagor or any guarantor of the inability to pay debts are they become due; or (i) any sale, conveyance, lease, transfer or encumbrance of any material right, title or interest in the Mortgaged Property which is not permitted in this Mortgage or the Financing Agreements; or (j) if Mortgagor is a limited liability company, any material, adverse amendment or modification of Mortgagor's articles of organization or operating agreement except as expressly provided herein, or (k) any merger or consolidation of Mortgagor with another entity or change in the control or management of Mortgagor or any guarantor (except as provided in **Section 1.17** above); or (l) any material representation, warranty or disclosure made by Mortgagor or any guarantor made herein or in any of the other Financing Agreements, or any application, correspondence, communication, statement, certificate or other data furnished by Mortgagor in connection with the Loan, is determined by Mortgagee to have been materially false or misleading as of the date as of when made; or (m) a default occurs under any mortgage which is prior or subordinate to the lien of this Mortgage or the grantee under any such prior or subordinate mortgages commences a foreclosure action in connection with said mortgage against Mortgagor's interest in the Mortgaged Premises; or (n) Mortgagor uses the Loan proceeds for any purpose other than for the reimbursement for the purchase of the Premises; or (o) the death, disability or attempted revocation or termination of any Guarantor unless a replacement Guarantor is selected in accordance with the terms of the Note.

    **4.2.**  **Remedies Generally.** If an Event of Default shall occur, in addition to all other rights of Mortgagee as provided herein or by law, Mortgagee may, at its sole election, also exercise any or all of the following rights, remedies and recourses:

    (a)  Acceleration: Declare the principal balance on the Note, the accrued interest and any other accrued but unpaid portion of the Indebtedness to be immediately due and payable, without notice, presentment, protest, demand or action of any nature whatsoever (each of which hereby is expressly waived by Mortgagor), whereupon the same shall become immediately due and payable, time being of the essence in this Mortgage.

    (b)  Termination of License and/or Entry of Mortgaged Property: Demand that Mortgagor shall forthwith surrender to Mortgagee actual possession of the Mortgaged Property, and/or terminate the license granted Mortgagor to receive the rents under the Leases and, to the extent permitted by law, enter and take possession of all of the Mortgaged Property without the

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

appointment of a receiver, or an application therefor, and exclude Mortgagor and its agents and employees wholly therefrom, and have joint access with Mortgagor to the books, papers and accounts of Mortgagor.

If Mortgagor shall for any reason fail to surrender or deliver the Mortgaged Property or any part thereof after such demand by Mortgagee, Mortgagee may obtain a judgment or decree conferring upon Mortgagee the right to immediate possession or requiring Mortgagor to deliver immediate possession of the Mortgaged Property to Mortgagee, and Mortgagor hereby specifically covenants and agrees that Mortgagor will not oppose, contest or otherwise hinder or delay Mortgagee in any action or proceeding by Mortgagee to obtain such judgment or decree. Mortgagor will pay to Mortgagee, upon demand, all expenses of obtaining such judgment or decree, including reasonable documented compensation to Mortgagee, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Indebtedness and shall be secured by this Mortgage.

Upon every such entering upon the Mortgaged Property, Mortgagee may: (1) undertake all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (2) insure or keep the Mortgaged Property insured; (3) manage and operate the Mortgaged Property and exercise all the rights and powers of Mortgagor to the same extent as Mortgagor could in its own name or otherwise act with respect to the same; and (4) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted to Mortgagee, all as Mortgagee from time to time may determine to be in its best interest. Whether or not Mortgagee has obtained possession of the Mortgaged Property, upon the termination of Mortgagor's license to receive the rents under the Leases, Mortgagee may collect, sue for and receive all the rents and other issues, profits and revenues from the Mortgaged Property, including those past due as well as those accruing thereafter. Anything in this Mortgage to the contrary notwithstanding, subject to the provisions of any attornment and non-disturbance agreement entered into by and between Mortgagee and any lessee, Mortgagee shall not be obligated to discharge or perform the duties of the landlord to any tenant or lessee or incur any liability as the result of any exercise by Mortgagee of its rights under this Mortgage, and Mortgagee shall be liable to account only for the rents actually received by Mortgagee.

Whether or not Mortgagee takes possession of the Mortgaged Property, Mortgagee may, but shall not be obligated to, make, modify, enforce, cancel or accept surrender of any Lease, remove and evict any lessee, increase or decrease rents under any Lease, appear in and defend any action or proceeding purporting to affect the Mortgaged Property, and perform and discharge each and every obligation, covenant and agreement of Mortgagor contained in any Lease. Neither the entering upon and taking possession of the Mortgaged Property, nor the collection of any rents and the application thereof as aforesaid, shall cure or waive any Event of Default theretofore or thereafter occurring, or affect any notice of an Event of Default hereunder or invalidate any act done pursuant to any such notice. Mortgagee shall not be liable to Mortgagor, anyone claiming under or through Mortgagor, or anyone having an interest in the Mortgaged Property by reason of anything done or left undone by Mortgagee hereunder. Nothing contained in this Section shall require Mortgagee to incur any expense or do any act. If the rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and/or collecting the rents, any funds expended by Mortgagee for such purposes shall become Indebtedness of Mortgagor to Mortgagee secured by this Mortgage. Such amounts, together with interest at the default rate under the Note and attorneys' fees, if applicable, shall be immediately due and payable. Notwithstanding Mortgagee's continuance in possession or receipt and

16

application of rents under the Leases, Mortgagee shall be entitled to exercise every right provided for in this Mortgage or by law upon or after the occurrence of an Event of Default. Any of the actions referred to in this Section may be taken by Mortgagee at such time as Mortgagee is so entitled, to the extent permitted by law, without regard to the adequacy of any security for the Indebtedness hereby secured.

(c) Proofs of Claim. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Mortgagor, its creditors or its property, Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Mortgagee allowed in such proceedings for the entire amount of the Indebtedness at the date of the institution of such proceedings and for any additional amount of the Indebtedness after such date.

4.3. **No Waiver, etc.** Any failure by Mortgagee to insist upon the strict performance by Mortgagor or any guarantor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor or any guarantor, of any and all of the terms and provisions of this Mortgage, the Note to be performed by Mortgagor or any guarantor; and neither Mortgagor, nor any guarantor nor any other person now or hereafter obligated for the payment of the whole or any part of the Indebtedness shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor, any guarantor or of any other person so obligated to take action to foreclose this Mortgage or otherwise enforce any of the provisions of this Mortgage or of any obligation secured by this Mortgage, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the Indebtedness or of any obligor for such Indebtedness, or by reason of any agreement or stipulation between any subsequent owner or owners of the Mortgaged Property and Mortgagee extending the time of payment or modifying the terms of the Note or this Mortgage without first having obtained the consent of Mortgagor or such other person, and in the latter event, Mortgagor and all such other persons shall continue to be liable to make such payments according to the terms of any such agreement of extension or modification unless expressly released and discharged in writing by Mortgagee; and, regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien on the Premises, Mortgagee may release the obligation of anyone at any time liable for any of the Indebtedness or any part of the security held for said Indebtedness and may extend the time of payment or otherwise modify the terms of the Note and/or this Mortgage without, as to the security or the remainder thereof, in any way impairing or affecting the lien of this Mortgage, or the priority of such lien, as security for the payment of said Indebtedness as it may be so extended or modified over any subordinate lien; and the holder of any subordinate lien shall have no right to terminate any Lease whether or not such Lease shall be subordinate to this Mortgage; and Mortgagee may resort for the payment of the Indebtedness to any other security therefor, held by Mortgagee in such order and manner as Mortgagee may elect.

