UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                    Chapter 11

      Avon Place, LLC                                  Case no.  25-41368 (JMM)

             Debtor.
----------------------------------------------------------x

### DISCLOSURE STATEMENT

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO SUPPORT OR OPPOSE THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

## INTRODUCTION

The Debtor submits this Disclosure Statement ("Disclosure Statement") in connection with its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit A. All Creditors are urged to review the Plan in addition to reviewing this Disclosure Statement. All capitalized terms used but not defined shall have the meaning set forth in the Plan.

This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan in an effort to fully explain the terms Plan. Every effort has been made to fully explain the aspects of the Plan as it affects all Creditors. To the extent a Creditor has questions, the Debtor urges you to contact Debtor's counsel and every effort will be made to assist you.

On _____, 2025, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan..

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR. THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THE DISCLOSURE STATEMENT. BASED UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS

INACCURATE.  NEITHER THE DEBTOR NOR DEBTOR'S COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtor to be received by _____, 2025.

The Bankruptcy Court has entered an Order fixing _____, 2025, at ___.m., at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York, 11201, as the date, time and place for the hearing to on approval of the Disclosure Statement and confirmation of the Plan, and fixing _____, 2023, as the last date for the filing and serving of any objections.  A copy of any objection to the Disclosure Statement or confirmation of the Plan must be delivered to the Court's chambers on or before such date.

## BACKGROUND

1.      On March 21, 2025 (the "Petition Date"), the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

2.      This case was filed to protect the value of the Debtor's properties and to avoid a forfeiture under a predatory foreclosure action brought by 44 Avon Road Credit LLC.

3.      The Debtor is a Connecticut limited liability company formed in 2022. The Debtor acquired one hundred and eighty (180) condominium units (the "Property") at the property known as Avon Place Condominiums and located at 44-46-47-48 Avonwood Road,

Avon, CT 06001, representing 96% of the units in the building complex. Sixty-two (62 units) are located at 44, 47 and 48 Avon Road and forty-six (46) units at 46 Avon Road. One hundred and sixty-two (162) units were purchased in October 2022 for $33,750,000, with the remaining sixteen (16) units being purchased from individual sellers sporadically since then, for the sum of $2,709,500. The Debtor estimates the current value of the Property to be approximately $40,000,000.

4.      In September 2022, the Debtor entered into two loans totaling $28 million, originally issued by Bankwell Bank secured by the Property.  The loans were always in good standing, and in June 2024, Bankwell confirmed that payments were current.

5.      The Property suffered fire damage in one of the buildings and certain units.  The Debtor received an insurance payment of approximately $400,000.  It endorsed the funds to Bankwell for debt service.

6.      Shortly thereafter, the Mortgagee claims to have taken an assignment of Bankwell's loans, but as of this date the Mortgagee has provided no evidence of the assignment. Before even notifying the Debtor of the assignment, let alone giving a default notice, the Mortgagee commenced a foreclosure, in which it demands appointment of a receiver, payment in full, and a deficiency judgement for any shortfall against Abron Rudich, the Debtor's beneficial owner.  Apparently, the Mortgagee manufactured a default by applying the insurance check to principal instead of ongoing debt service and then deemed there to be a default for the now unpaid months.

7.      The Debtor was astonished by the Mortgagee's actions until it looked into the background of Kyle O'Hehir, the Mortgagee's principal.  He is a real estate investor trying to

4

make a name for himself by acquiring distressed loans at a discount and being as aggressive as he can to enforce collection.  In online videos, he describes his approach as capitalizing on technical defaults and the reluctance of traditional banks to take a hard line with borrowers.

8.    The Debtor obviously disputes that it was ever in default.  The Debtor has therefore elected Chapter 11 protection to pause collection efforts so that it can reinstate the loan under its original terms in a Chapter 11 plan without the added default interest and penalties claimed in the foreclosure action.

## DEBTOR'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1

9.    **Classification** –  Avon Connecticut real estate tax, water, sewer and other liens. .  Class 1 Claims total approximately $584,403.

10.    **Treatment** -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

11.    **Voting** – Unimpaired and deemed to have accepted the Plan.

### Class 2

12.    **Classification** – Allowed Secured Claims of the Mortgagee.  The Debtor estimates that principal, non-default contract rate of interest, amortization, advances and other charges total approximately $28,100,785 as of the Petition Date.

