UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                    Chapter 11

    Avon Place, LLC                              Case no.  25-41368 (JMM)

                      Debtor.
---------------------------------------------------------x

## NOTICE OF HEARING ON MOTION TO USE CASH COLLATERAL

       PLEASE TAKE NOTICE, that a hearing will be held before the Honorable Jill Mazer-Marino to be conducted on April 30, 2025 at 10:00 a.m., or as soon thereafter as counsel can be heard, at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York, 11201, to consider the application of Avon Place, LLC to under § 363(c) of the Bankruptcy Code authorizing the use of "cash collateral" as that term is defined in § 363(a) of the Code.

       PLEASE TAKE FURTHER NOTICE, that those intending to appear at the hearing must register with eCourt Appearances no later than two days prior to the hearing. The phone number or video link for the hearing will be emailed only to those that register with eCourt Appearances in advance of the hearing. Instructions for registering with eCourt Appearances can be found at https://www.nyeb.uscourts.gov/node/2126. If you do not have internet access or are otherwise unable to register with eCourt Appearances, you may call or email Judge Mazer-Marino's courtroom deputy for instructions at (347) 394-1844 or JMM_Hearings@nyeb.uscourts.gov.

       PLEASE TAKE FURTHER NOTICE, that objections shall be filed with the Clerk of the Bankruptcy Court, and served upon the undersigned to be received at least seven days prior to the hearing date.

Dated: New York, New York
       April 4, 2025

                                      BACKENROTH FRANKEL & KRINSKY, LLP
                                    Proposed Attorneys for the Debtor

                                    By: s/Mark A. Frankel
                                          488 Madison Avenue
                                          New York, New York  10022
                                          (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                                              Chapter 11

      Avon Place, LLC,                                          Case no.  25-41368 (JMM)

                   Debtor.
---------------------------------------------------------x

## APPLICATION TO USE CASH COLLATERAL

      Avon Place, LLC (the "Debtor"), as and for its application for an order pursuant to § 363(c) of the Bankruptcy Code authorizing the use of "cash collateral" as that term is defined in § 363(a) of the Code ("Cash Collateral"), respectfully represent as follows:

## BACKGROUND

      1.      On March 21, 2025 (the "Petition Date"), the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

      2.      This case was filed to protect the value of the Debtor's properties and to avoid a forfeiture under a predatory foreclosure action brought by 44 Avon Road Credit LLC.

      3.      The Debtor is a Connecticut limited liability company formed in 2022. The Debtor acquired one hundred and eighty (180) condominium units (the "Property") at the property known as Avon Place Condominiums and located at 44-46-47-48 Avonwood Road, Avon, CT 06001, representing 96% of the units in the building complex. Sixty-two (62 units) are located at 44, 47 and 48 Avon Road and forty-six (46) units at 46 Avon Road. One hundred and sixty-two (162) units were purchased in October 2022 for $33,750,000, with the remaining sixteen (16) units

being purchased from individual sellers sporadically since then, for the sum of $2,709,500. The Debtor estimates the current value of the Property to be approximately $38,600,000.

4. In September 2022, the Debtor entered into two loans totaling $28 million, originally issued by Bankwell Bank secured by the Property. The loans were always in good standing, and in June 2024, Bankwell confirmed that payments were current.

5. The Property suffered fire damage in one of the buildings and certain units. The Debtor received an insurance payment of approximately $400,000. It endorsed the funds to Bankwell for debt service.

6. Shortly thereafter, the Mortgagee claims to have taken an assignment of Bankwell's loans, but as of this date the Mortgagee has provided no evidence of the assignment. Before even notifying the Debtor of the assignment, let alone giving a default notice, the Mortgagee commenced a foreclosure, in which it demands appointment of a receiver, payment in full, and a deficiency judgement for any shortfall against Abron Rudich, the Debtor's beneficial owner. Apparently, the Mortgagee manufactured a default by applying the insurance check to principal instead of ongoing debt service and then deemed there to be a default for the now unpaid months.

