*Presentment Date:* May 1, 2025
*Presentment Time:* 12:00pm

**BACKENROTH, FRANKEL & KRINSKY, LLP**
*Proposed Counsel for the Debtor*
488 Madison Avenue, 23rd Floor
New York, New York 10022
(212) 593-1100
mfrankel@bfklaw.com
Mark A. Frankel, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In Re:                                              Chapter 11

AVON PLACE LLC,                                     Case No.: 25-41368-jmm

                              Debtor.
---------------------------------------------------------X

**NOTICE OF PRESENTMENT OF AN ORDER AUTHORIZING THE DEBTOR TO (I) EMPLOY AND RETAIN FIA CAPITAL PARTNERS, LLC AS OF MARCH 21, 2025, AND (II) AFFIRM DESIGNATION OF DAVID GOLDWASSER AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR**
**EFFECTIVE AS OF MARCH 21, 2025**

**PLEASE TAKE NOTICE,** that upon the annexed application (the "Application") of the above-captioned debtor and debtor-in-possession (the "Debtor"), the annexed Order Authorizing the Debtor to (I) Employ and Retain FIA Capital Partners, LLC Effective as of March 21, 2025, and (II) Affirm Designation of David Goldwasser as Chief Restructuring Officer of the Debtor Effective as of March 21, 2025, will be presented by the undersigned for approval and signature to the Honorable Jil Mazer-Marino, United States Bankruptcy Judge, at the United States Bankruptcy Court, 271-C Cadman Plaza East - Suite 1595, Brooklyn, NY 11201, on the 1st day of May, 2024 at 12:00 p.m.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief requested in the Application  must be made in writing, filed with the Court on the Court's Electronic Case Filing System, at www.ecf.nyeb.uscourts.gov (login and password required), with a copy delivered directly to Chambers and served upon Backenroth, Frankel & Krinsky, LLP, proposed attorneys for the Debtor, 488 Madison Avenue, 23rd Floor, New York, NY 10022 Attn: Mark A. Frankel, Esq., so as to be received no later than three (3) days before the Presentment Date.

**PLEASE TAKE FURTHER NOTICE**, that in the event that an objection is received, the Court may hold a hearing with respect to the signature of this Order, and the undersigned will inform any party filing an objection as to the date and time of the hearing.

Dated: New York, New York
        April 7, 2025

**BACKENROTH, FRANKEL & KRINSKY, LLP**
*Proposed Counsel for the Debtor*
488 Madison Avenue, 23rd Floor
New York, New York 10022
(212) 593-1100
mfrankel@bfklaw.com

By: /s/  Mark A. Frankel
        Mark A. Frankel

**BACKENROTH, FRANKEL & KRINSKY, LLP**
*Proposed Counsel for the Debtor*
488 Madison Avenue, 23rd Floor
New York, New York 10022
(212) 593-1100
mfrankel@bfklaw.com
Mark A. Frankel, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In Re:                                       Chapter 11

AVON PLACE LLC,                  Case No.: 25-41368-jmm

                            Debtor.
---------------------------------------------------------X

**DEBTOR'S APPLICATION FOR ORDER TO (I) EMPLOY AND RETAIN FIA
CAPITAL PARTNERS, LLC AS OF MARCH 21, 2025, AND (II) AFFIRM
DESIGNATION OF DAVID GOLDWASSER AS CHIEF RESTRUCTURING OFFICER
OF THE DEBTOR EFFECTIVE AS OF MARCH 21, 2025**

**TO THE HONORABLE JIL MAZER-MARINO
UNITED STATES BANKRUPTCY JUDGE:**

      The above-captioned debtor and debtor-in-possession (the "Debtor"), hereby submits this

*Application for an Order to (I) Employ and Retain FIA Capital Partners, LLC Effective as of*

*March 21, 2025, and (II) Affirm Designation of David Goldwasser as Chief Restructuring Officer*

*of the Debtor Effective as of March 21, 2025* (the "Application") pursuant to sections 105(a) and

363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 ("Bankruptcy Code"), and

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

      In support of this Application, the Debtor relies upon and incorporates by reference the

Declaration of David Goldwasser (the "Goldwasser Declaration"), attached hereto as Exhibit A.

In support of this Application, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Bankruptcy Rule 7008, the Debtor consents to entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, Rule and 2016 of the Bankruptcy Rules, and Rule 2016-1 of the Local Bankruptcy Rules.

## BACKGROUND

3.      On March 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"), in the United States Bankruptcy Court for the Eastern District of New York.

