UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                    Chapter 11

      Avon Place, LLC                          Case no.  25-41368 (JMM)

              Debtor.

--------------------------------------------------------x

## <u>NOTICE OF HEARING ON MOTION FOR RULE 2004 APPLICATION</u>

        PLEASE TAKE NOTICE, that a hearing will be held before the Honorable Jill Mazer-Marino to be conducted on April 30, 2025 at 10:00 a.m., or as soon thereafter as counsel can be heard, at the United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York, 11201, to consider the application of Avon Place, LLC  for an order pursuant to Bankruptcy Rule 2004  authorizing the authorizing the examination of 44 Avon Road Credit LLC, Bankwell Bank, representatives of the "Avon Place Tenant Union", and related entities and individuals and related entities.

        PLEASE TAKE FURTHER NOTICE, that those intending to appear at the hearing must register with eCourt Appearances no later than two days prior to the hearing. The phone number or video link for the hearing will be emailed only to those that register with eCourt Appearances in advance of the hearing. Instructions for registering with eCourt Appearances can be found at https://www.nyeb.uscourts.gov/node/2126. If you do not have internet access or are otherwise unable to register with eCourt Appearances, you may call or email Judge Mazer-Marino's courtroom deputy for instructions at (347) 394-1844 or JMM_Hearings@nyeb.uscourts.gov.

        PLEASE TAKE FURTHER NOTICE, that objections shall be filed with the Clerk of the Bankruptcy Court, and served upon the undersigned to be received at least seven days prior to the hearing date.

Dated: New York, New York
      April 11, 2025

                        BACKENROTH FRANKEL & KRINSKY, LLP
                        Proposed Attorneys for the Debtor

                        By: <u>s/Mark A. Frankel</u>
                              488 Madison Avenue
                              New York, New York  10022
                              (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                                    Chapter 11

      Avon Place, LLC,                                      Case no.  25-41368 (JMM)

                        Debtor.
--------------------------------------------------------x

## <u>APPLICATION FOR RULE 2004 EXAMINATION</u>

        Avon Place, LLC (the "Debtor"), as and for its application for an order pursuant to

Bankruptcy Rule 2004  authorizing the authorizing the examination of 44 Avon Road Credit LLC

(the "Lender"), Bankwell Bank ("Bankwell"), representatives of the "Avon Place Tenant Union"

(the "Tenant Union"), and related entities and individuals, respectfully states as follows:,

respectfully represent as follows:

### <u>BACKGROUND</u>

        1.      On March 21, 2025 (the "Petition Date"), the Debtor filed a voluntary

petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

(the "Bankruptcy Code").

        2.      The Debtor is a Connecticut limited liability company that owns one

hundred and eighty (180) condominium units at Avon Place Condominiums located at 44-46-47-48

Avonwood Road, Avon, CT 06001, representing 96% of the units in the building complex (the

"Property").

3.      The Debtor acquired 162 units in October 2022 for $33,750,000, with the remaining 18 units being purchased from individual sellers after that date for $2,709,500, for a total investment of approximately $36,459,500.

4.      The Property is encumbered by mortgages originally issued by Bankwell Bank ("Bankwell") in September 2022 totaling $28 million. The loans were always in good standing, and in June 2024, Bankwell confirmed that payments were current.

5.      The Property suffered fire damage in one of its buildings. The Debtor received an insurance payment of approximately $400,000, which it endorsed to Bankwell for debt service.

6.      On January 30, 2025, Bankwell Bank executed an Assignment of Mortgages and Other Instruments to Avonwood Credit, which was recorded in the Avon Land Records on February 3, 2025. While the assignment appears to have been properly executed, the timing of this transaction raises serious concerns.

7.      The suspicious sequence of events is telling: (i) the Debtor's property suffers fire damage; (ii) the Debtor receives and endorses an insurance payment of $400,000 to Bankwell; (iii) immediately thereafter, Avonwood Credit acquires the loans; and (iv) without providing any notice to the Debtor of the assignment or any default notice, Avonwood Credit commences a foreclosure action, demanding the appointment of a receiver, payment in full, and a deficiency judgment.

