UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                            Chapter 11

    Avon Place, LLC                                    Case no.  25-41368 (JMM)

                        Debtor.
----------------------------------------------------------x

## OBJECTION TO MOTION TO LIFT THE AUTOMATIC STAY

Avon Place LLC (the "Debtor"), by its attorneys, Backenroth Frankel & Krinsky, LLP, respectfully submits this objection to 44 Avonwood Road Credit LLC's ("Avonwood Credit") motion for relief from the automatic stay (the "Motion"), represents as follows:

## PRELIMINARY STATEMENT

1. First, contrary to Avonwood Credit's assertions, there is substantial equity in the Property that protects Avonwood Credit's interest.

2. Second, the Debtor disputes that it defaulted under the loan documents. Instead, the evidence indicates that Avonwood Credit devised a scheme to place the Debtor in technical default by misapplying insurance proceeds to principal instead of debt service, and then commenced foreclosure based on purported failure to pay debt service, without proper notice of default or opportunity to cure.

3. Third, Avonwood Credit has engaged in post-petition conduct that appears designed to interfere with the Debtor's tenant relationships and property interests, raising serious concerns about potential violations of the automatic stay. Specifically, Avonwood Credit appears to have organized a meeting with the Debtor's tenants in the course of which it appears to have misrepresented itself as the "new owner" of the property and explicitly stated its intention to "push [the Debtor] out for good."

4. The Debtor has filed a Plan of Reorganization that proposes to either cure any default that may exist or pay Avonwood Credit in full, so any disagreement with the Debtor over the existence of a default does not justify lifting the automatic stay. The Motion is a transparent attempt to circumvent the Chapter 11 process just weeks after the case was filed, before the Debtor has had a fair opportunity to reorganize. The stay should remain in place to allow the Debtor to pursue its reorganization efforts in accordance with the Bankruptcy Code.

## BACKGROUND

**(a)    The Property and Loan History**

5. On March 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

6. The Debtor is a Connecticut limited liability company that owns one hundred and eighty (180) condominium units at Avon Place Condominiums located at 44-46-47-48 Avonwood Road, Avon, CT 06001, representing 96% of the units in the building complex (the "Property").

7. The Debtor acquired 162 units in October 2022 for $33,750,000, with the remaining 18 units being purchased from individual sellers after that date for $2,709,500, for a total investment of approximately $36,459,500.

8. The Property is encumbered by mortgages originally issued by Bankwell Bank ("Bankwell") in September 2022 totaling $28 million. The loans were always in good standing, and in June 2024, Bankwell confirmed that payments were current.

9. The Property suffered fire damage in one of its buildings. The Debtor received an insurance payment of approximately $400,000, which it endorsed to Bankwell for debt service.

**(b)    The Assignment and Foreclosure Action**

10. On January 30, 2025, Bankwell Bank executed an Assignment of Mortgages and Other Instruments to Avonwood Credit, which was recorded in the Avon Land Records on February 3, 2025. While the assignment appears to have been properly executed, the timing of this transaction raises serious concerns.

11. The suspicious sequence of events is telling: (i) the Debtor's property suffers fire damage; (ii) the Debtor receives and endorses an insurance payment of over $400,000 to Bankwell; (iii) immediately thereafter, Avonwood Credit acquires the loans; and (iv) without providing any notice to the Debtor of the assignment or any default notice, Avonwood Credit commences a foreclosure action, demanding the appointment of a receiver, payment in full, and a deficiency judgment.

12. This timing strongly suggests that Avonwood Credit acquired the loans with the specific intent to manufacture a default by misapplying the insurance payment and immediately pursuing foreclosure.

13. This is consistent with Avanwood Credit's business mode.  The Debtor's principal is Kyle O'Hehir.  In a podcast interview, Mr. O'Hehir described his business approach as capitalizing on "technical defaults" and the "reluctance of traditional banks to take a hard line with borrowers."  In other words, by rejecting industry standards of good faith and fair dealing, Mr.

O'Hehir boasted that "there's an opportunity in the market for a bad guy."

https://www.youtube.com/watch?v=60UNSKnGOeM

14. This evidence provides context for understanding Avonwood Credit's actions in this case, both pre-petition and post-petition.

**(c)    Post-Petition Conduct**

15. On April 3, 2025, the Debtor became aware of a communication purporting to be from the "Avon Place Tenant Union" but which appears to have been sponsored or facilitated by Avonwood Credit. This communication, a copy of which is annexed hereto as Exhibit A, invited the Debtor's tenants to attend a meeting at a local restaurant called "The Elephant Trail" on April 4, 2025.

16. The communication contained several concerning representations, including: (a) Statements representing that Avonwood Credit is the "new owner" of the property, when in fact ownership of the property remains with the Debtor during the pendency of these bankruptcy proceedings; (b) Statements claiming that the meeting was organized so the "new owners" could "share what we can do as renters to help transition ownership over to them so that we never have to deal with [the Debtor] again"; (c) Disparaging statements calling the Debtor a "slumlord" and claiming that the Debtor is "not forthcoming about the truth"; (d) Offering "free dinner and drinks" to tenants who attend the meeting, which appears to be an inducement to participate in activities potentially adverse to the Debtor's interests; and (e) An explicit statement of intention to "push [the Debtor] out for good."

