Steven J. Mandelsberg, Esq.
Joseph Orbach, Esq.
**THOMPSON COBURN LLP**
488 Madison Avenue, Suite 1400
New York, New York 10022
Telephone:      (212) 478-7200
E-mail:    smandelsberg@thompsoncoburn.com
            jorbach@thompsoncoburn.com

*Attorneys for 44 Avonwood Road Credit LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X

In re

AVON PLACE LLC

                    Debtor.
------------------------------------------------------- X

Chapter 11

Case No. 25-41368 (JMM)

### EMERGENCY MOTION OF SECURED CREDITOR 44 AVONWOOD ROAD CREDIT LLC TO CONVERT THIS CASE TO A CHAPTER 7 PROCEEDING

**TO:    THE HONORABLE JIL MAZER-MARINO,
         UNITED STATES BANKRUPTCY JUDGE:**

44 Avonwood Road Credit LLC ("Avonwood Credit") by its attorneys, Thompson Coburn LLP, respectfully submits this motion (the "Motion") pursuant to sections 105(a) and 1112(b) of Title 11 of the United States Code ("Bankruptcy Code") and Rules 1017(f) and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), to convert the Debtor's case from one under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; and to grant such other and further relief as the Court deems just and proper and, in support thereof, respectfully states:

### PRELIMINARY STATEMENT

1.    Despite numerous Debtor assurances, Avonwood Credit has not received the adequate protection required by the Court's Cash Collateral Order. Until proven otherwise,

Avonwood Credit is concerned that the Debtor's principal through his non-debtor management company continues to divert estate assets to the detriment of Avonwood Credit and all other creditors of the estate. After consulting with the Debtor's professionals and repeated requests and inquiries, it does not appear that the Debtor will be able to produce **any** documentation that can verify cash receipts for the month of April (and likely May). Not only is this a violation of the Cash Collateral Order, this conduct calls the very integrity of the Chapter 11 process into question. If a Debtor cannot satisfy the negotiated protections of a Cash Collateral Order and ducks its responsibilities of a Chapter 11 Debtor the case must be put into control of an independent third-party fiduciary. While Avonwood Credit preferred that the automatic stay be terminated and the case get sent back to the underlying foreclosure action to resolve what in reality is a two-party dispute, at this time Avonwood Credit cannot wait any longer for an independent fiduciary to be appointed to protect the Property[1] and estate.

## BACKGROUND

2.On March 21, 2025, Avon Place LLC (the "Debtor") filed its voluntary petition for relief before this Court.

3.On April 2, 2025, Avonwood Credit filed its motion for relief from the automatic stay (the "Stay Relief Motion") [Docket No. 12].

4.On April 4, 2025, the Debtor filed its motion for use of cash collateral (the "Cash Collateral Motion") [Docket No. 20].

5.On April 23, 2025, Avonwood Credit filed its objection to the Cash Collateral Motion (the "Cash Collateral Objection") [Docket No. 30].

---

[1] The Property is 44, 46, 47 & 48 Avonwood Road, in the Town of Avon, County of Hartford and State of Connecticut.

6. On April 30 and May 1, 2025 the Court held a hearing on the Stay Relief Motion and Cash Collateral Motion.

7. On May 2, 2025, the Court entered a negotiated form of order approving the use of cash collateral and granting Avonwood Credit adequate protection (the "Cash Collateral Order") [Docket No. 49].

8. Among the protections granted to Avonwood Credit were requirements that the Debtor: (a) "maintain the cash it collects over and above its expenditures in its debtor in possession account pending further order of this Court"; and (b) "deliver a monthly report on the twentieth day of each month showing, in each case by line item, the actual cash disbursements and income for the prior month, together with a detailed explanation of all material variances…along with the Debtor's bank statements detailing all receipts and disbursements." See Cash Collateral Order at pp. 2, 4.

