UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
IN RE                                                    Chapter 11

    AVON PLACE LLC,                         Case No. 25-41368 (JMM)


                              Debtor.
---------------------------------------------------------x
AVON PLACE LLC,

                              Plaintiff,

                              v.                      Adv. Proc. 25-_____ (   )

44 AVONWOOD ROAD CREDIT LLC,

                              Defendant.
---------------------------------------------------------x

## COMPLAINT

Plaintiff, Avon Place LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 case ("*Debtor*"), by way of complaint against defendant, 44 Avonwood Road Credit LLC ("*Avonwood Credit*"), alleges and states as follows:

## THE PARTIES

1. The Debtor is a Connecticut limited liability company formed in 2022 that maintains a principal place of business at 710 Avenue L, Brooklyn, New York 11230. The Debtor filed a voluntary petition for relief under Chapter 11 on March 21, 2025.

2. Upon information belief, Avonwood Credit is a Delaware limited liability company formed on or around January 29, 2025, that maintains a principal place of business at 200 Pemberwick Road, Greenwich, Connecticut 06831.

3. Upon further information and belief, Avonwood Credit's member is 44 Avonwood Road JV LLC, which maintains the same principal place of business. Upon further information

and belief, Avonwood Credit's ultimate principal is Kyle O'Hehir, who is a vocal social media personality. Avonwood Credit's business email address is listed with the Secretary of State of Connecticut as kyle@constitutionmgmt.com.

4. Mr. Rudich, the non-debtor, is an individual currently residing in Brooklyn, New York. Mr. Rudich is the Debtor's sole member and its manager. He is also the guarantor of certain loans made by Bankwell Bank to the Debtor that are at issue in both the underlying bankruptcy action and a pending Connecticut state court action.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, as this matter is related to a Chapter 11 proceeding. In addition, this matter involves matters concerning the effective and efficient administration of a bankruptcy estate and the modification (via extension) of an automatic stay. 28 U.S.C. § 157(b)(2)(A), (G), & (O).

6. Venue is proper as in this Judicial District under 28 U.S.C. § 1408.

7. Personal jurisdiction can be properly exercised by this Court over Avonwood Credit as it has already consented to this Court's authority by filing motions in the underlying bankruptcy proceeding. The Debtor consents to the jurisdiction of this Court, as does Mr. Rudich.

## FACTUAL ALLEGATIONS

8. The Debtor acquired one hundred and eighty (180) condominium units at the property known as Avon Place Condominiums and located at 44, 46, 47, and 48 Avonwood Road, Avon, Connecticut 06001, which is about 96% of the units in the building complex (the units owned by the Debtor shall hereinafter be referred to as the "*Property*").

9. Sixty-two (62) units are located at 44, 47, and 48 Avon Road, and forty-six (46) units at 46 Avon Road. One hundred and sixty-two (162) units were purchased in or around

September/October 2022 for $33,750,000, and the additional sixteen (16) units were purchased from individual sellers sporadically since then for the collective sum of $2,709,500.

10. In September 2022, the Debtor entered into two loans totaling about $28 million, which were originally issued by Bankwell Bank and are secured by the Properties and limited personal guarantees executed by Mr. Rudich (hereinafter, the "*Loans*").

11. The documents memorializing, evidencing, and/or securing the Loans include: (i) a Promissory Noted dated September 30, 2022 in the principal amount of $25,312,500; (ii) a Non-Revolving Line of Credit Note dated October 21, 2022 in the principal amount of $2,687,500; (iii) two Limited Guaranty and Indemnification Agreements dated September 30, 2022 and October 21, 2022 (both of which were executed by Mr. Rudich); and (iv) two mortgages (collectively, the "*Loan Documents*").

12. The Properties suffered fire damage in one of the buildings and certain units. The Debtor received an insurance payment of $474,735.89, which was endorsed over to the original lender (i.e., Bankwell Bank) for debt service. Bankwell Bank deposited the funds and confirmed to the Debtor that the funds were being applied to the outstanding indebtedness.

13. The Loans were always, and have always been, in good standing. In fact, in June 2024, Bankwell Bank confirmed that payments due under the loan documents memorializing and evidencing the Loans were current.

14. On January 30, 2025, Bankwell Bank allegedly executed an Assignment of Mortgages and Other Instruments to Avonwood Credit, which was recorded in the Avon Land Records on February 3, 2025. While the assignment appears to have been properly executed, the timing of this transaction raises serious concerns.

15. The suspicious sequence of events is telling: (i) the Debtor's property suffers fire damage; (ii) the Debtor receives and endorses an insurance payment of over $400,000 to Bankwell Bank; (iii) immediately thereafter, Avonwood Credit acquires the Loans; and (iv) without providing any notice to the Debtor of the assignment or any default notice, Avonwood Credit commences a foreclosure action in Connecticut state court demanding the appointment of a receiver, payment in full, and a deficiency judgment.