4.4. **Marshalling.** Mortgagee shall not be compelled to release, or be prevented from foreclosing or enforcing this Mortgage upon all or any part of the Mortgaged Property, unless the entire Indebtedness and all items hereby secured shall be paid in lawful money as aforesaid; and shall not be required to accept any part or parts of the Mortgaged Property, as distinguished from the entire whole thereof, as payment of or upon the Indebtedness to the extent of the value of such part or parts; and shall not be compelled to accept or allow any apportionment of the Indebtedness to or among any separate parts of the Mortgaged Property. In case of a foreclosure

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

sale, the Mortgaged Property may be sold in one parcel and as an entirety or in such parcels, manner or order as Mortgagee in its sole discretion may elect.

**4.5.** **Interest After Judgment**. Should Mortgagee herein obtain a judgment against Mortgagor, interest shall accrue on said judgment at the default interest rate set forth in the Note or as provided by statute, whichever rate shall be greater at that time

**4.6.** **Rights and Remedies Cumulative**. To the extent permitted by law, the rights and remedies provided for in this Mortgage, or which Mortgagee may have otherwise, at law or in equity (including, but not limited to, the right to damages by reason of the failure of Mortgagor to keep, observe and perform any of the covenants or agreements contained in this Mortgage), shall be distinct, separate and cumulative, and shall not be deemed to be inconsistent with each other, and none of them, whether or not exercised by Mortgagee, shall be deemed to be in exclusion of any other, and any two or more of all such rights and remedies may be exercised at the same time  Further, Mortgagee may resort for the payment of the Indebtedness to its several securities therefor in such order or manner as it may think fit. If Mortgagor has given Mortgagee one or more mortgages other than this Mortgage with respect to the Mortgaged Property or any portion thereof, then all such mortgages, and all rights and remedies provided for in all such mortgages shall remain distinct and separate and none of them shall merge or be merged with this Mortgage, or any other mortgages.

**4.7.** **Foreclosure Expenses**. If this Mortgage shall be foreclosed, there shall be included in the computation of the Indebtedness the reasonable documented amount or the fee for the services of the attorneys retained by Mortgagee in the foreclosure action or proceeding, as well as any and all disbursements, costs and other expenses incurred directly or indirectly by Mortgagee in connection with such foreclosure action or proceeding, including, without limitation, appraisal fees.

**4.8.** **Waiver Of Rights.** MORTGAGOR ACKNOWLEDGES THAT THE TRANSACTION OF WHICH THIS MORTGAGE IS A PART IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES MORTGAGOR'S RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR AS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE MORTGAGEE MAY DESIRE TO USE. FURTHER, MORTGAGOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL VALUATION, APPRAISEMENT, HOMESTEAD EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS, NOW IN FORCE OR WHICH HEREAFTER BECOME LAW.

**4.9.** **Jury Trial Waiver.** MORTGAGOR HEREBY WAIVES TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THE NOTE AND THIS MORTGAGE ARE A PART AND/OR TO THE DEFENSE OR ENFORCEMENT OF ANY OF MORTGAGEE'S RIGHTS AND REMEDIES, INCLUDING, WITHOUT LIMITATION, TORT CLAIMS. MORTGAGOR ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY AND ONLY AFTER CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH ITS ATTORNEYS.

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

V.
## MISCELLANEOUS PROVISIONS

### 5.1.    Miscellaneous Provisions.

(a)    Notices. A demand upon or notice to Mortgagor hereunder shall be deemed sufficient and commercially reasonable notice and shall be effective if deposited in the mail or sent by facsimile transmission or by a recognized overnight courier addressed to Mortgagor at the following address: to Avon Place LLC, 710 Avenue L, Brooklyn, New York 11230-5112 Attn: Ahron Rudich or directed to Mortgagor at the last address furnished in writing to Mortgagee, or directed to the address at which Mortgagee customarily communicates with Mortgagor with a copy to Potok Law, LLC, 747 Farmington Avenue, Suite 9, New Britain, Connecticut 06053 Attn: Benjamin Potok, Esq. Any notice to Mortgagee hereunder shall be effective only upon its receipt by Mortgagee in writing at the following address: Bankwell Bank, Attention: Commercial Lending, 258 Elm Street, New Canaan, Connecticut 06840, with a copy to McElroy, Deutsch, Mulvaney & Carpenter, LLP, One State Street, 14th Floor, Hartford, Connecticut 06103 Attn: Daniel V. D'Aprile Jr., Esq.

(b)    Interpretation. Mortgagor and guarantor shall observe, perform or comply with all obligations, conditions and covenants contained herein and in the Financing Agreements. The term **"Financing Agreements,"** or **"Loan Documents"**, as used herein, shall mean and refer to any and all agreements evidencing, securing or relating in any way to the past, present or future indebtedness or obligations or liabilities of every kind, nature and description of Mortgagor and guarantor owing to Mortgagee, including, but not limited to, this Mortgage, and the Note, both executed of even date herewith, any guarantee agreements and such other agreements as are executed by Mortgagor or guarantor, the Commitment Letter, between the Mortgagor and the Mortgagee and any modification, supplementation or amendment thereof made from time to time. Wherever used in this Mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the word **"Mortgagor"** shall include "any subsequent owner or owners of the Mortgaged Property or any part thereof;" the word **"Mortgagee"** shall include "any subsequent holder or holders of this Mortgage or the Note;" the word **"Guarantor"** shall mean the present Guarantors and any present of future guarantor of the Note and the word **"Loan,"** shall mean "any and all indebtedness of Mortgagor to Mortgagee as evidenced by the Note and/or secured by this Mortgage". Unless otherwise provided herein, plural or singular shall include each other, and pronouns in any gender shall be construed as masculine, feminine or neuter as the context requires.

(c)    Required Notification.