13.    **Treatment** – On the Effective Date, pursuant to section 1124(2) of the Bankruptcy Code, the Debtor shall cure pre-Petition Date and post-Petition Date monetary defaults, if any, and then comply with its obligations under the applicable loan documents through maturity.  The Debtor intends to refinance or sell the Property and prepay all amounts on the Effective Date..

14.    **Voting** – Unimpaired and deemed to have accepted the Plan.

## Class 3

15.    **Classification** – Allowed Secured Claim of Altbanq Lending LLC.  The Debtor estimates that $3,000,000 is due as of the Petition Date secured by a mortgage on the Property.

16.    **Treatment** – On the Effective Date, pursuant to section 1124(2) of the Bankruptcy Code, the Debtor shall cure pre-Petition Date and post-Petition Date monetary defaults, if any, and then comply with its obligations under the applicable loan documents through maturity.  The Debtor intends to refinance or sell the Property and prepay all amounts on the Effective Date..  The Debtor intends to refinance and prepay all amounts on the Effective Date.

17.    **Voting** – Unimpaired and deemed to have accepted the Plan.

## Class 4

18.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.  Claims total approximately $0.

19.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

20.     **Voting --** Unimpaired and deemed to have accepted the Plan.

### Class 5

21.     **Classification** – General Unsecured Claims.  Claims total approximately $1,287,148.

22.     **Treatment** – Payment in full in Cash plus interest through the payment date on the Effective Date.

23.     **Voting** –   Unimpaired and deemed to have accepted the Plan.

### Class 6

24.     **Classification** – Allowed  Equity Interests .

25.     **Treatment** – Interest Holders shall be required to contribute the funds necessary to make Effective Date payments under the Plan and shall retain their Interests under the Plan.

26.     **Voting –** Impaired and entitled to vote to accept or reject the Plan.

### UNCLASSIFIED PRIORITY TAX CLAIMS

27.     Priority tax Claims under Section 507(a)(8) of the Bankruptcy Code by Debtor, if any, shall be entitled to payment in Cash on the Effective Date of Allowed Amount, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

28.     Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the later of the Effective Date and the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or under Executory Contracts assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtor estimates that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately 315,000.

29.     Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date.  Thereafter, United States Trustee fees and any statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed.  The Debtors shall file quarterly post-Confirmation operating reports.

## MEANS FOR IMPLEMENTATION

30.     **Source of Funds** – Plan payments will be paid by the Interest Holders, cash on hand, and additional funds from a refinancing or sale of the Property.

31.     **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all

Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

32.    **Execution of Documents** -- The Proponent shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

33.    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

34.    **Preservation of Claims** -- All rights pursuant to sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to section 547 of the Bankruptcy Code, all fraudulent transfer claims pursuant to sections 544 and 548 of the Bankruptcy Code, and all claims relating to post-Petition Date transactions under section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate, provided, however, that the Debtor shall have sole authority for prosecuting any such claims. Because all creditors are being paid in full under the Plan, the Debtor does not anticipate preference or fraudulent claims.

35.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code by section 1146(c), the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, (including any instrument of transfer executed in

9

furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax or similar tax.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

36.     The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

37.     Except for executory contracts and unexpired leases the Debtor rejects before the Confirmation Date, all unexpired leases and executory contracts shall be assumed under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the rejection date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period

10

provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

### FINANCIAL PROJECTIONS AND LIQUIDATION ANALYSIS

38.     Annexed hereto as Exhibit B are a balance sheet, liquidation analysis and projections indicating that the Post-Confirmation Debtor will have sufficient assets to pay Claims under the Plan.

### LIQUIDATION ANALYSIS

39.     Based on the appraised value of the Property, in a liquidation under Chapter 7 of the Bankruptcy Code, it is likely that Creditor Claims will be paid in full. Distribution to Interest Holders will be reduced by liquidation expenses including Trustee commissions, Trustee professional fees and brokerage commissions, which the Debtor estimates would be about 10% of the Properties' value.

### LITIGATION ANALYSIS

40.     The Debtor is aware of no pending litigation or potential litigation except the Mortgagee's foreclosure action, the Debtor's claims against the Mortgagee and ordinary course of business landlord tenant cases involving residential tenants.