7. The Debtor was astonished by the Mortgagee's actions until it looked into the background of Kyle O'Hehir, the Mortgagee's principal. He is a real estate investor trying to make a name for himself by acquiring distressed loans at a discount and being as aggressive as he can to enforce collection. In online videos, he describes his approach as capitalizing on technical defaults and the reluctance of traditional banks to take a hard line with borrowers.

8. The Debtor obviously disputes that it was ever in default. The Debtor has therefore elected Chapter 11 protection to pause collection efforts so that it can reinstate the loan under its original terms in a Chapter 11 plan without the added default interest and penalties claimed in the foreclosure action.

**APPLICATION**

9. The Debtor seeks entry of an Order pursuant to §§363(c)(2) and 506(c) of the Bankruptcy Code authorizing the Debtor's use of Cash Collateral in accordance with the budget ("Budget," Exhibit "A") and under the terms and conditions set forth herein, granting the Mortgagee the adequate protection in connection therewith.

10. Section 363(a) of the Bankruptcy Code provides that "cash collateral" includes both cash and cash equivalents in which a debtor and another entity have an interest. Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless each entity that has an interest in such cash collateral consents or the Court, after notice and a hearing, authorizes the use of cash collateral.

11. Here, the Debtor's income consists of rents. The Debtor's expenses, as set forth on the Budget, largely consist of operating expenses, debt service, real estate taxes and insurance. To adequately protect the Mortgagee's interest in Cash Collateral the Debtor requests this Court's authorization to utilize Mortgagee's Cash Collateral to pay such ordinary operating expenses.

12. The Debtor's use of cash collateral in the ordinary course of business will allow the Debtor to preserve and protect its Property, and thus the Debtor will be protecting the Mortgagee's collateral, including cash collateral, so that it does not decline in value during this

case. As stated in *In re Pine Lake Village Apartment Co.* 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982)

> . . . the application of rent income solely to maintain and repair the property so as to prevent further deterioration will enhance the value of the property which serves as the collateral for the. . . plaintiff-mortgagee's claim. [The use of such funds] without any diversion ... to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected.

*Accord, In re 499 W. Warren Street Associates, Ltd. Partnership* 142 B.R. 53 (Bankr. N.D.N.Y.,1992); *In re Constable Plaza Associates, L.P*. 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991); *In re Cardinal Industries, Inc*. 118 B.R. 971 (Bankr..S.D.Ohio 1990).

13. As provided for in the Budget, therefore, the Debtor seeks to use Mortgagee's cash collateral to pay for ordinary expenses such as debt service, taxes, insurance, and legal fees.

14. It is the Debtor's burden of proof to show adequate protection. The burden of proof is by a preponderance of the evidence. *See*, §363(p) of the Bankruptcy Code; *In re Glastream Boats, Inc.*, 110 B.R. 611 (Bankr. M.D. Ga. 1990); *Grogan v. Gamer*, 498 U.S. 279 (1991).

15. The Debtor believes the Property value is far in excess of the amount owed on the obligations. Moreover, the Debtor proposes that to use the Mortgagee's Cash Collateral solely to (a) maintain the value of the Property though payment of the expenses substantially in accord with the Budget, (b) maintain the cash it collects over and above its expenditures in its debtor in possession account pending further order of this Court, and (c) to the extent that the Mortgagee does not have a post-petition security interest in the Debtor's post-petition assets, grant the Mortgagee a security interest in such assets to the extent of any diminution of Cash Collateral

(subject and subordinate to, *inter alia*, the fees of the United States Trustee and the professional fees of the Debtor's professionals). The foregoing, the Debtor believes, adequately protects the Mortgagee's claim.

16. In addition, use of Cash Collateral to pay the operating expenses of the Hotel preserves the Property under section 506(c) of the Bankruptcy Code.

17. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein, and that the Court grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 4, 2025

          **BACKENROTH FRANKEL & KRINSKY, LLP**
          **Attorneys for the Debtor**

          By:    s/Mark Frankel
                   488 Madison Avenue
                   New York, New York 10022
                   (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                    Chapter 11
\
    Avon Place, LLC,                    Case no.  25-41368 (JMM)

                 Debtor.
---------------------------------------------------------x

## ORDER FOR USE OF CASH COLLATERAL

Upon the motion (the "Cash Collateral Motion") for an order pursuant to § 363(c)(2)(B) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking the entry of an order (a) authorizing Avon Place, LLC (the "Debtor") to use cash collateral as that term is defined in §363(a) of the Bankruptcy Code (the "Cash Collateral") in general accordance with the Budget (the "Budget") annexed to the Cash Collateral Motion and (b) granting adequate protection to 44 Avon Road Credit LLC (the "Mortgagee"); and after due deliberation and sufficient cause appearing to me therefor; it is

**ORDERED,** that the Debtor is authorized to use Cash Collateral generated by the Properties[1] on the terms set forth herein; and it is further

**ORDERED,** that **p**ending further order of this Court, pursuant to 11 U.S.C. §§ 363(c)(2) and 506(c), the Cash Collateral shall be used by the Debtor in the ordinary course of its business to pay the reasonable and necessary operating expenses of the Debtor in general accordance with the Budget which is incorporated herein, and that without further order of the

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Cash Collateral Motion

Court, the Debtor may exceed any line-item in the Budget and make expenditures not on the Budget for ordinary course of business expenses that it deems to be appropriate in its business judgment as necessary to operate the business and maintain the Properties; and it is further

**ORDERED,** that as adequate protection for the Debtor's use of Cash Collateral, the Debtor will (a) maintain the value of the Properties though payment of the normal monthly expenditures in general accord with the Budget, (b) maintain the cash it collects over and above its expenditures in its debtor in possession account pending further order of this Court, (c) provide that all liens and security interests of the Mortgagee, if any, in the Cash Collateral used and consumed pursuant to this Order shall constitute a claim, secured by a lien in all of the pre-petition and post-petition assets of the Debtor in the same order of priority as existed prior to the Petition Date (the "Adequate Protection Lien") to the extent of any diminution in the level of Cash Collateral as it existed as of the Petition Date, *provided however* that such Adequate Protection Lien shall at all times be subordinate to (i) professional fees and reimbursement of expenses that may be awarded pursuant to 11 U.S.C. §§330 and 331 to professionals retained by the Debtor, (ii) any professionals employed by committees in this case and retained by order of this Court; and (iii) quarterly fees of the United States Trustee. If the Court subsequently determines that there has been no diminishment in the values of Cash Collateral since the Petition Date as a result of the Debtor's use of Cash Collateral, the Adequate Protection Lien and all claims and priorities granted herein with respect thereto shall be void; and it is further

ORDERED, that the terms of this Order shall be effective until further order of this Court; and it is further

ORDERED, that if any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect the validity of any payments made hereunder or the validity and enforceability of any lien, security interest or priority authorized hereby with respect to any of the Cash Collateral which has been used pursuant to this Order, and notwithstanding such stay, modification or vacation, any use of Cash Collateral by the Debtor prior to the effective date of such modification, stay or vacation shall be governed in all respects by the original provisions of this Order; and it is further

ORDERED, that nothing herein shall constitute an admission or waiver by either Mortgagee or the Debtor of any of their rights under the underlying note, mortgage, the properties securing the note, or any of rights of any kind. Nor shall anything herein constitute an admission by the Debtor of the validity and amount of the Mortgagee's claims against the Debtor or of the extent, priority and perfection of the Mortgagee's security interests in the Debtor's assets and the Debtor reserves its rights to object to the Mortgagee's claims and validity, extent and priority of the Mortgagee's security interests in the Debtor's assets and seek direct relief against the Mortgagee.