4.      The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed.

5.      The Debtor owns various condominium units at 44, 46, 47, and 48 Avonwood Road, Avon, CT 06001 (the "Property").

6.      Prior to the Petition Date, Debtor's sole member executed a member resolution appointing David Goldwasser as chief restructuring officer of the Debtor.

7. For a more complete summary of the background of this Chapter 11 Case, the Debtor hereby incorporates and references the Declaration of David Goldwasser Pursuant to Local Bankruptcy Rule 1007-4 [ECF No. 14].

## RELIEF REQUESTED

8. By this Application, the Debtor requests entry of an Order, substantially in the form attached hereto as Exhibit B (the "Order"), (a) authorizing the Debtor to retain FIA Capital Partners, LLC ("FIA") to provide the Debtor with a chief restructuring officer ("CRO") and certain additional personnel; and (b) to affirm the designation of David Goldwasser ("Mr. Goldwasser") as Chief Restructuring Officer for the Debtor.

## RETENTION OF FIA CAPITAL PARTNERS, LLC AND DAVID GOLDWASSER

### I.    FIA Qualifications

9. FIA is a financial advisory firm with extensive experience in restructuring and providing financial and operational guidance to companies in distressed situations.

10. In particular, FIA has extensive experience in providing financial advisory services to troubled debtors. FIA's professionals have advised debtors, creditors and equity holders in many similar Chapter 11 cases. The current partners, managing directors, senior managers and other professional staff of FIA have extensive experience working with financially troubled companies in complex financial restructurings in and out-of-court and in comparable Chapter 11 cases. FIA's professionals have been involved as financial advisors to debtors, creditors, and other constituents in many Chapter 11 and Chapter 7 cases.

11. Mr. Goldwasser has more than 20 years of experience in operational roles and turnaround consulting in a variety of industries. His areas of expertise include operations

restructuring, business plan analysis, performance improvement, cash and vendor management, bankruptcy consulting and interim management services. His clients have primarily been in the real estate and hospitality service areas.

## SERVICES TO BE PROVIDED

**II.     Services of FIA**

12.         Pursuant to the engagement letter dated February 26, 2025, a copy of which is annexed hereto as Exhibit "C", FIA will provide the Debtor with restructuring and crisis management services (its professional staff, the "<u>Additional Personnel</u>") and Mr. Goldwasser as the Chief Restructuring Officer of the Debtor, who shall be the sole officer of the Debtor going forward. FIA's duties, obligations, and its restructuring and crisis management services shall be collectively referred to as the "<u>Management Services</u>". Among other things, Mr. Goldwasser shall be the sole representative of the Debtor's estate and shall be exclusively vested with all of the powers and duties to operate the Debtor's business pursuant to Bankruptcy Code Sections 1107 and 1008 and in accordance with, and subject to, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Procedure.

**III.    Terms of Retention**

13.         FIA's decision to accept this engagement to advise and assist the Debtor was conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment. Additionally, FIA's engagement is also conditioned on being compensated for its services and being reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices.

14.         As a condition to employment, FIA will invoice the Debtor based on the hours

worked by personnel at the following agreed-upon hourly rates, which will be revised from time to time. Adjusted rates will be reflected in billings:

| PERSONNEL | HOURLY BILLING RATE |
|---|---|
| Paralegal | $280.00 |
| Principal/Managing Director | $400.00 |
| CPA | $450.00 |
| David Goldwasser, CRO | $750.00 |

15. The hourly rates are based upon FIA's rates for an individual person of a certain skill and experience. FIA has advised the Debtor that the hourly rates set forth above are subject to periodic increases in the normal course of FIA's business. FIA will provide written notice of any rate increases to the Debtor, the U.S. Trustee, and any official committee appointed in these cases.

16. In addition, the Debtor understand that FIA will bill for reasonable direct expenses that are likely to be incurred in connection with the engagement, including but not limited to telephone, overnight mail, messenger, travel, meals, accommodations, and other expenses specifically related to the engagement. Pursuant to its engagements, the Debtor agreed that if FIA and/or any of its employees, are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, they will be compensated at their regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto as provided for herein.

17. The Debtor believes that FIA's hourly rates are in fact reasonable and within market

for similar services. The Debtor believes these rates are designed to fairly compensate FIA for their work and to cover fixed and routine overhead expenses.

18.     In light of the foregoing and given the numerous issues that FIA may be required to address in the performance of their services hereunder, the Debtor believe that the fee and expense structure is in line with market compensation for similar services and is fair and reasonable.