8.      This timing strongly suggests that Avonwood Credit acquired the loans with the specific intent to manufacture a default by misapplying the insurance payment and immediately pursuing foreclosure, consistent with its business model.

2

9.      The Debtor's investigation into the background of Kyle O'Hehir, Avonwood Credit's principal, revealed that Mr. O'Hehir is a real estate investor who has built a business model focused on acquiring distressed loans at a discount and aggressively enforcing technical defaults to maximize returns.

10.     In a publicly available podcast interview, Mr. O'Hehir described his business approach as capitalizing on "technical defaults" and the "reluctance of traditional banks to take a hard line with borrowers."

11.     In other words, by rejecting lender standards of good faith and fair dealing, Mr. Ohehir explains that "there's an opportunity in the market for a bad guy."

12.     This evidence provides critical context for understanding Avonwood Credit's actions in this case, particularly its apparent misapplication of the insurance payment to manufacture a default immediately after acquiring the loans.

13.     On April 3, 2025, the Debtor became aware of a communication purporting to be from the "Avon Place Tenant Union" but which appears to have been sponsored or facilitated by Avonwood Credit. This communication invited the Debtor's tenants to attend a meeting at a local restaurant called "The Elephant Trail" on April 4, 2025.

14.     The communication contained several concerning representations, including:

(a) Statements representing that Avonwood Credit is the "new owner" of the property, when in fact ownership of the property remains with the Debtor during the pendency of these bankruptcy proceedings;

(b) Statements claiming that the meeting was organized so the "new owners" could "share what we can do as renters to help transition ownership over to them so that we never have to deal with [the Debtor] again";

3

(c) Disparaging statements calling the Debtor a "slumlord" and claiming that the Debtor is "not forthcoming about the truth";

(d) Offering "free dinner and drinks" to tenants who attend the meeting, which appears to be an inducement to participate in activities potentially adverse to the Debtor's interests; and

(e) An explicit statement of intention to "push [the Debtor] out for good."

15.     This post-petition conduct appears to constitute an attempt to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

## **APPLICATION**

16.     By this Motion, the Debtor seeks the entry of an order authorizing the examination of (i) the Lender and its related parties, (ii) Bankwell, and (iii) representatives of the Tenant Union pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure regarding the following areas: a. The Lender's communications with and solicitation of the Debtor's tenants; b. The Lender's organization of the tenant meeting; c. Statements made during the tenant meeting; d. The Lender's intentions with respect to the Debtor's property; e. The circumstances surrounding the Lender's acquisition of the loans from Bankwell; f. The Lender's application of the insurance proceeds and its decision to declare a default; g. The Lender's valuation of the Property and the basis for any assertions regarding property value; h. The Lender's business model and practices regarding the acquisition of distressed or potentially distressed loans; i. The Lender's communications with Bankwell prior to and during the loan acquisition; j. The Lender's internal analyses and decision-making processes regarding the initiation of foreclosure proceedings; k. Bankwell's application of the insurance proceeds prior to the loan assignment; l. Bankwell's communications with the Lender regarding the Debtor's loans prior to and during the loan assignment; m. Bankwell's understanding of the Debtor's payment status prior to the loan

4

assignment; n. The formation, organization, and operations of the Tenant Union; o. Communications between the Tenant Union and the Lender; and p. Any other matters that may affect the administration of the Debtor's estate.

17.     Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).

18.     The scope of a Rule 2004 examination is extremely broad, permitting the examination of any matter which relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b).  *See In re CENA's Fine Furniture Inc.*, 109 B.R. 575, 577 n.2 (E.D.N.Y  1990) (the scope of a Rule 2004 examination is unfettered and broad. . . .examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds)  (internal citations omitted); *In re Bakalis,* 199 B.R. 443, 447 (Bankr. E.D.N.Y 1996) (noting that Rule 2004 Examinations have been likened to "fishing expeditions into  general matters and issues regarding the administration of the bankruptcy estates").