17. This post-petition conduct appears to constitute an attempt to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

18. The Debtor has filed an application for examination under Rule 2004 to investigate these potential stay violations and will seek appropriate sanctions if warranted.

**(d)    The Debtor's Plan of Reorganization**

19. The Debtor has filed a Plan of Reorganization that proposes to cure any alleged defaults and either reinstate the loans or pay Avonwood Credit in full through a refinancing or sale of the Property.

## ARGUMENT

**(a) AVONWOOD CREDIT'S INTEREST IS ADEQUATELY PROTECTED BY SUBSTANTIAL EQUITY IN THE PROPERTY**

20. Avonwood Credit's request for relief under section 362(d)(1) based on lack of adequate protection should be denied because there is substantial equity in the Property that provides more than adequate protection for Avonwood Credit's interest.

21. The equity cushion in the Property constitutes adequate protection. See *In re 300 Washington Street LLC*, 528 B.R. 534, 552 (Bankr. E.D.N.Y. 2015) ("For a secured creditor, its interest in property may be adequately protected by the existence of a sufficient equity cushion."); see also *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 429 (Bankr. S.D.N.Y. 2010) (holding that an equity cushion of 20% or more constitutes adequate protection).

22. Here, the Debtor estimates the current value of the Property to be approximately $38,600,000, with total secured debt of approximately $31,685,188 (including Avonwood Credit's claim of $28,100,785, Altbanq Lending LLC's claim of $3,000,000, and real estate tax liens of $584,403). This results in an equity cushion of approximately $6,914,812, or over

17% of the Property's value, which is more than sufficient to adequately protect Avonwood Credit's interest.

23. Avonwood Credit's assertion that the Property value is less than the outstanding debt is unsupported by any evidence, such as an appraisal. In contrast, the Debtor's valuation is supported by the recent purchase prices of the units and the Debtor's knowledge of the current market.

24. Although there was fire damage to a portion of the Property, insurance proceeds have been received and the damage is being repaired. The Debtor maintains the value of the Property through ongoing management and maintenance.

25. The Debtor has already filed a Plan of Reorganization that proposes to either cure any default and reinstate the loans or pay Avonwood Credit in full through a refinancing or sale of the Property. Given the substantial equity in the Property, Avonwood Credit's secured position is fully protected.

26. Furthermore, the Debtor intends to pay interest payments at the non-default contract rate during the pendency of this case, providing additional adequate protection to Avonwood Credit beyond the substantial equity cushion. These ongoing payments ensure that Avonwood Credit's position is not deteriorating as the case progresses.

**(b)   THE DEBTOR HAS EQUITY IN THE PROPERTY AND THE PROPERTY IS NECESSARY FOR AN EFFECTIVE REORGANIZATION**

27.   Avonwood Credit's request for relief under section 362(d)(2) should also be denied because the Debtor has equity in the Property and the Property is necessary for an effective reorganization.

28.   As demonstrated above, the Debtor has significant equity in the Property, with a conservative estimate of approximately $6.9 million in equity value after accounting for all secured claims.

29.   Contrary to Avonwood Credit's unsupported assertion, neither "unfavorable general market conditions" nor the fire damage has significantly impaired the Property's value. The fire-damaged units are being repaired and the Debtor maintains casualty insurance on the Property.

30.   The Property is also necessary for an effective reorganization that is in prospect. The Debtor has already filed a Plan of Reorganization that proposes to pay all creditors in full, including Avonwood Credit. The Plan is feasible because it will be funded through either (a) the Debtor's continued operation of the Property and contributions from equity holders, or (b) a refinancing or sale of the Property.

31.   Courts have held that Property is "necessary for an effective reorganization" if it plays a central role in the debtor's reorganization strategy. See *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 429-30 (Bankr. S.D.N.Y. 2010). Here, the Property is the Debtor's primary asset and is central to the Debtor's reorganization efforts.

32.   Avonwood Credit's assertion that the Debtor will be unable to confirm a Plan without Avonwood Credit's consent due to its deficiency claim is misplaced for two reasons.

First, there will be no deficiency claim because the Debtor disputes the existence of any default and the value of the Property exceeds the amount of Avonwood Credit's claim. Second, even if Avonwood Credit votes to reject the Plan, the Debtor may still confirm the Plan through the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

### (c) PRE-PETITION, AVONWOOD CREDIT MANUFACTURED A DEFAULT THROUGH IMPROPER APPLICATION OF INSURANCE PROCEEDS, AND POST-PETITION, IT IS TYRING TO SUBVERT THE DEBTOR'S CONTRACTUAL RELATIONSHIPS WITH TENANTS

33. The Debtor disputes that it defaulted under the loan documents. The evidence indicates that Avonwood Credit manufactured a default by improperly applying an insurance payment to principal instead of ongoing debt service and then deemed there to be a default for the now unpaid months, without providing appropriate notice or opportunity to cure.