9. On May 21, 2025, Avonwood Credit formally notified the Debtor of Events of Default through the failures to make the required Adequate Protection Payment[2] and provide the Monthly Reporting. On May 22, 2025, the Debtor filed a Monthly Operating Report for the period ending April 30, 2025 [Docket Number 53] (the "MOR"). The MOR revealed no fewer than three material deficiencies and non-disclosures: (1) the Debtor did not use its DIP account to operate its business even though that account has been open since April 8, 2025; (2) the MOR did not document the account(s) where the Debtor is reporting the rental income shown on its unverified "Income Statement" deposited, or detail any disbursements the Debtor has made since the Petition Date; and (3) the MOR stated that the Debtor--- contrary

---

[2] The Debtor cured the Adequate Protection Payment Event of Default by making the required payment on May 21, 2025.

to the testimony at this Court's hearing and at the 341 meeting----does not maintain property insurance.

10. As provided in the Cash Collateral Order, Avonwood Credit promptly informed the Debtor of the Events of Default and followed up with inquiries regarding the issues raised by the filing of the MOR.

11. On May 27, 2025, Avonwood Credit filed a letter [Docket No. 54] requesting an emergency hearing based on the issues raised above.[3]

12. On May 28, 2025, the Debtor filed an amended MOR (the "Amended MOR") [Docket No. 55] and letter with the Court [Docket No. 57] responding to the emergency hearing request. The Amended MOR only had two changes from the MOR. First, it stated that the Debtor did maintain property insurance. Second, it provided a one page unverified statement of cash receipts and disbursements. In the response letter the Debtor stated that the incorrect insurance box was checked due to "a clerical oversight". The Debtor also stated "the Debtor maintained proper oversight of receipts and disbursements, and no estate funds were misapplied".

13. However, when pressed to provide the bank statements documenting the receipts and for the month of April for which the Debtor's letter to the Court stated that they were maintaining "proper oversight" the CRO stated: "[t]he payments are run through a processing company where we do not have access to their bank accounts. That is the reason we cannot provide them. They provide us the reports which we sent to Mark and I believe to you." Attached as Exhibit 2 is a copy of the email from the Debtor's CRO.

---

[3] On May 29, 2025, a Deputy Clerk informed counsel that despite the Cash Collateral provision providing for an emergency hearing, a separate emergency motion was required to be filed. Avonwood Credit has determined that the filing of this Emergency Motion and the accompanying request to have it heard at the next scheduled hearing on June 11, 2025 was the best path forward.

4

14. Put another way, the information contained in the Amended MOR and response letter regarding receipts and disbursements for April **was not and cannot** be verified by the CRO without relying on what he was told by *a company owned and controlled by the Debtor's principal*.

15. Avonwood Credit's concerns are exacerbated by the fact that the Budget approved by the Court anticipated monthly rent receipts of $273,000. The collections reported by the insider controlled non-debtor management company is over $80,000 less than that amount at $192,714.86. This equates to an understatement of collections by nearly 30% of Budget. The Debtor has not provided a variance report or a "a detailed explanation of all material variances" as required by the Cash Collateral Order. Despite the Debtor's professionals assurances, without a review of the bank statements for the account holding the Debtor's rental deposits, no one is in a position to testify or certify to the Court how much cash the Debtor actually received in April or if the non-debtor management company is wrongfully reporting cash receipts and retaining property of the estate.[4]

## JURISDICTION

16. The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in the Motion include sections 105(a) and 1112(b) of the Bankruptcy Code, and Bankruptcy Rules 1017(f) and 9014.

---

[4] Since the Debtor did not pay debt service for approximately ten months preceding the Petition Date and entered this case with effectively zero cash in its account (see Amended MOR), the only logical conclusion is that the non-debtor management company has stolen property of the estate prior to the Petition Date. Avonwood Credit envisions that the Chapter 7 Trustee would conduct a fulsome investigation into the management of the Debtor and the rental income being diverted from the Debtor's prepetition operating account into non-debtor management company accounts.

## **DEBTOR'S CHAPTER 11 CASE SHOULD BE IMMEDIATELY CONVERTED TO A CHAPTER 7 PROCEEDING**

17. Section 1112(b)(1) of the Bankruptcy Code provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b)(1). The language of section 1112(b)(1) is mandatory such that, if cause is found, the Court must convert or dismiss the case unless unusual circumstances can be established that demonstrate the conversion or dismissal is not in the best interests of the estate. 11 U.S.C. § 1112(b)(1) and (b)(2); *see In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011); *In re Acme Cake Co., Inc.*, 495 B.R. 212, 222 (Bankr. E.D.N.Y. 2010). "Bankruptcy courts have broad discretion in determining whether cause exists for conversion or dismissal under section 1112(b)." *In re Red Bull Taxi Inc.*, 2017 Bankr. Lexis 1209 *5 (Bankr. S.D.N.Y. May 3, 2017)(citations omitted).