16. This timing strongly suggests that Avonwood Credit acquired the Loans with the specific intent to manufacture a default by misapplying the insurance payment and immediately pursuing foreclosure, consistent with its business model.

17. The Debtor's investigation into the background of Kyle O'Hehir, Avonwood Credit's principal, revealed that Mr. O'Hehir is a real estate investor who built a business model focused on acquiring distressed loans at a discount and aggressively enforcing technical defaults to maximize returns.

18. In a publicly available recorded interview, Mr. O'Hehir described his business approach as capitalizing on "technical defaults" given the "reluctance of traditional banks to take a hard line with borrowers." According to Mr. O'Hehir, there is money to be made by taking advantage of technical defaults as "banks don't want to be mean to the borrower."

19. In other words, by rejecting lender standards of good faith and fair dealing, Mr. O'Hehir boasted that "there's an opportunity in the market for a bad guy." When it comes to dealing with mortgagors, Mr. O'Hehir unabashedly markets himself as that "bad guy."

20. This evidence provides critical context for understanding Avonwood Credit's actions in this case, particularly its apparent misapplication of the insurance payment to

4

manufacture a default immediately after acquiring the Loans, its prosecution of a state court action against Mr. Rudich, and its interactions with the tenants at the Property.

21. Indeed, as aforesaid, before even notifying the Debtor of the assignment, let alone giving a default notice, on February 27, 2025, Avonwood Credit commenced a foreclosure and deficiency action in the Connecticut Superior Court at Hartford that remains pending under the caption *44 Avonwood Road Credit LLC v. Avon Place LLC, et al*., Docket No. HHD-CV25-6199961-S (the "*Guaranty Action*").

22. In the Guaranty Action, Avonwood Credit filed a motion seeking prejudgment attachment on Mr. Rudich's assets, a matter of significant personal importance to Mr. Rudich and one that demands, like the foregoing motion, his time and attention. An evidentiary hearing on that motion has been scheduled for August 6, 2025, and Mr. Rudich's opposition to same is due on or before June 30, 2025.

23. Avonwood Credit also filed a motion for partial summary judgment that seeks a judgment declaring and adjudging Mr. Rudich liable for a deficiency judgment under the terms of the Loan Documents, which is due to be opposed on June 18, 2025.

24. These motions, and the Guaranty Action in general, directly impairs the Debtor's reorganization and plan confirmation efforts.

25. As detailed in the Debtor's April 4, 2025 Disclosure Statement and Plan of Reorganization (the "*Plan*"), the Plan proposes to pay all creditors in full on the Effective Date through a combination of refinancing proceeds and capital contributions by equity holders.

26. More specifically, the Debtor's Plan is structured to maximize creditor recoveries through a two-step process. First, the Debtor will seek to reinstate its senior secured debt under Section 1124 of the Bankruptcy Code by curing defaults and restoring the Loans to their original

terms, potentially avoiding a large payment of default interest that could be used to pay other creditors, following which the Debtor intends to pay all creditors in full, with interest.

27. Litigation against Mr. Rudich, including prejudgment attachment efforts, threatens both phases of this strategy by impairing Mr. Rudich's ability to fund reinstatement and by destabilizing his ability to support sale efforts or to support post-reinstatement refinancing (which may require a personal guarantee).

28. At present, Mr. Rudich is negotiating a letter of intent for plan financing from Trevian Capital for a $31.3 million loan. The Guaranty Action is not only unnecessary, it may obstruct the Debtor's plan.

29. Furthermore, the pending motions will require the state court to consider factual and legal findings concerning the Loan Documents that will, if Avonwood Credit's position is found to be compelling, prejudicially impact the Debtor's rights and defenses to the claims asserted in the Guaranty Action, including, but not limited to, defenses contesting the existence of any default and Avonwood Credit's standing, among others.

30. This leaves the Debtor in the unenviable position of either disavowing the "breathing room" accorded to it by the automatic stay or hoping its rights remain unimpaired by the progression of the Guaranty Action simultaneously with its reorganizational efforts.

31. Avonwood Credit also seeks discovery related to the Debtor and its operations, through requests to admit and document demands, that could later be used against the Debtor. Avonwood Credit has not withdrawn these discovery demands despite the fact that a bankruptcy was commenced and the demands directly implicate the Debtor.

32. In fact, Mr. Rudich responded to the requests to admit by asserting objections to any request pertaining to the Debtor based on the automatic stay, which Avonwood Credit is challenging.

33. In a phone call to counsel in the Guaranty Action, Avonwood Credit's state court counsel advised that Avonwood Credit intends to proceed against Mr. Rudich regardless of the Debtor's pending Chapter 11 proceeding.

34. Indeed, consistent with its "bad guy" business model, Avonwood Credit rejects any request for an extension to respond. Similarly, Avonwood Credit has continued to pursue discovery against Bankwell post-petition without notice to the Debtor or stay relief.