(i)    Mortgagor shall immediately give notice to Mortgagee of any material default under the terms of any Financing Agreements and shall notify Mortgagee promptly of the occurrence of any of the following:

(1)    a fire or other casualty causing damage to the Mortgaged Property;

(2)    receipt of notice of eminent domain proceedings or condemnation of the Mortgaged Property;

DVD/232919/0679/1654444v1
09/28/22-HRT/DVD

(3)      receipt of notice from any governmental authority relating to the structure, use or occupancy of the Mortgaged Property or any real property adjacent to the Mortgaged Property;

(4)      receipt of any notice from any tenant pursuant to any Lease of all or any portion of the Mortgaged Property asserting that Mortgagor is in breach of a Lease obligation to such tenant;

(5)      change in the use of the Mortgaged Property;

(6)      receipt of any notice from the holder of any lien or security interest in the Mortgaged Property asserting that Mortgagee is in breach of an obligation to such holder;

(7)      commencement of any litigation affecting the Mortgaged Property, and/or

(8)      any contract or agreement with respect to any sale or other transfer of any part of the Mortgaged Property.

(ii)      Mortgagor shall also promptly provide notice to Mortgagee of:

(1)      any proceeding, investigation or inquiry commenced by any governmental authority with respect to the presence of any Hazardous Substance on, under or about the Premises or the migration of any Hazardous Substance to or from any adjoining property;

(2)      all claims made by any person or entity against Mortgagor, any other party occupying the Premises or any portion thereof, or the Premises, relating to any loss or injury allegedly resulting from any Hazardous Substance; and

(3)      the discovery by Mortgagor of any occurrence or condition on any real property adjoining or in the vicinity of the Premises which might cause the Premises or any portion thereof to be subject to any restriction on ownership, occupancy, transferability, or use under any Environmental Law.

(d)      Invalidity. If any term or provision of this Mortgage or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Mortgage or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Mortgage shall be valid and enforceable to the fullest extent permitted by law.

(e)      Captions. The captions or section headings used in this Mortgage are for convenience only and of no substance or significance, and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

(f)      Governing Law and Binding Effect. This Mortgage and the Note shall be governed by and construed in accordance with the laws of the State of Connecticut. All grants, covenants, agreements and other provisions herein contained shall run with the land, and shall be binding upon and inure to the benefit of the respective heirs, legal representatives, successors and assigns of Mortgagor and Mortgagee.

DVD/232919/0679/1R54444v1
09/28/22-HRT/DVD

    **5.2.**    **Financial Information.** The Mortgagor annually shall furnish to the Mortgagee or cause to be furnished: (a) within thirty (30) days of filing, copies of Mortgagor's federal tax returns together with all supporting schedules; (b) within one hundred twenty (120) days of each fiscal year end, a management prepared financial statement (balance sheet and profit and loss statement) and a certified rent roll; and (c) such other financial information as the Mortgagee may reasonably require within fifteen (15) days of Mortgagee's request for same.  All financial statements shall be in form and substance reasonably satisfactory to Mortgagee.

    **5.3.**    **Cross-Default.** A default under the Loan shall constitute a default under all other obligations and loans of the Mortgagor, to the Mortgagee and a default under any other obligation or loan by the Mortgagee in favor of the Mortgagor, shall constitute a default under the Loan and the Note

    5.4    **Open-End Mortgage.** This is an "open-end" mortgage and the holder hereof shall have all the rights, powers and protection to which the holder of any open-end construction mortgage is entitled under Sections 49-2 and 49-3 of the Connecticut General Statutes (subject to compliance with the requirements thereof). Upon request of the Mortgagor, the Mortgagee may hereafter, at its option and in its sole discretion, at any time before full payment of said Loan, make further advances to the Mortgagor under the Loan in such amounts and at such rates of interest as the Mortgagee shall determine, and every such further advance, with interest, shall be secured by this Mortgage and evidenced by a promissory note given by Mortgagor, provided that the Mortgagee records such Loan advance in its books and records, provided, however, that the amount of principal of the Loan secured by this Mortgage and remaining unpaid shall at no time exceed the original principal sum of the Loan, and provided that the time of repayment of any such advances shall not extend the time of repayment beyond the original maturity of the Loan

    5.5    **Planned Community Covenants.**

        (a)    The Mortgagor shall not at any time after the date hereof, except after notice to the Mortgagee and with the prior written consent of the Mortgagee, which consent shall not be unreasonably conditioned, withheld or delayed, (1) vote for or consent to any material amendment to any provision of the Declaration, including, but not limited to, any amendment that would change the allocated common interests of the unit owners (the "**Unit Owners**"); (2) in the event of damage to or destruction of the Unit, vote in opposition to a motion to repair, restore or rebuild; (3) in each and every case in which, under the provisions of the Declaration, the unanimous consent of the Unit Owners is required, vote or give such consent; (4) partition or subdivide any premises comprising any part of the Unit, (5) consent to the termination the community described in the Declaration (the "**Planned Community**"), except for abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; or (6) if applicable, consent to the effectuation of any decision by the homeowner's association (the "**Association**") to terminate professional management and assume self-management of the Planned Community.

        (b)    The Mortgagor shall fully and faithfully observe and perform its obligations under the Declaration, and under the by-laws of the Association. The Mortgagor shall promptly deliver to the Mortgagee a true and complete copy of each and every notice of default received by the Mortgagor with respect to any obligation of the Mortgagor under the provisions of the Declaration or the by-laws. If the Mortgagor shall not cure or remedy any default within a period of thirty (30) days after notice thereof from the Association or the Mortgagee, or in the case of any default which cannot with due diligence be cured or remedied within such thirty (30) day period,

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

if the Mortgagor fails to proceed promptly after such notice to commence cure or remedy of the same, and thereafter to diligently and continuously pursue such cure or remedy to completion, then and in any such case the Mortgagee may, but shall not be obligated to, cure or remedy any such default of the Mortgagor, and any payments made or costs reasonably incurred by the Mortgagee in connection therewith shall be secured hereby.

(c)    During the continuance of an Event of Default, the Mortgagee shall have all the rights and privileges which a Unit Owner has by virtue of the Declaration as though the Mortgagee were in fact a Unit Owner, including, without limitation, all voting rights accruing to the Mortgagor under the terms of the Declaration. During the continuance of an Event of Default hereunder, the Mortgagee may vote in the place of the Mortgagor and may exercise any and all of said rights. The Mortgagor hereby irrevocably appoints the Mortgagee its attorney-in-fact coupled with an interest, so long as this Mortgage remains in effect, to vote as the Mortgagor's proxy and to act with respect to all of said rights while any such Event of Default shall continue. Written notice of such Event of Default from Mortgagee to the Association shall be deemed conclusive as to the existence of such Event of Default and as to the Mortgagee's rights and privileges hereunder. The provisions hereof shall in no event render the Mortgagee liable for any common charges or assessments required by the Declaration unless and until Mortgagee becomes a Unit Owner on account of foreclosing this Mortgage or acquiring title to the Unit by deed-in-lieu of foreclosure or otherwise.

(d)    The Mortgagor shall pay all common expense assessments and all other assessments as required by the Declaration, or any resolutions adopted pursuant thereto, and shall promptly upon demand exhibit to the Mortgagee receipts for all such payments.