### MANAGEMENT OF THE DEBTOR

41.     The Debtor is managed by David Goldwasser, CRO.  Post-confirmation management shall remain unchanged.

### TAX CONSEQUENCES

42.     The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

43.     THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDER SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

## VOTING PROCEDURES AND REQUIREMENTS

44.     A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each Creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2025 by email to mfrankel@bfklaw.com or by delivery to the following address:  Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, New York, New York 10022, Attn:  Mark A. Frankel, Esq.

45.     Each Creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor, or (ii) it has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.

46.     Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

47.     A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

48.     The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

49.     The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such Interests.

## CONFIRMATION OF THE PLAN

50.     Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

51.     By order of the Bankruptcy Court dated _____, 2025, the Confirmation Hearing has been scheduled for _____ _____, 2025, at ___ .m., in the Honorable Jill Mazer-Marino's Courtroom, 271 Cadman Plaza East, Brooklyn, New York,

13

11201.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following by _____, 2025:  Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, New York, New York 10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

52.    At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are:  (a)  The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any payment made or promised or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtor has disclosed the

14

identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or Interests has either accepted the Plan or is not impaired under the Plan, (h) except if the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

53.     The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

## **CRAMDOWN**

54.     In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired

class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

55.     The Debtor intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the Plan.

56.     A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity Interests.  "Fair and equitable" has different meanings for Secured and Unsecured Claims.

57.     With respect to a Secured Claim, "fair and equitable" means either: (a)  the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or  (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

58.     With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

59.     In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

16

## **CONCLUSION**

The Debtor urges the Debtor's Creditors to support the Plan.

Dated:  New York, New York
            April 4, 2025

                                Avon Place, LLC
                                Debtor and Debtor in Possession

                                By:      s/ David Goldwasser, CRO


                                **BACKENROTH FRANKEL & KRINSKY, LLP**
                                **Attorneys for Debtor**


                                By:      s/Mark Frankel
                                            488 Madison Avenue
                                            New York, New York 10022
                                            (212) 593-110

Exhibit A

Mark Frankel
Backenroth Frankel & Krinsky, LLP
488 Madison Avenue, Floor 11
New York, New York  10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                                                      Chapter 11

        Avon Place, LLC              Case no.  25-41368 (JMM)

                        Debtor.
--------------------------------------------------------x


**PLAN OF REORGANIZATION**

1

## INTRODUCTION

Avon Place, LLC ("Debtor"), proposes this Plan of Reorganization to its Creditors.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

60.      As used in this Plan, the following terms will have the meanings hereinafter set forth:

"Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

"Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

"Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

"Allowed Amount" shall mean the amount of a Claim:  (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

2

"Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

"Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

"Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

"Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

"Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.

"Bankruptcy Court" shall mean the Court as defined below.

"Bar Date" shall mean _____, 2025.

"Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

"Claim" shall have the meaning set forth in § 101(5) of the Bankruptcy Code.

"Claimant" shall mean the holder of a Claim.

"Confirmation Date" shall mean the date of the entry of the Confirmation Order.

"Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

"Confirmation Order" shall mean the order of the Court confirming the Plan.

"Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

"Creditor" shall mean any entity that holds a Claim against the Debtor.

"Debtor" shall mean Avon Place, LLC.

"Disclosure Statement" shall mean the disclosure statement filed in connection with the Plan.

"Disputed Claim" shall mean the whole or any portion of any Claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

"Disputed Claim Reserve" shall mean Cash to be set aside by the Debtor on the Effective Date in an amount equal to the amount that would have been distributed to the holders of Disputed Claims had such Claims been deemed Allowed Claims on the Effective Date, or in such other amount as may be approved by the Bankruptcy Court.

"Effective Date" shall mean the Date upon which the Confirmation Order is entered, or such other date no later than 60 days after the Confirmation Order is entered as may be practicable.

"Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

4

"Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

"Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

"Impaired" shall mean not Unimpaired.

"Interest" shall mean an existing ownership interest in the Debtor.

"Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

"Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

"Lien" shall mean a valid and enforceable charge against or interest in property to secure payment of a debt or performance of an obligation.

"Mortgagee" shall mean 44 Avon Road Credit LLC.

"Petition Date" shall mean March 21, 2025.

"Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

" Property" shall mean one hundred and eighty (180) condominium units owned by the Debtor at the property known as Avon Place Condominiums and located at 44-46-47-48 Avonwood Road, Avon, CT 06001.