## IV.     No Duplication of Services

19.     The Debtor intends for FIA's services to complement, and not duplicate, the services to be rendered by any other professional retained in these cases. FIA understands that the Debtor has retained and may retain additional professionals during the term of the engagement. FIA has worked, and will continue to work, cooperatively as requested by the Debtor with other professionals retained by the Debtor to integrate any respective work conducted by the professionals on behalf of the Debtor.  In addition, FIA will assist the CRO and provide the CRO with information and assistance the CRO may request in connection with the CRO's assumption of his duties.

## V.     No Adverse Interests

20.     As set forth in the Goldwasser Declaration, FIA has represented to the Debtor that they have not represented and will not represent any parties other than the Debtor in this Chapter 11 Case and is otherwise a disinterested person within the meaning of 11 U.S.C. § 101(14) of the Bankruptcy Code.

21.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of the Debtor's retention are discovered or arise, FIA will use

reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

22.          FIA will conduct an ongoing review of their files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, FIA will supplement its disclosures to the Court.

23.          Pursuant to Bankruptcy Code section 504, FIA has informed the Debtor that there are no agreements or understandings between FIA and any other entity, other than the respective employees of FIA, for the sharing of compensation received or to be received for services rendered in connection with this Chapter 11 Case.

### BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

24.          Pursuant to section 363(b) of the Bankruptcy Code, the Debtor seeks to employ and retain FIA effective as of March 21, 2025, and to affirm the appointment of Mr. Goldwasser as CRO effective as of March 21, 2025.  Under applicable case law, in this and other jurisdictions, if the Debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable exercise of the debtor's business judgment, such use should be approved *See, e.g., United Retired Pilots Benefit Protection Ass'n v. United Airlines, Inc.* (*In re UAL Corp.*), Case 443 F.3d 565, 571 (7th Cir. 2006); *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the

hearing a good business reason to grant such an application.").

25.     The decision to retain FIA and employ Mr. Goldwasser as CRO should be authorized because it is a sound exercise of the Debtor's business judgment.  Mr. Goldwasser has over twenty years of experience in financial, operational, restructuring and business consulting services, and FIA is well qualified and equipped to assist in CRO duties.  FIA and Mr. Goldwasser in his capacity as CRO, will provide services that are in the best interests of all parties in interest in this Chapter 11 Case.

26.     In light of the foregoing and for reasons previously stated, the Debtor submits that FIA and Mr. Goldwasser's employment is necessary and in the best interests of the Debtor, its estate, and all stakeholders.  Additionally, as described herein and in the Goldwasser Declaration, FIA does not hold an interest adverse to the estate.  Accordingly, the Debtor submits that Court approval of FIA as restructuring management advisor and affirmation of appointment of Mr. Goldwasser as CRO in this Chapter 11 Case is warranted.

## **RESERVATION OF RIGHTS**

27.     Nothing contained in this Application, or any actions taken pursuant to any order granting the relief requested by this Application is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtor, (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or in this Application or any order granting the relief requested by this Application, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or

any other applicable law, or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Application are valid, and the Debtor expressly reserves their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Bankruptcy Court grants the relief sought herein, any payment made pursuant to the Bankruptcy Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NO PRIOR REQUEST

28.      No prior request for the relief sought in the Application has been made to this or any other court.

## NOTICE

29.      Notice of this Application has been provided to: (a) the Office of the United States Trustee for the Eastern District of New York; (b) the Debtor's creditors; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

Exhibit A

**BACKENROTH, FRANKEL & KRINSKY, LLP**
*Proposed Counsel for the Debtor*
488 Madison Avenue, 23rd Floor
New York, New York 10022
(212) 593-1100
mfrankel@bfklaw.com
Mark A. Frankel, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In Re:                                                                    Chapter 11

AVON PLACE LLC,                                              Case No.: 25-41368-jmm

                                         Debtor.
---------------------------------------------------------X

### DECLARATION OF DAVID GOLDWASSER IN SUPPORT OF DEBTOR'S APPLICATION TO (I) EMPLOY AND RETAIN FIA CAPITAL PARTNERS, LLC AS OF MARCH 21, 2025, AND (II) AFFIRM DESIGNATION OF DAVID GOLDWASSER AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR EFFECTIVE AS OF MARCH 21, 2025

Pursuant to 28 U.S.C. § 1746, I, David Goldwasser, declare that the following is true to the best of my knowledge, information and belief:

1.     I am the managing member of FIA Capital Partners, LLC ("FIA"), with an office located at 295 Front Street, 2nd Floor, Brooklyn, NY 11201.