19.     The examination requested by the Debtor falls squarely within the scope of Rule 2004, as it relates to potential interference with property of the Debtor's estate, actions that may violate the automatic stay, and the validity of the Lender's claimed default – all matters central to the administration of the Debtor's estate.

20.     With respect to Bankwell, the examination is necessary to determine the circumstances surrounding the application of the insurance proceeds and the assignment of the loans to the Lender. Bankwell's testimony and documents are critical to understanding whether the default was manufactured through improper application of the insurance proceeds and whether

there was coordination between Bankwell and the Lender to create a technical default where none previously existed.

21.     With respect to the Tenant Union, the examination is necessary to determine whether this organization is a legitimate tenant association or was created or co-opted by the Lender as a vehicle to interfere with the Debtor's tenant relationships and property interests in violation of the automatic stay.

22.     The recent U.S. Court of Appeals for the Second Circuit decision in *In re Windstream Holdings, Inc.*, 105 F.4th 488 (2d Cir. 2024), addressed a somewhat similar situation involving potential interference with customer contracts during bankruptcy. However, the facts in this case appear to be distinguishable in several important respects that warrant thorough investigation through Rule 2004 examination.

23.     Unlike the mere advertising campaign at issue in *Windstream*, the Lender in this case appears to have organized an in-person meeting with the Debtor's tenants, made explicit representations about future ownership transition, and actively encouraged tenants to assist in "pushing out" the Debtor.

24.     To properly evaluate whether the Lender's actions constitute a violation of the automatic stay under the "no fair ground of doubt" standard established in *Taggart v. Lorenzen*, 587 U.S. 554 (2019), and applied to automatic stay violations in *Windstream*, discovery is essential to develop a complete factual record.

25.     Additionally, discovery regarding the circumstances of the loan acquisition, application of insurance proceeds, and the basis for declaring a default is critical to the Debtor's

ability to effectively challenge the Lender's motion for relief from stay and to develop its plan of reorganization.

26.    The Debtor requires this information to determine whether to seek sanctions for stay violations, file an adversary proceeding, challenge the validity of the claimed default, or take other appropriate action to protect its property interests and the integrity of the bankruptcy process.No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein, and that the Court grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 11, 2025

**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for the Debtor**

By:    s/Mark Frankel
       488 Madison Avenue
       New York, New York 10022
       (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re                                           Chapter 11

\

        Avon Place, LLC,                        Case no.  25-41368 (JMM)

                          Debtor.

-----------------------------------------------------------x

## <u>ORDER GRANTING RULE 2004 APPLICATION</u>

Upon the motion (the "Motion") of Avon Place, LLC (the "Debtor") for a Rule 2004 Examination of 44 Avon Road Credit LLC, Bankwell Bank, representatives of the "Avon Place Tenant Union", and related entities and individuals and related entities, and the Court, having considered the Motion, any responses thereto, and the arguments of counsel, and being otherwise duly advised in the premises, finds that good cause exists for granting the relief requested in the Motion, it is:

**ORDERED** as follows:

1.        The Motion is **GRANTED**.

2.        Pursuant to Bankruptcy Rule 2004, the Debtor is authorized to conduct an examination of 44 Avon Road Credit LLC, and its officers, directors, employees, agents, and representatives (collectively, the "Lender").

3.        The Lender shall produce all documents responsive to the Document Requests attached hereto as Exhibit A no later than two weeks from the date of this order.

4.      The production shall be made to the offices of Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, Floor 23, New York, New York, 10022 or to such other location as the parties may agree.

5.      Documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in the Document Requests.

6.      The Lender shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf about information known or reasonably available to the organization.

7.      The Lender's designated representative(s) shall appear for deposition at the offices of Backenroth Frankel & Krinsky, LLP, 488 Madison Avenue, Floor 23, New York, New York, 10022, no later than four weeks from the date of this order at such date, time, and location as the parties may agree.