34. Avonwood Credit's improper application of insurance proceeds likely constitutes a breach of the implied covenant of good faith and fair dealing under Connecticut law. Connecticut recognizes that every contract includes an implied covenant of good faith and fair dealing, which means that neither party may do anything that will injure the right of the other to receive the benefits of the agreement. *See Warner v. Konover*, 210 Conn. 150 (1989).

35. The mortgage deed and security agreement between the Debtor and Bankwell Bank specifically addresses insurance proceeds in Section 1.4(a), which states that the lender is authorized "to apply the proceeds, at Mortgagee's sole option, as follows: (i) as a credit upon the Indebtedness secured hereby, whether or not the same shall be then due and payable, or (ii) to repairing or restoring the Mortgaged Property or any part thereof."

36. This provision contemplates that insurance proceeds may be applied either as a credit on the indebtedness or for repairs. But the Debtor submits that applying the proceeds to principal instead of debt service to create a default where none existed previously violates the implied covenant of good faith and fair dealing. This particularly so where, as here, the Debtor had a good payment history and paid for repairs out of pocket.

37. In addition to such pre-petition misconduct, there is apparent post-petition misconduct.

38. Post-petition, Avonwood Credit's appears to participated in organizing a meeting with the Debtor's tenants, apparently misrepresenting itself as the soon to be "new owner" of the property, and explicitly stating its intention to "push [the Debtor] out for good."

39. Moreover, this conduct may constitute a violation of the automatic stay under 11 U.S.C. § 362(a)(3), which prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." For example, in *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987), the Second Circuit held that actions that interfere with a debtor's tenant relationship can constitute a violation of the automatic stay. And a number of courts have noted in the loan reinstatement context that Debtors in bankruptcy are entitled to some protection from lender misconduct. *See In re 53 Stanhope LLC*, 625 B.R. 573 (Bankr. S.D.N.Y. 2021); *In re 1111 Myrtle Ave. Grp.*, LLC, 598 B.R. 729 (Bankr. S.D.N.Y. 2019); *In re Gen. Growth Properties, Inc.*, 451 B.R. 323 (Bankr. S.D.N.Y. 2011).

40. By the same token, the Court should not reward Avonwood Credit's conduct by granting Avonwood Credit relief from the automatic stay or default interest.

41. Thus, the Debtor's filed Plan of Reorganization and Disclosure Statement proposes to pay all creditors in full, including Avonwood Credit at the non-default contract rate of interest. The Plan thwarts Avaonwood's ambition to either take ownership, or as a consolation prize, to collect 24% default interest. Avonwood Credit's rush to obtain relief from the stay before the Plan can be considered demonstrates its desire to circumvent the Chapter 11 process.

42. In short, granting relief from the stay would undermine the Debtor's reorganization efforts, and the legitimate interests of all creditors to be paid in full.

## CONLCUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an Order (i) denying Avonwood Credit's Motion for relief from the automatic stay; (ii) directing Avonwood Credit to cease all interference with the Debtor's tenant relationships and property interests; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 21, 2025

          BACKENROTH FRANKEL & KRINSKY, LLP
          Attorneys for the Debtor

          By: s/Mark Frankel
             488 Madison Avenue
             New York, New York 10022
             (212) 593-1100

**EXHIBIT A**

From: **Avon Place Tenant Union** <avonplacetenantunion@gmail.com>
Date: Tue, Apr 1, 2025, 3:39 PM
Subject: Important Avon Place Tenant Meeting: The Elephant Trail 7pm Fri. Free food!
To:

Hi neighbors,

You have probably received a letter in the mail about Avon Place filing bankruptcy and a follow up email from Avon Place about their legal dispute.

As we know, Empire Realty is not very forthcoming about the truth and/or helping their residents in any way. They have **officially filed for Bankruptcy as of March 21.** Per usual, their communication is untruthful and this does affect the renter in many ways despite them saying it does not.

This FRIDAY, March 4th at 7pm we will be meeting at the Elephant Trail restaurant (right down the street) to discuss what this means for the renter and how we can push Empire Realty out for good. **We have rented out the private room. Free dinner and drinks!**

This meeting will be VERY IMPORTANT to the future of Avon Place. The new owners (the people who bought the loan for Avon Place and who are trying to push Empire Realty out) will be at the dinner. **They have paid for the room and dinner for all of us!!!** They would like to share what we can do as renters to help transition ownership over to them so that we never have to deal with Empire Realty again. I have met with these new owners and they are good people... no more slumlords!

If you are able to make the meeting this Friday, please let me know. We need as many people as we can to show up!

SHARE THIS WITH ANY RESIDENTS OF AVON PLACE. You do not need to be a member of the tenant union to join in the meeting!

Thank you,

Avon Place Tenant Union