18. Section 1112(b)(4) lists examples of "cause," but it is well recognized that the list contained in section 1112(b)(4) is "illustrative, not exhaustive." *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997); *see Babayoff*, 445 B.R. at 76. As the House Report accompanying the Bankruptcy Act of 1978 explained, "[t]he Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.R.REP.NO. 95-595, 95th Cong., 1st Sess. at 405–06 (1978). The statute reflects Congress' determination that a case should not be permitted to linger in Chapter 11 when there are grounds for conversion. *See In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 132 (S.D.N.Y. Bankr. 2009) (citing 7 Collier on Bankruptcy, ¶ 1112.04 (15th ed. rev. 2005)).

19. Here, "cause" as set forth in Section 1112(b)(4)(E) ("failure to comply with order of the Court"), is clearly established by the Debtor's failure to comply with the Cash Collateral Order. The Cash Collateral Order required: (a) the Debtor's receipts to be deposited into the DIP account, (b) the Debtor provide Avonwood Credit with "bank statements detailing all receipts and disbursements" and (c) the Debtor provide a variance report with "a detailed explanation of all material variances". The Debtor plainly was in breach of these requirements at the time the Cash Collateral Order was negotiated and entered and despite assurances on the record at the prior hearing, the Debtor is unable to provide Avonwood Credit with the information promised. Simply put, the failure to comply with the Cash Collateral Order constitutes cause mandating conversion to Chapter 7.

20. "Cause" also exists as set forth in Section 1112(b)(4)(A) ("substantial or continuing loss or diminution to the estate"). The Budget to the Cash Collateral Order showed a net cash flow for the entire 13 week budget period of $23,418.73. Taking the Debtor at their word, they missed the Budgeted receipts for April by $80,000 and likely missed May by a similar amount.[5] Based on the Debtor's cash it is impossible for them to make all the budgeted payments which are necessary to preserve the Property. If the Property is not being preserved in addition to a lack of adequate protection to Avonwood Credit (which is grounds for stay relief – and Avonwood Credit expressly reserves its right to prosecute its Stay Relief Motion) that will cause a significant diminution to the estate especially considering that the water, sewer and other taxes accrue interest at 18%. The Debtor has not explained if or how they will adjust the Budget, but neglecting the required payments to maintain the Property

---

[5] If they didn't miss the budgeted receipts for May that reinforces Avonwood Credit's concern that estate assets were stolen in April.

will cause significant administrative expenses to accrue every month which erodes the value of the estate and constitutes "cause" for conversion.

21.     Finally, "cause" also exists as set forth in Section 1112(b)(4)(B) ("gross mismanagement of the estate"). In the event the Debtor can substantiate that gross receipts were $80,000 less than budgeted, and such discrepancy is not the result of theft, then the actual receipts coming in 30% lower than projection is evidence of gross mismanagement of the estate. While there may be potential explanations for the Budget miss, the Debtor's, despite their obligations, have not provided a coherent explanation. Moreover, the Debtor has not provided Avonwood Credit with adequate documentation evidencing a renewal of Property insurance (which expired at 12:01 am this morning) forcing Avonwood Credit to purchase its own forced-placement policy. Avonwood Credit submits that missing the Budget projection for receipts and the failure to adequately document insurance coverage protecting Avonwood Credit evidences gross mismanagement and are additional grounds constituting "cause" mandating conversion.

## NO PRIOR REQUEST

**22.**     No previous application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, for the foregoing reasons, Avonwood Credit respectfully requests that this Court grant its Motion converting the Debtor's case from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code, and granting such other relief as may be proper.

Dated: New York, New York
       May 30, 2025

**THOMPSON COBURN LLP**

By: */s/ Joseph Orbach*
    Steven J. Mandelsberg
    Joseph Orbach
    488 Madison Avenue
    New York, NY 10022
    Telephone: 212-478-7200
    Fax: 212-478-7400
    smandelsberg@thompsoncoburn.com
    jorbach@thompsoncoburn.com

    *Attorneys for 44 Avonwood Road Credit LLC*