## FIRST COUNT
### INJUNCTIVE RELIEF UNDER SECTION §§ 105(a) and 362(a)

35. The Debtor repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

36. The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of – (1) the commencement or continuation[] . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under[]" the Bankruptcy Code. 11 U.S.C. § 362(a)(1).

37. This stay also applies to:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

*Id.* at § 362(a)(3)-(6).

38.   Under 11 U.S.C. § 105(a), a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.*

39.   This ability and authority to order necessary relief includes, without limitation, the authority to issue injunctions. Courts in the Second Circuit routinely extend the stay to non-debtor third parties when litigation would interfere with estate administration or frustrate the reorganization process. *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003); *In re Calpine Corp.*, 365 B.R. 401 (S.D.N.Y. 2007).

40.   The Guaranty Action is based on the same operative facts as the Debtor's bankruptcy, is being used to pressure estate insiders and affect the reorganization process, and will subject the Debtor to a risk that collateral estoppel will operate as a bar to its litigation of key facts, issues, and evidence.

41.   Furthermore, if allowed to proceed, the Guaranty Action would: (a) divert a key stakeholder from critical funding and reorganization tasks; (b) create a risk of issue preclusion in future bankruptcy proceedings; (c) undermine the protections afforded by the automatic stay; and (d) deprive the estate of its only viable source of plan funding through prejudgment attachment.

42.   The harm to Avonwood Credit by the issuance of any injunction is non-existent and, even if it does exist, is outweighed by the harm to the Debtor in the absence of any injunction.

43.   As aforesaid, the Debtor will be irreparably harmed and its ability to reorganize and/or defend against Avonwood Credit's claims compromised.

44.   In contrast, enjoining the Guaranty Action will not diminish any potential recovery Avonwood Credit could obtain (notwithstanding the fact it is not entitled to any judgment or recovery). It likewise serves the public's interest.

45. For the same reasons, the Debtor is entitled to a temporary restraining order, without the presentment of any security, enjoining Avonwood Credit's pursuit of the Guaranty Action as against Mr. Rudich while any preliminary injunction application is pending.

## SECOND COUNT
## PRELIMINARY INJUNCTIVE RELIEF UNDER BANKRUPTCY RULE 7065

46. The Debtor repeats and realleges the allegations contained in the preceding paragraphs as if stated fully herein.

47. To obtain a preliminary injunction under Rule 65 (as incorporated by Bankruptcy Rule 7065), a debtor must demonstrate: (a) likelihood of success on the merits; (b) irreparable harm absent relief; (c) balance of hardships favoring the movant; and (d) public interest is not disserved.

48. The Debtor is likely to succeed in showing that the Guaranty Action materially interferes with the bankruptcy case and violates or circumvents the automatic stay under Sections 362(a)(1) and (3).

49. The Debtor's Plan is feasible, as shown in its projections and liquidation analysis, but is contingent on equity contributions that are currently at risk due to the Guaranty Action.

50. Second Circuit precedent supports injunctive relief in these circumstances. *See, e.g.*, *Queenie*, 321 F.3d at 287.

51. Without injunctive relief, the Guaranty Action will impair the Debtor's ability to confirm the Plan.

52. The Plan reflects that Mr. Rudich's financial participation is critical to satisfying all claims in full. Subjecting him to a parallel multi-million dollar litigation while plan funding is being finalized would jeopardize the Debtor's reorganization and irreparably harm the estate.

53. The threat of prejudgment attachment magnifies this harm: even before judgment is entered, Mr. Rudich's ability to raise or contribute capital could be frozen. He may be unable to refinance, pledge assets, or serve as a financial backstop, precisely when the Debtor is finalizing plan funding.

54. These impacts are not hypothetical—they go to the heart of the Debtor's ability to reorganize, satisfy creditors in full, and preserve going-concern value.

55. The balance of hardships tips sharply in the Debtor's favor. Avonwood Credit is will not be harmed by a stay while temporarily staying litigation against Mr. Rudich on any deficiency is narrowly tailored to merely preserve the status quo.

56. The public interest strongly favors the integrity of the bankruptcy process and ensuring the Debtor has a fair opportunity to reorganize.

WHEREFORE, the Debtor requests the entry of an Order:

(a) Issuing a temporary restraining order and preliminary injunction enjoining: (i) the Guaranty Action as against Mr. Rudich; and (ii) Avonwood Credit from taking any further action in the Guaranty Action or filing any further claims against Mr. Rudich based on or connected to the Loans or the Properties for the duration of the Chapter 11 case or as otherwise appropriate;

(b) Extending the automatic stay under 11 U.S.C. § 362(a) to any actions as against Mr. Rudich, including, without limitation, any commenced by Avonwood Credit; and

     (c) Granting any such other or further relief as this Court may deem just and proper.

Dated: New York, New York
    June 10, 2025

         **BACKENROTH FRANKEL & KRINSKY, LLP**
         **Attorneys for the Debtor**

        By: s/Mark Frankel
          488 Madison Avenue
          New York, New York 10022
          (212) 593-1100