(e)    In addition to the insurance coverage required under **Section 1.4** hereof, the Mortgagor or the Association shall obtain similar coverage insuring the common elements of the Planned Community (the "**Common Elements**"). Notwithstanding the provisions of **Sections 1.4 and 1.5** hereof, all the insurance policies with respect to the Common Elements shall:

(i)    Be written in the name of, and with loss payable to, the Association or to an insurance trustee, as trustee for each of the Unit Owners in the allocated interests established in the Declaration and to the respective mortgagees of Unit Owners as their interest may appear; and

(ii)    Insure the Common Elements to the full insurable replacement value thereof and shall contain a loss payable endorsement in favor of the Association, or the insurance trustee, as trustee for each Unit Owner and the holder of each Unit's mortgage.

In case of loss and payment by any insurance company, the amount of insurance money received shall be applied in rebuilding and restoring the damaged portion of the Common Elements or as may otherwise be provided by the Declaration. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss any such proceeds payable to the Mortgagor are hereby assigned and shall be paid to the Mortgagee for application to payment of the Indebtedness secured by this Mortgage as provided herein, with the excess, if any, paid to the Mortgagor.

(f)    Notwithstanding anything to the contrary contained in this Mortgage, Mortgagee acknowledges that the roadways existing or to hereafter exist at the Mortgaged Property are part of the Common Elements to be insured and maintained by the Association pursuant to the Declaration and, therefore, the Mortgagor shall be deemed in compliance with

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

any applicable terms hereof or under the other Financing Agreements related to the insurance or maintenance of such roadways so long as the Mortgagor enforces the terms of the Declaration with respect thereto.

[*Remainder of Page Intentionally Left Blank*]

DVD/232919/0679/1854444v1
09/28/22-HRT/DVD

NOW, THEREFORE, if (i) the Note, (ii) the Indebtedness as aforesaid, including, without limitation, all future advances under the Note (iii) any additional notes which in accordance with the provisions hereof shall be secured hereby, and (iv) any extensions or renewals of any of the foregoing, shall be well and truly paid according to their tenor, and if all agreements and provisions contained therein, in all such notes and herein are fully kept and performed, then this deed shall become null and void.

IN WITNESS WHEREOF, Mortgagor has hereunto caused this Mortgage Deed to be executed as of the day and date first listed above.

Signed in the presence of:

**MORTGAGOR:**

**AVON PLACE LLC**

Name: **Benjamin K. Potok**

By: _____
    Name: _____
    Its: _____

Name: _____

STATE OF CONNECTICUT  )
                      ) ss: _New Britain_
COUNTY OF _Hartford_  )

Before me, the undersigned, this _25_ day of September, 2022, personally appeared _____, who acknowledged himself to be the _Member_ of Avon Place LLC, and that he as such _Member_, being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as such officer.

In Witness Whereof, I hereunto set my hand.

_____
Notary Public of the State of Connecticut
My Commission Expires: _____
Commissioner of the Superior Court

**Benjamin K. Potok**
Commissioner of Superior Court
Juris No. 420967

## SCHEDULE A

### LEGAL DESCRIPTION

All the that certain real property, situated in the Town of Avon, County of Hartford, State of Connecticut being part of a Condominium known as AVON PLACE CONDOMINIUM and designated as Unit Nos. 101A, 102A, 103A, 104A, 105A, 106A, 107A, 108A, 109A, 110A, 111A, 112A, 113A, 114A, 116A, 117A, 118A, 120A, 121A, 202A, 203A, 204A, 205A, 206A, 207A, 208A, 209A, 210A, 211A, 212A, 213A, 214A, 215A, 216A, 217A, 218A, 219A, 220A, 221A, 301A, 302A, 303A, 304A, 305A, 306A, 307A, 308A, 310A, 311A, 312A, 313A, 314A, 316A, 317A, 318A, 319A, 320A, 101B, 102B, 103B, 104B, 105B, 106B, 107B, 108B, 109B, 111B, 112B, 114B, 115B, 116B, 117B, 118B, 120B, 121B, 201B, 202B, 204B, 205B, 206B, 207B, 208B, 209B, 210B, 212B, 213B, 214B, 215B, 216B, 217B, 218B, 219B, 220B, 221B, 301B, 302B, 303B, 304B, 305B, 306B, 307B, 308B, 309B, 311B, 312B, 313B, 314B, 315B, 316B, 317B, 318B, 320B, 101C, 102C, 103C, 105C, 106C, 107C, 108C, 109C, 110C, 111C, 112C, 113C, 114C, 115C, 116C, 117C, 118C, 119C, 120C, 121C, 201C, 202C, 204C, 205C, 206C, 207C, 208C, 209C, 210C, 211C, 212C, 214C, 216C, 217C, 218C, 219C, 220C, 221C, 301C, 303C, 305C, 306C, 307C, 311C, 313C, 316C, 317C, 318C, 319C, 320C, 101D and 102D.

Together with all appurtenances thereto, being more particularly set forth and described in a Declaration of Condominium dated November 12, 1979 and recorded in Volume 115 at Page 505; as amended by Amendment dated April 19, 1989 and recorded in Volume 221 at Page 144; as further amended by Amendment dated October 22, 1992 and recorded in Volume 287 at Page 726; as further amended by Amendment dated October 13, 1994 and recorded in Volume 301 at Page 446, as further amended by Amendment dated February 1, 2019 and recorded in Volume 726 at Page 469, all of the Avon Land Records.

## **SCHEDULE B**

**COPY OF PROMISSORY NOTE**

Attached.

# EXHIBIT G

*RETURN TO. HOUSTON PUTNAM LOWRY, ESQ.*
*FORD & PAULEKAS LLP*
*280 TRUMBULL ST*
*HARTFORD, CT. 06103*

Doc ID: 002680990005 Type: LAN
BK **801** PG**226-230**

| | |
|---|---|
| RETURN DATE: MARCH 11, 2025 | : JUDICIAL DISTRICT OF HARTFORD |
| | : |
| | : |
| 44 AVONWOOD ROAD CREDIT LLC | : AT HARTFORD |
| | : |
| | : |
| V. | : |
| | : |
| AVON PLACE LLC, AHRON RUDICH, | : |
| ALTBANQ LENDING LLC AND | : |
| AVON PLACE CONDOMINIUM | : |
| ASSOCIATION, INC. | : FEBRUARY 13, 2025 |