5

"Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent provided in Section 506 of the Bankruptcy Code.

"Secured Creditor" shall mean the owner or holder of a Secured Claim.

"Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

"Unsecured Claim" shall mean a Claim that is not a Secured Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include Administrative Expense Claims.

"Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

### Class 1

61.    **Classification** –  Avon Connecticut real estate tax, water, sewer and other liens. .  Class 1 Claims total approximately $584,403.

62.    **Treatment** -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

63.    **Voting** – Unimpaired and deemed to have accepted the Plan.

### Class 2

64.     **Classification** – Allowed Secured Claims of the Mortgagee.  The Debtor estimates that principal, non-default contract rate of interest, amortization, advances and other charges total approximately $28,100,785 as of the Petition Date.

65.     **Treatment** – On the Effective Date, pursuant to section 1124(2) of the Bankruptcy Code, the Debtor shall cure pre-Petition Date and post-Petition Date monetary defaults, if any, and then comply with its obligations under the applicable loan documents through maturity.  The Debtor intends to refinance or sell the Property and prepay all amounts on the Effective Date..

66.     **Voting** – Unimpaired and deemed to have accepted the Plan.

### Class 3

67.     **Classification** – Allowed Secured Claim of Altbanq Lending LLC.  The Debtor estimates that $3,000,000 is due as of the Petition Date secured by a mortgage on the Property.

68.     **Treatment** – On the Effective Date, pursuant to section 1124(2) of the Bankruptcy Code, the Debtor shall cure pre-Petition Date and post-Petition Date monetary defaults, if any, and then comply with its obligations under the applicable loan documents through maturity.  The Debtor intends to refinance or sell the Property and prepay all amounts on the Effective Date..  The Debtor intends to refinance and prepay all amounts on the Effective Date.

69.     **Voting** – Unimpaired and deemed to have accepted the Plan.

**Class 4**

70.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code.  Claims total approximately $0.

71.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

72.    **Voting --** Unimpaired and deemed to have accepted the Plan.

**Class 5**

73.    **Classification** – General Unsecured Claims.  Claims total approximately $1,287,148.

74.    **Treatment** – Payment in full in Cash plus interest through the payment date on the Effective Date.

75.    **Voting** –   Unimpaired and deemed to have accepted the Plan.

**Class 6**

76.    **Classification** – Allowed  Equity Interests .

77.    **Treatment** – Interest Holders shall be required to contribute the funds necessary to make Effective Date payments under the Plan and shall retain their Interests under the Plan.

78.    **Voting –** Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

79.    Priority tax Claims under Section 507(a)(8) of the Bankruptcy Code by Debtor, if any, shall be entitled to payment in Cash on the Effective Date of Allowed Amount, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

80.    Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the later of the Effective Date and the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or under Executory Contracts assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtor estimates that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately 315,000.

81.    Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date.  Thereafter, United States Trustee fees and any statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed.  The Debtors shall file quarterly post-Confirmation operating reports.

## **MEANS FOR IMPLEMENTATION**

82.     **Source of Funds** – Plan payments will be paid by the Interest Holders, cash on hand, and additional funds from a refinancing or sale of the Property.

83.     **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

84.     **Execution of Documents** -- The Proponent shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

85.     **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

86.     **Preservation of Claims** -- All rights pursuant to sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to section 547 of the Bankruptcy

10

Code, all fraudulent transfer claims pursuant to sections 544 and 548 of the Bankruptcy Code, and all claims relating to post-Petition Date transactions under section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate, provided, however, that the Debtor shall have sole authority for prosecuting any such claims. Because all creditors are being paid in full under the Plan, the Debtor does not anticipate preference or fraudulent claims.

87.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code by section 1146(c), the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, (including any instrument of transfer executed in furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax or similar tax.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

88.    The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

89.     Except for executory contracts and unexpired leases the Debtor rejects before the Confirmation Date, all unexpired leases and executory contracts shall be assumed under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the rejection date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

90.     Priority tax Claims under Section 507(a)(8) of the Bankruptcy Code by Debtor, if any, shall be entitled to payment in Cash on the Effective Date of Allowed Amount, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

91.     Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the later of the Effective Date and the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or under Executory Contracts assumed by the Debtor shall be paid in

full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction. The Debtor estimates that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately $315,000.

92. Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date. Thereafter, United States Trustee fees and any statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed. The Debtors shall file quarterly post-Confirmation operating reports.

## MEANS FOR IMPLEMENTATION

93. **Source of Funds** – Plan payments will be paid by the Interest Holders, cash on hand, and to the extent necessary, additional funds from a refinancing or sale of the Property. Based on expressions of interest from potential lenders and purchasers, the Debtor believes that it will be in a position to pre-pay all secured claims as well as pay all priority and general unsecured claims on the Effective Date.

94. **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

95. **Execution of Documents** -- The Proponent shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien,

Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

96.    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

97.    **Preservation of Claims** -- All rights pursuant to sections 502, 544, 545

98.    and 546 of the Bankruptcy Code, all preference claims pursuant to section 547 of the Bankruptcy Code, all fraudulent transfer claims pursuant to sections 544 and 548 of the Bankruptcy Code, and all claims relating to post-Petition Date transactions under section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate, provided, however, that the Debtor shall have sole authority for prosecuting any such claims. Because all creditors are being paid in full under the Plan, the Debtor does not anticipate preference or fraudulent claims.

99.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code by section 1146(c), the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, (including any instrument of transfer executed in furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax or similar tax.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

100.    The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

101.    Except for executory contracts and unexpired leases the Debtor rejects before the Confirmation Date, all unexpired leases and executory contracts shall be assumed under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the rejection date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

15

## **RETENTION OF JURISDICTION**

102.    Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to each Debtor's Bankruptcy Case to the fullest extent permitted including, but not limited to, with respect to section 1142 of the Bankruptcy Code and proceedings:

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 28 U.S.C. §§157 and 1334;

- To hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtor.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## GENERAL PROVISIONS

103.    **Headings**.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the Plan.

104.    **Disputed Claims**.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid until such Claim becomes an Allowed Claim.

105.    **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

106.    **Other Actions**.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

107.    **Modification of Plan**.  The Debtor may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION

108.    **Injunction**.  The Confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

## <u>CLOSING THE BANKRUPTCY CASE</u>

Upon substantial consummation, the Debtor may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated: New York, New York
       April 4, 2025

Avon Place, LLC

By:    <u>s/ David Goldwasser, CRO</u>

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtor

By:    <u>s/Mark A. Frankel</u>
       488 Madison Avenue
       New York, New York 10022
       (212) 593-1100

18

# EXHIBIT B TO DISCLOSURE STATEMENT
## ASSETS AND LIABILITIES

| Assets | |
|---|---|
| Property Value | $40,000,000 |
| | |

| Liabilities | |
|---|---|
| Administrative Claims | 315,000 |
| Real Estate Tax Lien | $584,403 |
| First Mortgages | $28,100,785 |
| Second Mortgage | $3,000,000 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $1,287,148 |
| Interest Holders | $6,712,664 |
| **Total** | $40,000,000 |

## CHAPTER 7 DISTRIBUTION

| Assets | |
|---|---|
| Property Value | $40,000,000 |
| | |

| Liabilities | |
|---|---|
| Administrative Claims | $4,315,000 |
| Real Estate Tax Lien | $584,403 |
| First Mortgages | $28,100,785 |
| Second Mortgage | $3,000,000 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $1,287,148 |
| Interest Holders | $2,712,664 |
| Total | $40,000,000 |

**Note: All claim amounts subject to objection.**

## Sources & Uses

| Sources | Amount |
|---|---|
| Debtor Funding | $6,849,010.07 |

### Uses

| | | Amount |
|---|---|---|
| Reinstatement Amount - Note | | $1,771,034.46 |
| Reinstatement Amount - LOC | | $110,369.79 |
| Altbanq Lending LLC Payoff | | $3,180,000.00 |
| Insurance Claim Proceeds | | ($474,744.98) |
| Outstanding RE Taxes | | $584,403.03 |
| Outstanding CT Water | | $90,579.25 |
| Outstanding CT Sewer | | $70,683.75 |
| Unsecured Creditors | | $1,125,884.84 |
| Debtor Legal (Estim.) | | $50,000.00 |
| Debtor Professionals (Estim.) | *1.00%* | $271,007.85 |
| Title Fees (Estim.) | | $15,000.00 |
| UST Fees | *0.80%* | $54,792.08 |
| **Total Uses** | | **$6,849,010.07** |