2.     I am familiar with the matters set forth herein and make this declaration (the "Goldwasser Declaration") in support of the *Application to (I) Employ and Retain FIA Capital Partners, LLC Effective as of March 21, 2025, and (II) Affirm Designation of David Goldwasser as Chief Restructuring Officer of the Debtor Effective as of March 21, 2025* (the "Application") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 ("Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").  Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.[1]

## FIA QUALIFICATIONS

3.      FIA is a financial advisory firm with extensive experience in restructuring and providing financial and operational guidance to companies in distressed situations.

4.      In particular, FIA has extensive experience in providing financial advisory services to troubled debtors.  FIA's professionals have advised debtors, creditors and equity holders in many similar Chapter 11 cases.  The current partners, managing directors, senior managers and other professional staff of FIA have extensive experience working with financially troubled companies in complex financial restructurings in and out-of-court and in comparable Chapter 11 cases.  FIA's professionals have been involved as financial advisors to debtors, creditors, and other constituents in many Chapter 11 and Chapter 7 cases.

5.      I have more than 20 years of experience in operational roles and turnaround consulting in a variety of industries.  My areas of expertise include operations restructuring, business plan analysis, performance improvement, cash and vendor management, bankruptcy consulting and interim management services.  My clients have primarily been in the real estate and hospitality service areas.

6.      I believe that FIA and I are qualified to provide services to the Debtor in this Chapter 11 case.

## FIA'S DISINTERESTEDNESS

7.      In connection with its proposed retention by the Debtor in this Chapter 11 case, FIA undertook to determine (a) whether it had any relationships that might cause it not to be

---

[1]  Certain of the disclosures herein relate to matters within the knowledge of other professionals at FIA and are based on information provided by them.

disinterested or to hold or represent an interest adverse to the Debtor and (b) all "connections" (as

such term is used in Bankruptcy Rule 2014) to the Debtor, its creditors, other parties in interest,

the United States Trustee or any person employed in the Office of the United States Trustee (the

"<u>U.S. Trustee</u>").

        8.      To the best of my knowledge, information and belief, insofar as I have been able to

ascertain after reasonable inquiry, other than in connection with this Chapter 11 case, neither I, nor

FIA nor any of its partners, principals, employees, agents or affiliates, have any connection with

the Debtor, its creditors, the U.S. Trustee, or any other party with an actual or potential interest in

this Chapter 11 case, or their respective attorneys or accountants, except as set forth below:

        (a)     FIA is not employed by, and has not been employed by, any entity other than the Debtor in matters related to this Chapter 11 case.

        (b)     From time to time, FIA has provided services, and likely will continue to provide services, to certain creditors of the Debtor and various other parties adverse to the Debtor in matters wholly unrelated to this Chapter 11 case. As described below, FIA has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided, services to any significant creditor, equity security holder, insider or other party-in-interest in such unrelated matters.

        (c)     FIA provides services in connection with numerous cases, proceedings and transactions unrelated to this chapter 11 case. Those unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in the Chapter 11 case or may represent such parties.

        (d)     FIA's personnel may have business associations with certain creditors of the Debtor <u>or its professionals</u> unrelated to this Chapter 11 case. In addition, in the ordinary course of their businesses, FIA may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in this Chapter 11 case.

        9.      FIA searched its client database to determine whether FIA had any relationships

with the following (collectively, the "<u>Interested Parties</u>"), or their representatives as potential

parties-in-interest (collectively, the "<u>Potential Parties in Interest</u>"), the results of which, with

details describing any connections, are all listed below ("FIA's Connections With Potential Parties"):

      (a)    the Debtor-in-Possession;

      (b)    the Debtor's current members, directors and officers (to the extent applicable) and certain of their most significant business affiliations, as provided to FIA by the Debtor;

      (c)    the Debtor's principal secured creditors, as provided to FIA by the Debtor;

      (d)    the Debtor's creditors and interested parties, as provided to FIA by the Debtor; and

      (e)    the Debtor's various other potential parties-in-interest, as identified by the Debtor.

10.    Based on that search, FIA represents that, to the best of its knowledge, FIA knows of no fact or situation that would represent a conflict of interest for FIA with regard to the Debtor.

11.    In addition, FIA has no connection with any judge in this Court or at the Court's clerk's office. Moreover, FIA has no connection with anyone in Hon. Jil Mazer-Marino's chambers or anyone connected with the U.S. Trustee for Region 2.

12.    FIA submits that there are no simultaneous or prospective engagements existing, including that on behalf of the Debtor, which  - if the Application is granted - would constitute a conflict or adverse interest as to the matters for which it will be employed by the Debtor, nor would FIA staff  any post-petition matter with personnel that would create a conflict or adverse interest to these matters.