8.      The deposition(s) shall be recorded by stenographic means and may also be video recorded at the Debtor's option and expense.

9.      The examination(s) may continue from day to day until completed, but shall not exceed 7 hours per deponent without further order of this Court.

10.      The Debtor is authorized to issue subpoenas to compel the production of documents and attendance at examinations as necessary to effectuate the discovery authorized by this Order.

11.    This Court shall retain jurisdiction to resolve any disputes arising from or relating to this Order.

## EXHIBIT A - DOCUMENT REQUESTS TO THE LENDER

Pursuant to Federal Rule of Bankruptcy Procedure 2004, the Debtor requests that 44 Avon Road Credit LLC and its officers, directors, employees, agents, and representatives produce the following documents and electronically stored information:

**(a)    TENANT-RELATED COMMUNICATIONS AND ACTIVITIES**

12.    All communications, emails, text messages, letters, memoranda, notes, social media messages, or other documents concerning, relating to, or referencing Avon Place LLC, Empire Realty, or the Avon Place apartment complex from January 1, 2024, to the present.

13.    All documents concerning, relating to, or referencing the April 4, 2025 meeting at The Elephant Trail restaurant with Avon Place tenants, including but not limited to: a. All planning documents, agendas, presentations, handouts, or other materials prepared for or used during the meeting; b. All internal communications regarding the organization, purpose, or content of the meeting; c. All communications with tenants or the "Avon Place Tenant Union" regarding the meeting; d. All records of attendees, sign-in sheets, photographs, audio recordings, or video recordings from the meeting; e. All notes, minutes, or summaries of the meeting, including any follow-up communications with attendees; f. All documents relating to expenses incurred for the meeting, including receipts, invoices, payment records, contracts, or other financial documents.

14.    All communications with tenants of Avon Place from January 1, 2025, to the present, including but not limited to: a. Emails, letters, text messages, social media messages,

or other written communications; b. Records of phone calls or in-person meetings; c. Flyers, advertisements, or other materials distributed to tenants.

15.     All documents concerning, relating to, or referencing the "Avon Place Tenant Union," including but not limited to: a. Communications with any representatives or members of the tenant union; b. Documents relating to the formation, organization, or operation of the tenant union; c. Financial records reflecting any payments, contributions, or other support provided to the tenant union; d. Documents reflecting any relationship, coordination, or affiliation between the Lender and the tenant union.

16.     All documents concerning, relating to, or referencing any representations made to tenants about: a. The ownership status of the Avon Place property; b. The management or operation of the Avon Place property; c. The effect of Avon Place LLC's bankruptcy on tenant leases or rights; d. Any anticipated or planned changes to the property, lease terms, or management.

17.     All documents concerning, relating to, or referencing any post-meeting communications or planned follow-up actions with tenants, including but not limited to: a. Communications with meeting attendees; b. Internal communications regarding the results or outcomes of the meeting; c. Plans or strategies for future tenant communications or meetings.

**(b)      LOAN ACQUISITION AND DEFAULT DETERMINATION**

18.     All documents concerning, relating to, or referencing the acquisition of the Avon Place LLC loans from Bankwell Bank, including but not limited to: a. All communications with Bankwell Bank regarding the loans from January 1, 2024, to the present; b. All internal

2

communications regarding the decision to acquire the loans; c. All due diligence materials received or prepared in connection with the loan acquisition; d. All valuation analyses of the loans and/or the underlying collateral; e. The purchase agreement and all related documents for the loan acquisition; f. All documents reflecting the price paid for the loans and the terms of payment; g. All documents reflecting the underwriting criteria or investment parameters used to evaluate the loan acquisition.