## NOTICE OF LIS PENDENS

NOTICE IS HEREBY GIVEN of the pendency of a civil action in which **44 Avonwood Road Credit LLC** ("Plaintiff") is the Plaintiff and **Avon Place LLC, Ahron Rudich, Altbanq Lending LLC** and **Avon Place Condominium Association, Inc.** are the Defendants, by writ dated February 13, 2025, returnable to the Superior Court for the Judicial District of Hartford at Hartford on March 11, 2025, which action is brought to foreclose: (i) an Open-End Mortgage Deed and Security Agreement from **Avon Place LLC** in favor of **Bankwell Bank** dated September 30, 2022, and recorded in Volume 779 at Page 698 of the Avon, Connecticut Land Records, which Open-End Mortgage Deed and Security Agreement is held and owned by the Plaintiff, encumbering various condominium units located at 44, 46, 47 & 48 Avonwood Road a/k/a 46 Avonwood Road, Avon, Connecticut ("Property"), which Property is more particularly bounded and described in Exhibit A attached hereto and incorporated herein; and (ii) an Open-

◇ End Mortgage Deed and Security Agreement from **Avon Place LLC** in favor of **Bankwell Bank** dated December 15, 2022, and recorded in Volume 781 at Page 503 of the Avon, Connecticut Land Records, as modified by a First Amendment of Note, Open-End Mortgage and Other Loan Documents dated January 31, 2023, and recorded in Volume 782 at Page 707 of the Avon, Connecticut Land Records, as modified by Second Amendment of Note, Open-End Mortgage and Other Loan Documents dated May 4, 2023, and recorded in Volume 784 at Page 736 of the Avon, Connecticut Land Records, which Open-End Mortgage Deed and Security Agreement, as modified, is held and owned by the Plaintiff, encumbering various condominium units located at 44, 46, 47 & 48 Avonwood Road a/k/a 46 Avonwood Road, Avon, Connecticut ("Property"), which Property is more particularly bounded and described in Exhibit B attached hereto and incorporated herein.

The Plaintiff requests the following relief;

1. A foreclosure of the $25,312,500 Mortgage and the $2,687,500 Mortgage;

2. Immediate possession of the Property;

3. The appointment of a receiver;

4. A deficiency judgment against the Defendant Avon Place LLC and the Defendant Ahron Rudich;

5. Any and all monies in the possession of any receiver;

6. Attorney's fees;

7. Damages;

8. Interest, default interest and post judgment interest;

9. Costs and expenses; and

10. Such other and further relief as to equity may pertain.

Dated at Hartford, Connecticut, this 13th day of February, 2025.

THE PLAINTIFF
44 AVONWOOD ROAD CREDIT LLC

By:
    Houston Putnam Lowry
    Ford & Paulekas, LLP
    280 Trumbull Street
    Hartford, CT  06103
    (860) 808-4213
    Juris No.  100342
    Its Attorneys

## EXHIBIT A

All the that certain real property, situated in the Town of Avon, County of Hartford, State of Connecticut being part of a Condominium known as AVON PLACE CONDOMINIUM and designated as Unit Nos. 101A, 102A, 103A, 104A, 105A, 106A, 107A, 108A, 109A, 110A, 111A, 112A, 113A, 114A, 116A, 117A, 118A, 120A, 121A, 202A, 203A, 204A, 205A, 206A, 207A, 208A, 209A, 210A, 211A, 212A, 213A, 214A, 215A, 216A, 217A, 218A, 219A, 220A, 221A, 301A, 302A, 303A, 304A, 305A, 306A, 307A, 308A, 310A, 311A, 312A, 313A, 314A, 316A, 317A, 318A, 319A, 320A, 101B, 102B, 103B, 104B, 105B, 106B, 107B, 108B, 109B, 111B, 112B, 114B, 115B, 116B, 117B, 118B, 120B, 121B, 201B, 202B, 204B, 205B, 206B, 207B, 208B, 209B, 210B, 212B, 213B, 214B, 215B, 216B, 217B, 218B, 219B, 220B, 221B, 301B, 302B, 303B, 304B, 305B, 306B, 307B, 308B, 309B, 311B, 312B, 313B, 314B, 315B, 316B, 317B, 318B, 320B, 101C, 102C, 103C, 105C, 106C, 107C, 108C, 109C, 110C, 111C, 112C, 113C, 114C, 115C, 116C, 117C, 118C, 119C, 120C, 121C, 201C, 202C, 204C, 205C, 206C, 207C, 208C, 209C, 210C, 211C, 212C, 214C, 216C, 217C, 218C, 219C, 220C, 221C, 301C, 303C, 305C, 306C, 307C, 311C, 313C, 316C, 317C, 318C, 319C, 320C, 101D and 102D.

Together with all appurtenances thereto, being more particularly set forth and described in a Declaration of Condominium dated November 12, 1979 and recorded in Volume 115 at Page 505; as amended by Amendment dated April 19, 1989 and recorded in Volume 221 at Page 144; as further amended by Amendment dated October 22, 1992 and recorded in Volume 267 at Page 726; as further amended by Amendment dated October 13, 1994 and recorded in Volume 301 at Page 446, as further amended by Amendment dated February 1, 2019 and recorded in Volume 726 at Page 469, all of the Avon Land Records.

## **EXHIBIT B**

All that certain real property, situated in the Town of Avon, County of Hartford and State of Connecticut being part of a condominium known as AVON PLACE CONDOMINIUM and designated as Units 104C, 110B, 113B, 115A, 119A, 119B, 203B, 211B, 215C, 304C, 308C, 309A, 309C, 310B, 310C and 315A.

Together with all appurtenances thereto, being more particularly set forth and described in a Declaration of Condominium dated November 12, 1979 and recorded in Volume 115 at Page 505; as amended by Amendment dated April 19, 1989 and recorded in Volume 221 at Page 144; as further amended by Amendment dated October 22, 1992 and recorded in Volume 267 at Page 726; as further amended by Amendment dated October 13, 1994 and recorded in Volume 301 at Page 445; as further amended by Amendment dated February 1, 2019 and recorded in Volume 726 at Page 469, all of the Avon Land Records.

G:\2351 Constitution Real Estate, LLC\024 44 Avonwood Road Credit, LLC v. Avon Place, LLC\Litigation\Notice Lis Pendent\01.doc

Received for Record at Avon, CT
On 02/21/2025 At 9:33:31 am

*Nick Hooper*

I hereby certify that this is
a true copy of the original
document rec'd for record
in the Office of the Town
Clerk of the Town of Avon
on **2-21-25** at. **9:35am**