13.    FIA consists of financial advisors and crisis managers providing services and advice specifically in the areas of restructuring and distressed debt. As a result, FIA has represented, and may in the future represent, certain interested parties in matters wholly unrelated to this Chapter 11 case, either individually or as part of representation of a committee of creditors or interest holders.

14.    FIA is a "disinterested person" as that term is defined in section 101(14), as modified by section 1107(b) of the Bankruptcy Code, given that, to the best of my information and belief, FIA:

      (a)    is not a creditor, an equity security holder, or an insider of the Debtor;

      (b)    is not and was not, within two years before the commencement of this Chapter 11 case, a director, officer or employee of the Debtor; and

      (c)    does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

15.    Despite the efforts described above to identify and disclose FIA's connections with parties in interest in this Chapter 11 case, FIA is unable to state with certainty that every client relationship or other connection has been disclosed.  In that regard, if FIA discovers additional information that requires disclosure, FIA will file a supplemental disclosure with the Court.

## FIA'S COMPENSATION

16.    The compensation structure set forth in the Application is consistent with FIA's typical fees for work of this nature.  The fees are set at a level designed to compensate FIA fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is FIA's policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

17.    As a condition to employment, FIA will invoice the Debtor based on the hours worked by personnel at the following agreed-upon hourly rates, which will be revised from time to time. Adjusted rates will be reflected in billing:

| PERSONNEL | HOURLY BILLING RATE |
|---|---|
| Paralegal | $280.00 |
| Principal/Managing Director | $400.00 |
| CPA | $450.00 |
| David Goldwasser, CRO | $750.00 |

18.    The hourly rates are based upon FIA's rates for an individual person of a certain skill and experience.  FIA has advised the Debtor that the hourly rates set forth above are subject to periodic increases in the normal course of FIA's business. FIA will provide written notice of any rate increases to the Debtor, the U.S. Trustee, and any official committee appointed in this case.

19.    FIA shall file with the Court with copies to the United States Trustee ("U.S. Trustee") and all official committees, if any, a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed.

20.    Furthermore, FIA shall file with the Court and provide notice to the UST and all official committees, if any, reports of compensation earned and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred.  Time records shall (i) be appended to the reports, (ii) contain detailed time

entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

21.     FIA reserves the right to supplement this Declaration in the event that FIA discovers any facts bearing on matters described in this Declaration regarding FIA's employment by the Debtor.

22.     This concludes my Declaration.

## **28 U.S.C 1746 Declaration**

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 4, 2025.

s/David Goldwasser
David Goldwasser

Exhibit B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                              Chapter 11

AVON PLACE LLC,                                     Case No.: 25-41368-jmm

                                    Debtor.
------------------------------------------------------------X

**ORDER GRANTING DEBTOR'S MOTION FOR AN ORDER TO (I) EMPLOY AND
RETAIN FIA CAPITAL PARTNERS, LLC AS OF MARCH 21, 2025, AND (II) AFFIRM
DESIGNATION OF DAVID GOLDWASSER AS CHIEF RESTRUCTURING OFFICER
OF THE DEBTOR EFFECTIVE AS OF MARCH 21, 2025**

Upon consideration of the Debtor's motion for an order to (i) employ and retain FIA Capital

Partners, LLC as of March 21, 2025, and (ii) affirm designation of David Goldwasser as chief

restructuring officer of the Debtor effective as of March 21, 2025 (the "Motion") and any

response(s) to the Motion, after due and proper notice of the motion was given and a hearing was

held on the Motion, it is **ORDERED** that:

1.     The Motion is **GRANTED** as modified herein.

2.     The Debtor is authorized to engage FIA Capital Partners, LLC ("FIA") and affirm

the designation of David Goldwasser ("Goldwasser") as chief restructuring officer on the terms

described in the Motion, subject to the following terms, which apply notwithstanding anything in

the Motion or any exhibit(s) related thereto to the contrary:

(a.)     FIA Capital Partners, LLC, its affiliates and Goldwasser shall not act in any

other capacity (for example, and without limitation, as a financial advisor,

claims agent/claims administrator, or investor/acquirer) in connection with

the above-captioned cases.

(b.)     In the event the Debtor seek to have FIA and Goldwasser assume executive

officer positions that are different than the position(s) disclosed in the

Motion, or to materially change the terms of the engagement by either (i) modifying the functions of  personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

(c.)    FIA shall file with the Court with copies to the United States Trustee ("U.S. Trustee") and all official committees a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed.

(d.)    No principal, employee or independent contractor of FIA and its affiliates shall serve as a director of any of the above-captioned Debtor during the pendency of the above-captioned cases.