19.     All documents concerning, relating to, or referencing the insurance payment of approximately $400,000 received by Bankwell Bank from the Debtor, including but not limited to: a. All communications with Bankwell Bank regarding the insurance payment; b. All documents reflecting how the insurance payment was applied; c. All internal communications regarding the decision to apply the insurance payment to principal rather than to debt service; d. All policies, procedures, or guidelines regarding the application of insurance proceeds; e. All communications with the Debtor, if any, regarding the application of the insurance payment.

20.     All documents concerning, relating to, or referencing the determination that the Debtor was in default under the loan documents, including but not limited to: a. All internal analyses, memoranda, or communications regarding the existence of a default; b. All communications with Bankwell Bank regarding any actual or potential default by the Debtor; c. All documents reflecting the specific provisions of the loan documents that the Debtor allegedly violated; d. All payment histories or loan statements showing the Debtor's payment history; e. All notices of default or other communications sent to the Debtor regarding the alleged default.

21.     All documents concerning, relating to, or referencing the decision to commence foreclosure proceedings against the Debtor, including but not limited to: a. All internal

3

analyses, memoranda, or communications regarding the decision to commence foreclosure; b. All

foreclosure analyses, including projections of recovery through foreclosure; c. All

communications with counsel regarding the foreclosure strategy; d. All documents reflecting the

anticipated timeline for the foreclosure process.

### (c)      PROPERTY VALUATION AND BUSINESS MODEL

22.      All documents concerning, relating to, or referencing the valuation of the

Avon Place property, including but not limited to: a. All appraisals, broker's opinions of value, or

other valuation analyses; b. All market analyses of the Avon, Connecticut real estate market; c.

All documents reflecting the Lender's assessment of the impact of the fire damage on the property

value; d. All communications with third parties regarding the value of the property; e. All internal

communications regarding property value.

23.      All documents concerning, relating to, or referencing the Lender's

business model or strategy for acquiring distressed or potentially distressed loans, including but

not limited to: a. All business plans, marketing materials, investor presentations, or similar

documents that describe the Lender's business model; b. All internal documents or

communications that discuss strategies for creating or capitalizing on loan defaults; c. All

templates, forms, or standard operating procedures for evaluating potential loan acquisitions; d.

All documents reflecting the criteria used to identify or target loans for acquisition; e. All training

materials, presentations, or guidance provided to employees regarding loan acquisition strategies.

24.      All documents concerning, relating to, or referencing any public

statements, interviews, podcasts, or other media appearances by Kyle O'Hehir or other

representatives of the Lender regarding business strategies, loan acquisitions, or foreclosure practices.

**(d)    BANKRUPTCY-RELATED DOCUMENTS**

25.    All documents concerning, relating to, or referencing Avon Place LLC's bankruptcy filing, including but not limited to: a. Internal communications, memoranda, notes, or other documents discussing the bankruptcy; b. Communications with third parties regarding the bankruptcy; c. Legal memoranda, opinions, or advice received regarding the automatic stay and its applicability to actions directed at the Debtor's tenants or property.

26.    All documents concerning, relating to, or referencing plans, discussions, or strategies related to acquiring ownership or control of the Avon Place property, including but not limited to: a. Internal communications, memoranda, or business plans; b. Communications with third parties regarding potential acquisition; c. Financial analyses, projections, or valuations; d. Documents relating to financing for potential acquisition.

27.    All documents concerning, relating to, or referencing the Lender's motion for relief from automatic stay, including but not limited to: a. All internal communications, analyses, or memoranda regarding the decision to seek relief from stay; b. All documents supporting the Lender's assertions regarding property value, equity, and adequate protection; c. All communications with counsel regarding strategy for the stay relief motion.

**(e)**    **ORGANIZATIONAL INFORMATION**

28.    Documents sufficient to identify all officers, directors, employees, agents, or representatives of the Lender who: a. Were involved in planning or organizing the April 4, 2025 tenant meeting; b. Attended or participated in the tenant meeting; c. Communicated with tenants or the tenant union before, during, or after the meeting; d. Were involved in the decision to acquire the loans from Bankwell Bank; e. Were involved in the decision to apply the insurance proceeds to principal; f. Were involved in the decision to declare a default and commence foreclosure proceedings.