*Nick Hooper*
TOWN CLERK

# EXHIBIT H

All the that certain real property, situated in the Town of Avon, County of Hartford, State of Connecticut being part of a Condominium known as AVON PLACE CONDOMINIUM and designated as Unit Nos. 101A, 102A, 103A, 104A, 105A, 106A, 107A, 108A, 109A, 110A, 111A, 112A, 113A, 114A, 116A, 117A, 118A, 120A, 121A, 202A, 203A, 204A, 205A, 206A, 207A, 208A, 209A, 210A, 211A, 212A, 213A, 214A, 215A, 216A, 217A, 218A, 219A, 220A, 221A, 301A, 302A, 303A, 304A, 305A, 306A, 307A, 308A, 310A, 311A, 312A, 313A, 314A, 316A, 317A, 318A, 319A, 320A, 101B, 102B, 103B, 104B, 105B, 106B, 107B, 108B, 109B, 111B, 112B, 114B, 115B, 116B, 117B, 118B, 120B, 121B, 201B, 202B, 204B, 205B, 206B, 207B, 208B, 209B, 210B, 212B, 213B, 214B, 215B, 216B, 217B, 218B, 219B, 220B, 221B, 301B, 302B, 303B, 304B, 305B, 306B, 307B, 308B, 309B, 311B, 312B, 313B, 314B, 315B, 316B, 317B, 318B, 320B, 101C, 102C, 103C, 105C, 106C, 107C, 108C, 109C, 110C, 111C, 112C, 113C, 114C, 115C, 116C, 117C, 118C, 119C, 120C, 121C, 201C, 202C, 204C, 205C, 206C, 207C, 208C, 209C, 210C, 211C, 212C, 214C, 216C, 217C, 218C, 219C, 220C, 221C, 301C, 303C, 305C, 306C, 307C, 311C, 313C, 316C, 317C, 318C, 319C, 320C, 101D and 102D.

Together with all appurtenances thereto, being more particularly set forth and described in a Declaration of Condominium dated November 12, 1979 and recorded in Volume 115 at Page 505; as amended by Amendment dated April 19, 1989 and recorded in Volume 221 at Page 144; as further amended by Amendment dated October 22, 1992 and recorded in Volume 267 at Page 726; as further amended by Amendment dated October 13, 1994 and recorded in Volume 301 at Page 446, as further amended by Amendment dated February 1, 2019 and recorded in Volume 726 at Page 469, all of the Avon Land Records.

l that certain real property, situated in the Town of Avon, County of Hartford and State of Connecticut
ing part of a condominium known as AVON PLACE CONDOMINIUM and designated as Units 104C,
0B, 113B, 115A, 119A, 119B, 203B, 211B, 215C, 304C, 308C, 309A, 309C, 310B, 310C and 315A.

)gether with all appurtenances thereto, being more particularly set forth and described in a Declaration
Condominium dated November 12, 1979 and recorded in Volume 115 at Page 505; as amended by
nendment dated April 19, 1989 and recorded in Volume 221 at Page 144; as further amended by
nendment dated October 22, 1992 and recorded in Volume 267 at Page 726; as further amended by
nendment dated October 13, 1994 and recorded in Volume 301 at Page 445; as further amended by
nendment dated February 1, 2019 and recorded in Volume 726 at Page 469, all of the Avon Land
:cords.

# EXHIBIT I

## NON-REVOLVING LINE OF CREDIT NOTE

**Amount:** US $2,687,500.00

**Date of this Note:** October 21, 2022

FOR VALUE RECEIVED, the undersigned, **AVON PLACE LLC**, a Connecticut limited liability company with its principal place of business and mailing address at 710 Avenue L, Brooklyn, New York 11230-5112 (the **"Maker"** or **"Borrower"**), promises to pay to the order of **BANKWELL BANK**, 258 Elm Street, New Canaan, Connecticut 06840 (the **"Lender"**), the principal sum of up to Two Million Six Hundred Eighty-Seven Thousand Five Hundred and 00/100 Dollars ($2,687,500.00) (the **"Loan"**), or such much thereof that may be advanced hereunder as provided in accordance with the Loan Agreement (defined below), not to exceed a maximum outstanding at any time of $2,687,500.00, plus interest, payable at the rate and in the manner provided in Sections 1.1 and 2.1 of this Note, together with all taxes assessed upon said sum against the holder of this Note (the **"Holder"**) and any costs and expenses, including reasonable attorneys' fees, incurred in the collection of this Note or in protecting or sustaining the lien of the same.

This Note has been issued by Borrower in accordance with and pursuant to the terms of the Commercial Non-Revolving Loan Agreement dated of even date herewith between the Borrower and the Lender (the **"Loan Agreement"**) and is the "Note" referred to therein. This Note evidences borrowings made from time to time pursuant to the terms of the Loan Agreement, and this Note shall remain in full force and effect notwithstanding that the principal balance may be reduced to zero from time to time. The Lender and any holder hereof is entitled to the benefits of the Loan Agreement and other Loan Documents (as defined in the Loan Agreement) and may enforce the agreements of the Borrower contained therein, and the Lender may exercise the respective remedies provided for thereby or otherwise available in respect thereof. Without limiting the foregoing, this Note is secured by all collateral granted to or held by the Lender from time to time under or pursuant to the Loan Documents.

This Note evidences a revolving line of credit. Advances under this Note (each, a **"Loan Advance"**) may be requested only in writing by Borrower as provided in this paragraph and the provisions of Section 3(i) below. All communications, instructions, or directions to Lender are to be directed to Lender's office as shown in the introductory paragraph of this Note. Borrower agrees to be liable to the Lender for all sums either: (A) advanced in accordance with the instructions of an authorized person of Borrower or (B) requested by Borrower as a Loan Advance and credited to any of Borrower's accounts with Lender. All Loan Advances made hereunder shall be: (i) recorded in an account on Lender's books in which shall also be recorded accrued interest on Loan Advances, payments on such Loan Advances, and other appropriate debits and credits in connection with this Note, and such account absent manifest error shall constitute prima facie evidence of the information contained therein; (ii) deemed to be a loan to Borrower which is repayable together with interest from the date each said Loan Advance is made by Lender until the date of repayment at the interest rate set forth herein; and (iii) subject to all the terms and conditions contained herein. Notwithstanding the foregoing, Lender will have no obligation to advance funds under this Note if: (A) an Event of Default is then occurring hereunder or under any of the other Loan Documents; (B) Borrower ceases doing business or is insolvent; (C) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guarantee of this Note or any other loan with

Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized hereunder.

## 1.1   INTEREST RATE.

Loan Advances requested by the Borrower hereunder shall bear interest at the fixed rate of four and ninety-five hundredths percent (4.95%) per annum (the "**Fixed Rate**") payable monthly in arrears.

## 2.1   REPAYMENT.

Interest only on the outstanding principal balance of the Loan shall be due and payable monthly in arrears commencing November 1, 2022 and continuing on the same day of each month thereafter until October 1, 2025 (the "**Maturity Date**"), when all the then unpaid principal and accrued interest shall be due and payable.

The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

All payments of principal and interest shall be made in lawful money of the United States which shall be legal tender in payment of all debts at the time of payment. Any check, draft or money order remitted in settlement of this Note, may be handled for collection in accordance with the practice of the collecting bank or banks and shall not be deemed payment until the money is actually received by the Holder of this Note.