(e.)    FIA shall file with the Court and provide notice to the UST and all official committees, reports of compensation earned, and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the

2

time entries shall be kept in hourly increments.  All compensation shall be subject to review by the Court in the event an objection is filed.

(f.)    Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order.  No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

(g.)    The Debtor is permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtor's D&O policy.

(h.)    There shall be no indemnification of FIA or its affiliates, or Goldwasser.

(i.)    For a period of three years after the conclusion of the engagement, neither FIA nor any of its affiliates or Goldwasser shall make any investments in the Debtor or the Reorganized Debtor.

(j.)    FIA and Goldwasser shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest.  The obligation to disclose identified in this subparagraph is a continuing obligation.

3.    The Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

4.    If there is any inconsistency between the terms of this Order, the Application, and the Declaration of David Goldwasser in support thereof, the terms of this Order shall govern.

**NO OBJECTION:**
**WILLIAM K HARRINGTON**
**UNITED STATES TRUSTEE, REGION 2**


By: _____

Shannon Scott
Trial Attorney
Office of the United States Trustee
Region 2– Brooklyn Division
Alexander Hamilton Custom House
One Bowling Green, Room 510
New York, New York 10004
(212) 206-2586

Dated: New York, New York
         April ____, 2025

Exhibit C



## CHIEF RESTRUCTURING OFFICER AGREEMENT

This **CHIEF RESTRUCTURING OFFICER AGREEMENT** (the "Agreement") is entered into by and between **AHRON RUDICH** and **AVON PLACE LLC** (hereinafter referred to as the "Client"), undergoing reorganization under Chapter 11 of the United States Bankruptcy Code (the "Debtor"), and **FIA CAPITAL PARTNERS, LLC** ("FIA"), located at 295 Front Street, 2nd Fl., Brooklyn, NY 11201.

**WHEREAS**, the Client wishes to retain FIA to provide to the Client the services of David Goldwasser, who will serve as the Client's Chief Restructuring Officer (the "CRO"), in connection with the filing and prosecution of a Chapter 11 case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), to provide management, operational oversight, and restructuring services, as set forth herein, and consistent with the Jay Alix Protocols (defined herein), subject to approval by the Bankruptcy Court.

1. **AUTHORITY OF CRO**

   The CRO shall have the following authority, subject to oversight by the Bankruptcy Court and the Debtor's board or Member(s):

   - *Operational Control*: Authority to manage day-to-day operations, including tenant communications, lease agreements, and property maintenance.
   - *Financial Management*: Supervise cash collateral usage, approve budgets, and ensure adequate insurance coverage for the property.
   - *Restructuring Strategy*: Develop and implement a restructuring or disposition plan, including a §363 sale, if necessary.
   - *Engagement of Professionals*: Retain third-party vendors or advisors, such as brokers or property managers, to enhance operational and financial performance.

2. **SCOPE OF SERVICES**

   In connection with the Client's Bankruptcy Case, the CRO's duties on behalf of the Client shall also include, but not be limited to (subject to any applicable Bankruptcy Court approval), the following:

   a) Oversee the Debtor's operations, including property management and maintenance, tenant negotiations, and lease compliance; rights and powers to open and close bank accounts, and to disburse funds from such accounts consistent with any cash management order approved by the Bankruptcy Court.

   b) Manage cash flow and ensure the payment of operating expenses, property taxes, and insurance.

   c) Evaluate and assist bankruptcy counsel to develop a plan of reorganization to liquidate or dissolution of the Client and discuss same with counsel, secured creditors, other creditors and/or governmental authorities, including the Office of



the U.S. Trustee ("OUST").

d) Develop and implement a strategy for the stabilization or sale of the property pursuant to §363 of the Bankruptcy Code or as part of a plan of reorganization.

e) Conduct analyses of property performance, debt obligations, and restructuring alternatives, including loan modifications or discounted payoffs.

f) Perform a comprehensive due diligence review of the Client, its liabilities and the Property, including, without limitation, its Schedules and Statement of Financial Affairs to be filed in the Bankruptcy Case. If necessary, and as directed by Client, perform an on-site inspection of the Properties and physical review of the local markets and the larger general market.

g) Assist in the preparation of materials for filing the petition and schedules, review books and records, analyze loan documents, review accompanying litigation, and conduct creditors' claims analysis.

h) Prepare and file Monthly Operating Reports ("MORs") required under the Bankruptcy Code and guidelines for the Eastern District of New York, ensuring compliance with OUST requirements.

i) Attend Court proceedings, initial debtor interview ("IDI") and §341(a) meetings, as well as additional meetings with creditors and stakeholders, as may be required. Provide testimony as reasonably required in connection with same.

j) Act as a liaison and coordinate information flow and efforts between management of the Client and its advisors and creditors and their advisors, as well as the OUST. Provide regular updates, including but not limited to updates on reasonable request, to key stakeholders, any official committees appointed in those proceedings, and their respective professionals, subject to reasonable and appropriate confidentiality restrictions.

k) Perform such other services as requested or directed by the Member(s) as are reasonably related to the above-described services and agreed to by the CRO.