29.    Documents sufficient to show the corporate structure of 44 Avon Road Credit LLC and its relationship to any parent companies, subsidiaries, or affiliated entities involved in: a. Communications with Avon Place tenants or the tenant meeting; b. The acquisition of the loans from Bankwell Bank; c. The decision to apply the insurance proceeds to principal; d. The decision to declare a default and commence foreclosure proceedings.

30.    All documents concerning, relating to, or referencing any legal advice sought or received regarding: a. Communications with the Debtor's tenants during the bankruptcy or the propriety of organizing the tenant meeting; b. The application of the insurance proceeds to principal; c. The determination that the Debtor was in default; d. The applicability of the automatic stay to the Lender's actions.

31.    All documents not otherwise requested herein concerning, relating to, or referencing the Debtor, the Debtor's loans, the Property, the Debtor's tenants, tenant leases, or tenant relationships.

6

## EXHIBIT B - DOCUMENT REQUESTS TO BANKWELL BANK

32.     Pursuant to Federal Rule of Bankruptcy Procedure 2004, the Debtor requests that Bankwell Bank and its officers, directors, employees, agents, and representatives produce the following documents and electronically stored information:

33.     All loan documents relating to the Debtor's loans, including but not limited to loan agreements, promissory notes, mortgages, security agreements, and amendments.

34.     All payment records for the Debtor's loans from January 1, 2022, to the present, including but not limited to: a. Payment histories showing all payments received and how they were applied; b. Internal account statements or ledgers; c. Any notices sent to the Debtor regarding payments or payment status.

35.     All documents concerning, relating to, or referencing the insurance payment of approximately $400,000 received from the Debtor, including but not limited to: a. All communications with the Debtor regarding the insurance payment; b. All internal communications regarding how the insurance payment was or should be applied; c. All documents reflecting how the insurance payment was actually applied; d. All policies, procedures, or guidelines regarding the application of insurance proceeds.

36.     All documents concerning, relating to, or referencing any determination of default by the Debtor under the loan documents prior to the assignment to the Lender, including but not limited to: a. All internal analyses, memoranda, or communications regarding any actual or potential default; b. All notices of default or other communications sent to the Debtor.

37.    All documents concerning, relating to, or referencing the assignment of the Debtor's loans to the Lender, including but not limited to: a. All communications with the Lender regarding the loans from January 1, 2024, to the present; b. All internal communications regarding the decision to assign the loans; c. All marketing materials or offering memoranda prepared in connection with the loan sale; d. The assignment agreement and all related documents; e. All documents reflecting the price paid for the loans and the terms of payment; f. All communications regarding the status of the Debtor's loans at the time of assignment.

38.    All documents concerning, relating to, or referencing any communications with the Lender about the Debtor's payment history, the application of the insurance proceeds, or any actual or potential default by the Debtor.

39.    All documents concerning, relating to, or referencing any communications with the Debtor from January 1, 2024, to the present.

40.    All policies, procedures, or guidelines in effect from January 1, 2022, to the present regarding the handling of insurance proceeds, the determination of loan defaults, and the assignment or sale of loans.

## EXHIBIT C - DOCUMENT REQUESTS TO THE AVON PLACE TENANT UNION

41.     Pursuant to Federal Rule of Bankruptcy Procedure 2004, the Debtor requests that representatives of the "Avon Place Tenant Union" produce the following documents and electronically stored information:

42.     All documents concerning, relating to, or referencing the formation, organization, and structure of the Avon Place Tenant Union, including but not limited to: a. Organizational documents, bylaws, charter, or similar governing documents; b. Meeting minutes, resolutions, or other records of official actions; c. Membership lists or rosters; d. Documents identifying officers, directors, or other leadership positions.

43.     All documents concerning, relating to, or referencing any communications with the Lender or its representatives from January 1, 2024, to the present, including but not limited to: a. Emails, letters, text messages, social media messages, or other written communications; b. Records of phone calls or in-person meetings; c. Any agreements, understandings, or arrangements with the Lender.