## 2.2   USE OF LOAN PROCEEDS.

(a)     The Borrower covenants and agrees that the proceeds and all advances under the Loan shall be used to acquire the remaining twenty-four (24) condominium units (each, a "**Unit**") located in the Town of Avon, County of Hartford, State of Connecticut, more particularly described in the Declaration of Condominium by Arnold C. Greenberg, Trustee, dated November 12, 1979, and recorded in Volume 115, Page 505 of the Avon Land Records, which Declaration has been amended by the Amendment to Declaration of Condominium By Arnold C. Greenberg, Trustee Regarding Avonwood Condominium dated October 22, 1992, and recorded in Volume 267, Page 726 of the Avon Land Records (the "**Property**").

(b)     The Borrower agrees that no part of the Loan proceeds will be used, in whole or in part, for the purpose of purchasing or carrying any "margin security" as such term is defined in Regulations promulgated by the Board of Governors of the Federal Reserve System.

(c)     This Loan is a commercial non-revolving line of credit. Any amounts advanced hereunder, if repaid before the expiration date of this line of credit, permanently reduces the remaining funds available for advance under the Loan.

## 3.   COVENANTS.

(i)     Loan to Cost: The Loan to cost ratio for each separate Loan Advance shall not exceed seventy-five percent (75%) of the cost of each Unit.

2

(ii)     Loan to Value: The Borrower shall maintain a Loan to Value ratio for each Loan Advance of seventy-five percent (75%) at the "as is" value of each unit as determined by an appraisal delivered to Lender.

(iii)     Subordinate Financing: No other financing, will be permitted as long as any portion of the Loan remains unpaid without prior Lender's consent, other than indebtedness in the ordinary course of business.

(iv)     Operating Account: The Borrower will be required to maintain its operating account for the Property and the security deposit account for the Property with the Lender throughout the term of the Loan.

(v)     Debt Service Coverage Ratio:  The property securing each Loan Advance hereunder shall maintain a Debt Service Coverage Ratio of not less than 1.25 to 1, measured annually commencing December 31, 2022. **"Debt Service Coverage Ratio"** is calculated by taking the Net Operating Income of the property for the period in question divided by assumed amortizing payments on the Loan Advance allocated to such property, which payments are based on a hypothetical thirty (30) year amortization for the same period. **"Net Operating Income"** means all actual income from the Property minus all operating expenses (including a reasonable management fee) and reasonable reserves for capital repairs and replacements.

4.     **APPLICATION OF PAYMENTS**.

Payments will be applied first to fully pay costs and expenses incurred by the Lender in collecting this Note or in sustaining and/or enforcing any security granted to secure this Note, if any, then to fully pay any outstanding late charges or prepayment fees, then to fully pay accrued interest and the remainder will be applied to principal.

5.     **LATE CHARGE**.

Maker shall pay the Holder a late charge of five percent (5%) of any monthly installment not received by the Holder within ten (10) days after the installment is due, to cover the additional expenses involved in handling such overdue installment.  This charge shall be in addition to, and not in lieu of, any other remedy the Lender may have and is in addition to any reasonable fees and charges of any agents or attorneys which the Lender is entitled to employ in the event of default hereunder, whether authorized herein or by law.  Maker will pay this late charge promptly but only once for each late payment.

6.     **DEFAULT**.

Upon the occurrence of any Event of Default (as hereinafter defined) beyond the expiration of any applicable notice and cure periods, the entire outstanding balance of this Note shall, at the option of the Holder, become immediately due and payable without notice or demand, and in any event, interest shall immediately accrue at a "default rate" which means the rate of interest which is eighteen percent (18%) per annum, but in no event to exceed the maximum rate allowed by law.

An **"Event of Default"** is defined as any one of the following: (i) default in the payment of any interest, principal or other amounts due hereunder during the term of this Note and such default continuing for a period of ten (10) days after the due date thereof; (ii) default in the

3

payment of any principal or other amounts due at the end of the term of this Note; (iii) default in the performance of any of the other conditions or stipulations of this Note for thirty (30) days after written notice thereof from the Lender; (iv) the occurrence of any Event of Default as defined in the Loan Agreement; or (v) a default beyond any applicable notice or cure period in the payment or performance of any other obligation of Maker (or any guarantor of this Note) to the Lender.

## 7.    PREPAYMENT FEE.

The outstanding principal balance under the Loan may be prepaid in full at any time upon payment of a prepayment fee as follows:  from the date hereof and continuing until (but not including) the first (1ˢᵗ) Anniversary Date, the prepayment fee shall be three percent (3%) of the principal prepayment.  Thereafter, until the Maturity Date, the prepayment fee shall be one percent (1%) of the principal prepayment.  Notwithstanding the foregoing, there shall be no prepayment fee due on any principal payments made within the ninety (90) day period prior to the Maturity Date.  The term **"Anniversary Date"** as used herein shall mean October 1, 2022.

All prepayments of principal shall be accompanied by and applied first to the payment of costs and expenses, then to unpaid late charges, then to accrued and unpaid interest and the balance on account of the unpaid principal.  Any partial prepayments shall not affect the Maker's obligation to make the regular installments required hereunder until the Loan is fully paid.  If the Loan shall be accelerated for any reason whatsoever, the applicable prepayment fee in effect as of the date of such acceleration shall be paid.

## 8.    PREJUDGMENT REMEDY WAIVER.

MAKER ACKNOWLEDGES AND REPRESENTS THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND THAT THE PROCEEDS OF THE LOAN SHALL NOT BE USED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. MAKER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER HEREBY VOLUNTARILY WAIVE ANY RIGHTS TO NOTICE OR HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES AS NOW OR HEREAFTER AMENDED, OR AS OTHERWISE REQUIRED BY ANY LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY WHICH THE HOLDER MAY ELECT TO USE OR WHICH IT MAY AVAIL ITSELF. THE MAKER FURTHER WAIVES, TO THE GREATEST EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISEMENT, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS. THE MAKER FURTHER WAIVES ANY REQUIREMENTS THAT LENDER OBTAIN A BOND OR ANY SIMILAR DEVICE IN CONNECTION WITH THE EXERCISE OF ANY REMEDY OR THE ENFORCEMENT OF ANY RIGHT HEREUNDER OR PERTAINING TO THE LOAN.

## 9.    WAIVER OF RIGHT TO TRIAL BY JURY.

MAKER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER (COLLECTIVELY THE "MAKER") WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE OR ANY CONDUCT RELATING TO THE ADMINISTRATION OR ENFORCEMENT OF THIS NOTE OR ARISING FROM THE DEBTOR/CREDITOR RELATIONSHIP OF THE PARTIES HERETO.  THIS WAIVER IS

KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY THE MAKER, AND THE MAKER ACKNOWLEDGES THAT LENDER HAS NOT MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE MAKER ACKNOWLEDGES THAT THIS WAIVER MAY DEPRIVE MAKER OF AN IMPORTANT RIGHT AND THAT SUCH WAIVER HAS KNOWINGLY AND VOLUNTARILY BEEN AGREED TO BY THE MAKER. THE MAKER FURTHER ACKNOWLEDGES THAT MAKER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED BY MAKER AND THAT MAKER HAS HAD THE TIME TO DISCUSS THIS WAIVER WITH HIS LEGAL COUNSEL.