The services herein provided are to be rendered solely to the Client. They are not being rendered by FIA as an agent or as a fiduciary of the Member or the creditors of the Client and FIA shall not have any liability or obligation with respect to its services hereunder to such Member, creditors, or to any officers, employees or any other person or entity, other than the Client.



3. **TERM**

The term of this Agreement shall commence on the date hereof and shall terminate upon the earlier of (i) Client's or CRO's termination of this Agreement pursuant to paragraph 6 hereof; (ii) final dissemination of all net proceeds from any plan of reorganization, including payment of accrued but unpaid fees to the OUST; or (iii) entry of an Order closing the Bankruptcy Case

4. **PROJECTIONS; RELIANCE; LIMITATIONS OF DUTIES**

The Client understands that the services to be rendered by the CRO and other FIA personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Client's operations, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the CRO, FIA and its personnel will be relying on information provided by other members of the Client's management in preparation of those projections and forward-looking statements. The CRO, and other FIA personnel and FIA are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Client.  The CRO or any FIA personnel and FIA are under no obligation to update data submitted to them or review any other areas unless specifically requested by the Members to do so. FIA will not be responsible for independently verifying the accuracy of any information provided to FIA by the Client or its agents (and shall not be liable for inaccuracies in any information provided to FIA by or at the direction of the Client.

5. **COMPENSATION**

Client agrees to pay to CRO the following fees for its services as follows:

A. Client shall pay FIA a non-refundable up-front fee **$35,000.00** which will be credited from the advisory agreement with FIA.

B. Client will be billed a monthly fee beginning April 1, 2025 in the amount of **$10,000.00**.

C. A Per Diem Fee for travel in the amount of **$2,500.00** plus travel expenses (i.e. Airfare from Fort Lauderdale Airport to necessary location, rental car, Uber, Hotel stay if overnight stay is required, meals) shall be paid to FIA prior to any such appearance.  This travel expense is in lieu of hourly rates billed.

6. **ACCEPTABLE PAYMENT METHODS**:

**By Wire or ACH**:

Beneficiary Name: FIA Capital Partners, LLC Beneficiary
Account: 665239700
ABA Routing #: 267084131



Bank Name: JP Morgan Chase Bank, NA
Account Address:
3284 N 29th Court
Hollywood, FL 33020

**By check**: Payment of all fees and reimbursed out-of-pocket expenses shall be made in care of FIA Capital Partners LLC, Attention: David Goldwasser, and mailed with a tracking number to 3284 N 29th Court Hollywood, FL 33020.

**By credit card**:  Authorization form may be provided upon request. Note: all payments processed by credit card shall be subject to an additional **3.195%** processing fee.

7. **TERMINATION**: This Agreement may be terminated by mutual agreement or by court order, or upon five (5) days' written notice by either party.  Upon issuing such a termination notice, no further payments shall be required even if a payment comes due to FIA during the ten (10) day notice period.  To the extent, however, that this Agreement is terminated, all Fees due FIA through the termination date must be paid in full.  Client will not be entitled to any credit or refund for prior payments made before the termination notice as sent that apply to periods after the termination of this Agreement.

8. **NOTICES:**  Any notice, demand or communication required or given under this Agreement shall be in writing via email with confirmed receipt by FIA, and shall be deemed to have been given (i) when delivered personally or by electronic mail (with confirmation of delivery) or (ii) one (1) business day after given to a nationally recognized courier for receipted, next business day delivery, in either of such cases, at the address of the recipient Party designated below:

If to FIA Capital Partners, LLC:                    If to Client:

FIA Capital Partners, LLC                           Ahron Rudich
25 Front Street, 2nd Floor                          Avon Place LLC
Brooklyn, NY 11201                                  710 Avenue L
Attention: David Goldwasser                         Brooklyn, NY 11230
dgoldwasser@fiacp.com


Either party may change the person or address so designated by it in this Article, above, from time to time, by way of a notice to the other Party.