44.     All documents concerning, relating to, or referencing the April 4, 2025 meeting at The Elephant Trail restaurant, including but not limited to: a. All planning documents, agendas, or materials prepared for or used during the meeting; b. All communications regarding the organization, purpose, or content of the meeting; c. All communications with tenants regarding the meeting; d. All records of attendees, sign-in sheets, photographs, audio recordings, or video recordings from the meeting; e. All notes, minutes, or summaries of the meeting; f. All

documents relating to expenses incurred for the meeting, including who paid for the meeting expenses.

45.     All communications with tenants of Avon Place from January 1, 2025, to the present, including but not limited to: a. Emails, letters, text messages, social media messages, or other written communications; b. Flyers, advertisements, or other materials distributed to tenants.

46.     All documents concerning, relating to, or referencing any representations made to tenants about: a. The ownership status of the Avon Place property; b. The management or operation of the Avon Place property; c. The Debtor's bankruptcy filing; d. The Lender's relationship to the property.

47.     All documents concerning, relating to, or referencing any financial support, contributions, or other assistance received from any source, including but not limited to: a. Bank statements, financial records, or accounting documents; b. Records of donations or contributions received; c. Records of expenses paid by third parties on behalf of the Tenant Union.

## <u>DEFINITIONS</u>

1. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, including but not limited to verbal, written, electronic, by document, by email, by text message, by instant message, by social media message, by telephone, or by facsimile.

2. "Document" is used in its broadest sense and means any written, typed, printed, electronic, or graphic matter of any kind, however produced or reproduced, and includes, but is not limited to, any writing, drawing, graph, chart, photograph, tape, disk, electronic data or other data compilation, and other data compilations from which information can be obtained. The term "document" includes electronically stored information ("ESI").

3. "Relating to" means concerning, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed.

4. "Avon Place LLC" and "Debtor" refer to the debtor in this bankruptcy case, as well as its officers, directors, employees, agents, and representatives.

5. "Empire Realty" refers to the trade name or business name used by Avon Place LLC, as well as any affiliated entities, subsidiaries, or parent companies.

6. "44 Avon Road Credit LLC" and "Lender" refer to the lender that has purchased or otherwise acquired a loan secured by the Debtor's property, as well as its officers, directors, employees, agents, and representatives.

7. "Avon Place Tenant Union" refers to the organization or group described as such in communications with tenants regarding the April 4, 2025 meeting.

8. "Tenant meeting" refers to the meeting held or scheduled to be held at The Elephant Trail restaurant on April 4, 2025, involving tenants of the Avon Place apartment complex.

9. "Bankwell" or "Bankwell Bank" refers to Bankwell Bank, the original lender and assignor of the loans to the Lender, as well as its officers, directors, employees, agents, and representatives.

10. "Insurance payment" or "insurance proceeds" refers to the approximately $400,000 payment made by the Debtor to Bankwell from insurance proceeds received for fire damage to the Property

### **INSTRUCTIONS:**

1. These document requests seek all responsive documents in your possession, custody, or control, including documents in the possession, custody, or control of your attorneys, accountants, agents, representatives, and any other person acting on your behalf.

2. If any document request cannot be complied with in full, it shall be complied with to the extent possible, with an explanation as to why full compliance is not possible.

3. In the event that any document called for by these requests is withheld on the basis of any claim of privilege, a privilege log shall be provided that identifies each such document by: a. Author(s); b. Recipient(s), including copy recipients; c. Date; d. Subject matter; e. Number of pages; f. The specific privilege or protection being asserted; and g.

2

A brief description of the document sufficient to allow the Debtor to assess the claim of privilege or protection.

4.  Unless otherwise specified, the time period covered by these requests is from January 1, 2024, to the present.

5.  These document requests are continuing in nature. If, after responding to these requests, you obtain or become aware of additional responsive documents, you are required to produce such additional documents.