10.    **DELAY IN ENFORCEMENT**.

The liability of Maker and any subsequent endorser, guarantor or other accommodation maker under this Note is unconditional and shall not be affected by an extension of time, renewal, waiver or any other modification whatsoever, granted or consented to by the Holder. Any failure by the Holder to exercise any right it may have under this Note is not a waiver of the Holder's right to exercise the same or any other right at any other time.

11.    **CHANGES**.

No agreement by the Lender to change, waive or release the terms of this Note will be valid unless it is in writing and signed by Maker and the Lender.

12.    **WAIVER**.

**MAKER AND ANY SUBSEQUENT ENDORSER, GUARANTOR OR OTHER ACCOMMODATION MAKER WAIVES PRESENTMENT, DEMAND FOR PAYMENT AND NOTICE OF DISHONOR.**

13.    **CONNECTICUT LAW**.

The provisions of this Note shall be governed by the laws of the State of Connecticut.

14.    **JURISDICTION AND VENUE**.

Any action or proceeding to enforce or defend any rights under this Note or under any agreement, instrument or other document contemplated hereby or related hereto; directly or indirectly related to or connected with the Loan or the administration or enforcement thereof; or arising from the debtor/creditor relationship of the Maker and the Lender shall be brought only in the state courts of Connecticut or the United States District Court for the District of Connecticut. The parties hereto agree that any proceeding instituted in either of such courts shall be of proper venue, that such courts shall have personal jurisdiction over the parties and that any and all pleadings, summons, motions and other process in such proceeding shall be fully and effectively served when transmitted by United States Mail (registered or certified), postage and registry fees prepaid. Any judgment or decree obtained in any such action or proceeding may be filed or enforced in any other appropriate court.

15.    **RIGHT OF SET-OFF**.

DVD/232919/0879/1859819v2
10/20/22-HRT/DVD

Upon the occurrence of any Event of Default, the Lender shall have the right to set-off against the Loan all of Maker's deposits, credit and property now or hereafter in the possession or control of the Lender, its agent or bailee or in transit to it. The Lender may apply the same, or any part thereof, to the Loan without prior notice or demand.

## 16.    INVALIDITY.

If any provision of this Note or the application of any provision to any person or circumstance shall be invalid or unenforceable, neither the balance of this Note nor the application of the provision to other persons or circumstances shall be affected.

## 17.    JOINT AND SEVERAL LIABILITY. BINDING EFFECT.

This Note and all obligations hereunder, to the extent signed by more than one party, shall be the joint and several obligations of each Maker, and any endorsers or other accommodation makers, and each provision hereof shall apply to each and all jointly and severally. The provisions of this Note are binding on the successors and assigns of Maker and shall inure to the benefit of the Lender, its successors and assigns and to subsequent Holders of this Note.

## 18.    INTERPRETATION.

Captions and headings used in this Note are for convenience only. The term "Maker" and any pronoun referring thereto as used herein shall be construed in the masculine, feminine or neuter as the context may require. The singular includes the plural and the plural includes the singular. "Any" means any and all.

## 19.    RECOVERY OF PAYMENT.

To the extent the Loan is reduced or paid in full by reason of any payment to the Lender by any subsequent accommodation maker, endorser or guarantor, and all or any part of such payment is rescinded, avoided or recovered from the Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy or reorganization of such accommodation maker, endorser or guarantor, the amount of such rescinded, avoided or refused payment shall be added to or, in the event the Note has been previously-paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the Loan and all terms and provisions herein shall thereafter apply to same.

## 20.    NO VIOLATIONS OF GOVERNMENTAL PROHIBITIONS.

Neither the making of the Loan, nor the receipt of Loan proceeds by Borrower, violates any Law applicable to Borrower, including, without limitation, any of the Terrorism Laws. Neither the making of the Loan, nor the receipt of Loan proceeds by Borrower (a "**Principal Party**") violates any of the Terrorism Laws applicable to any of the Principal Parties. To Borrower's best knowledge, no owner of any direct or indirect equitable, legal or beneficial interest in Borrower or any Principal Party is the subject of any of the Terrorism Laws. No portion of the Loan proceeds will be used, disbursed or distributed by Borrower for any purpose, or to any Person, directly or indirectly, in violation of any Law including, without limitation, any of the Terrorism Laws. As used in this Agreement, the term "**Terrorism Laws**" means Executive Order 13224 issued by the President of the United States of America, the

Terrorism Sanctions Regulations (Title 31 Part 595 of the U.S. Code of Federal Regulations), the Terrorism List Governments Sanctions Regulations (Title 31 Part 596 of the U.S. Code of Federal Regulations), and the Foreign Terrorist Organizations Sanctions Regulations (Title 31 Part 597 of the U.S. Code of Federal Regulations), and all other present and future federal, state and local laws, ordinances, regulations, policies and any other requirements of any Governmental Agency (including, without limitation, the United States Department of the Treasury Office of Foreign Assets Control) addressing, relating to, or attempting to eliminate, terrorist acts and acts of war, each as hereafter supplemented, amended or modified from time to time, and the present and future rules, regulations and guidance documents promulgated under any of the foregoing, or under similar laws, ordinances, regulations, policies or requirements of other States or localities.

21.    **COMPLIANCE WITH GOVERNMENTAL PROHIBITIONS.**

No portion of the Loan proceeds will be used, disbursed or distributed by Borrower for any purpose, or to any Person, in violation of any Law including, without limitation, any of the Terrorism Laws. Borrower shall provide Lender with immediate written notice (a) of any failure of any of the representations and warranties set forth in Section 20 of this Note to be true, correct and complete in all respects at any time, or (b) if Borrower obtains knowledge that Borrower, or any owner at any time of any direct or indirect equitable, legal or beneficial interest in Borrower is the subject of any of the Terrorism Laws. Borrower shall immediately and diligently take, or cause to be immediately and diligently taken, all necessary action to comply with all Terrorism Laws and to cause the representations and warranties set forth in Section 20 of this Note to be true, correct and complete in all respects.

Remainder of Page Intentionally Left Blank

DVD/232919/0679/1859819v2
10/20/22-HRT/DVD

22.    <u>NOTICES</u>.

A demand upon or notice to Borrower hereunder shall be deemed sufficient and commercially reasonably notice and shall be effective only upon its receipt and sent by a recognized overnight courier addressed to Borrower at the address set forth on the first page hereof.  Any notice to Lender hereunder shall be effective only upon its receipt by Lender in writing at the following address:  Bankwell Bank, 258 Elm Street, New Canaan, CT 06840, Attn:  Commercial Lending Department.

**BORROWER**

**AVON PLACE LLC**

By: _____
    Ahron Rudich
    Its Member