9. **NO SOLICITATION**: During the Term and for six (6) months thereafter, Client shall not solicit, employ, hire or retain, directly or indirectly, in any capacity whatsoever, any individual who was a member, partner, director, officer, employee, shareholder, agent, representative or affiliate of FIA at any time during the Term.



10. **AUTHORITY:** The person signing this Agreement certifies that he has the authority as a principal, or as an authorized agent of the Client, to sign this Agreement.

11. **INDEMNIFICATION**: Subject to Bankruptcy Court approval, the Debtor shall indemnify the CRO against claims, liabilities, and expenses arising from the performance of services under this Agreement, except in cases of gross negligence, fraud, or willful misconduct.

12. **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws principles.

13. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the parties hereto and supersedes any prior oral or written agreements or understandings. Any modification or amendment to this Agreement must be in writing and signed by both parties. This Agreement shall commence upon Bankruptcy Court approval and continue until terminated by mutual agreement or by court order pursuant to the terms of Section 6 above.

14. **CONFIDENTIALITY**:  The CRO shall maintain the confidentiality of all non-public information obtained during this engagement, except as required by law or Bankruptcy Court order.

15. **SUCCESSORS AND ASSIGNS:** This Agreement shall bind and insure to the benefit of FIA and its heirs, executors, successors and assigns and Client and its heirs, executors, successors and permitted assigns.

16. **DISCLOSURES:** Except as set forth herein, FIA confirms that none of its principals or professional staff have any financial interest or business connection with Client, and FIA is aware of no conflicts regarding this Agreement. Since FIA is a consulting and restructuring firm that serves clients both in and out of court, it is possible that FIA may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Client, including creditors of the Client.  In the event the Client accepts the terms of this engagement, FIA will not represent, and FIA warrants that FIA has not represented, the interest of any such entities or people in connection with this matter.  FIA shall monitor its records and any forthcoming the bankruptcy cases for possible conflicts that could arise during the course of the engagement, and FIA will promptly file a disclosure with the Court should any come to FIA's attention.  FIA reserves the right to resign from this engagement on written notice of not less than fifteen 15 days at any time if conflicts of interest arise or become known to it that, in its judgment, would impair its ability to perform objectively.  However, any withdrawal or resignation shall be reasonably coordinated with the Client in a confidential manner.



## 17. **JAY ALIX & ASSOCIATES PROTOCOL**

FIA and the Client acknowledge the Jay Alix & Associates Protocol (the "Protocol") imposed by the United States Trustee and the United States Bankruptcy Court. Based upon the current bankruptcy case with respect to the Client, the Protocol will apply in connection with the application to retain FIA and David Goldwasser as CRO pursuant to this Agreement. Thus, the Client engages FIA in a single capacity, solely as CRO, to provide the services set forth herein, so as to comply, among other things, with the Protocol.

The CRO agrees to comply with the Protocol as follows:

- *Separate Retention Application*: The CRO will be employed pursuant to a separate application under Bankruptcy Code §363 and not as a professional under §327.
- *Disclosure of Relationships*: Full disclosure of any connections with the Debtor, creditors, or other interested parties per Bankruptcy Rule 2014(a).
- *No Duplication of Services*: Ensure no overlap with services provided by other professionals or advisors retained by the Debtor.
- *Compensation*: The CRO's compensation will not be subject to the fee application process under §§330 and 331 but will be reviewed by the Bankruptcy Court for reasonableness.
- *Transparency*: Maintain open communication with stakeholders and provide regular updates on restructuring progress.

This Agreement and all actions taken by the CRO are subject to the oversight and approval of the Bankruptcy Court or the OUST.

**[*signatures on the next page*]**



**IN WITNESS WHEREOF**, the parties have executed this Agreement the day and year written below.

Agreed and accepted:

**AVON PLACE LLC**

By: _Ahron Rudich_
box SIGN    4KYWQWX3-4WQK3VY5

Name: Ahron Rudich
Title: Owner

Date: February 26, 2025

**AHRON RUDICH**

_Ahron Rudich_
box SIGN    4KYWQWX3-4WQK3VY5

Date: February 26, 2025

**FIA CAPITAL PARTNERS, LLC**

By: _____
box SIGN    15JJ9VVW-1XQ8PRXZ

David S. Goldwasser
President

Date: February 26, 2025

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
April 7, 2025

**BACKENROTH, FRANKEL & KRINSKY, LLP**
*Proposed Counsel for the Debtor*
488 Madison Avenue, 23rd Floor
New York, New York 10022
(212) 593-1100
mfrankel@bfklaw.com

By: /s/ *Mark A. Frankel*
Mark A. Frankel