Steven J. Mandelsberg, Esq.
Joseph Orbach, Esq.
**THOMPSON COBURN LLP**
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
E-mail: smandelsberg@thompsoncoburn.com
jorbach@thompsoncoburn.com

*Attorneys for Secured Creditor 44 Avonwood Road Credit LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

AVON PLACE LLC,

                Debtor.
-------------------------------------------------------------X

Chapter 11

Case No. 25-41368 (JMM)

**SECURED CREDITOR AVONWOOD ROAD CREDIT LLC'S MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENTS AND FOR AN ADVERSE INFERENCE**

In accordance with the Court's *Pretrial Scheduling Order* (Docket No. 102) and the July 16, 2025 Status Conference, Secured Creditor 44 Avonwood Road Credit LLC ("Avonwood Credit") hereby submits this omnibus motion *in limine* to preclude Avon Place LLC (the "Debtor") from offering certain evidence and for an adverse inference based on Debtor's unexcused and unjustified failure to produce documents during discovery and granting such other or further relief as the Court deems proper.[1]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms as in Avonwood Credit's Omnibus Response. *See* Dkt. No. 110.

## I. THE DEBTOR SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE QUESTIONING THE EXECUTION, VALIDITY OR ENFORCEABILITY OF THE BANKWELL ASSIGNMENT OF THE LOAN TO AVONWOOD CREDIT

1. Avonwood Credit seeks to exclude any evidence, and any argument based on such evidence, challenging the proper execution, validity, or enforceability of the Bankwell Assignment based on the Debtor's prior explicit and implicit admissions and the Loan Documents' express terms.

2. "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial ...." *Doe v. Lima*, No. 14 CIV. 2953 (PAE), 2020 WL 4731418, at *3 (S.D.N.Y. Aug. 14, 2020) (citation omitted).

3. Pursuant to Federal Rule of Evidence 401, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." Fed. R. Evid. 401.

4. Rule 403, especially relevant here, authorizes a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: *unfair prejudice*, confusing the issues, misleading the jury, *undue delay, wasting time*, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).

5. On August 12, 2025, pursuant to this Court's Pretrial Scheduling Order, the parties submitted a joint Stipulation of Undisputed Facts. *See* Dkt. No. 111. Despite stipulating that "Bankwell assigned all of its rights in the Loan Documents to [the Secured Creditor] pursuant to the [Bankwell Assignment]" and that such assignment was properly filed and recorded (*see* Dkt. No. 111, ¶¶24-25), Debtor unjustifiably refused to stipulate that

the Bankwell Assignment was properly executed, and is valid and enforceable. *See* Dkt. No. 112, ¶1. Its purported justification for such refusal, offered in a comment to Avonwood Credit's proposed Stipulation submitted to the Debtor on August 5, consisted of the comment that the "documents [did] not necessarily prove that." But that position is squarely contradicted by not only admittedly executed Loan Documents and their express terms, but by applicable Connecticut law and the Debtor's own admissions in its Objection to Avonwood Credit's claim.

6.     *First*, Debtor's own submissions to this Court establish that there can be no genuine factual issue that the Bankwell Assignment of the Loan to Avonwood Credit was properly executed and is valid and enforceable. Debtor's Objection to Avonwood Credit's Claim conceded that Bankwell "executed the [Bankwell Assignment] to [the Secured Creditor]" and "the assignment appears to have been properly executed." *See* Dkt. No. 71, ¶6 and Dkt. No. 72, ¶6.

7.     *Second*, Debtor's Adversary Complaint seeking to enjoin the Connecticut Guaranty Action also admits that "the assignment appears to have been properly executed." *See* Dkt. 74, ¶14.

8.     *Third*, the Debtor's conduct and allegations against the Secured Creditor confirm that the Debtor, as well as Bankwell, agree that the Bankwell Assignment was properly executed, valid and enforceable. The Debtor baselessly asserts that the timing and execution of the Bankwell Assignment was orchestrated in bad faith for the purpose of capitalizing on technical defaults and enforcing harsh remedies. *See* Dkt. 108, ¶¶49-51. Yet these allegations are irrelevant to the question of the Bankwell Assignment's validity or enforceability because, if they had any meritorious basis, the Debtor would have disputed the

entire claim, instead of acknowledging a $27 million principal Loan amount liability. Nor, if the Loan Assignment were in any respects deficient, would the Debtor be quibbling about which interest rate—default or non-default—should apply.

9.     *Fourth,* any claim that the Bankwell Assignment was improper because the Debtor was not provided advance notice of the Assignment is refuted by the Loan Documents' absence of any such provision and of the inclusion of a provision that makes the Loan Documents binding upon successors and assigns. (*See* Trial Exhibit ["tr. Ex."] 1, ¶18; Tr. Ex. 2, ¶17; Tr. Ex. 3, ¶5.1(f); Tr. Ex. 4, ¶5.1(f)). Nor does Connecticut law, which governs the Loan Documents (*see, e.g.,* Tr. Ex. 1, ¶14; Tr. Ex. 3¶5.1(f); Tr. Ex. 5, ¶7), support any theory that the Loan was not freely assignable, reflecting a well-established industry practice where assignments are routinely made without prior notice to borrowers. *See generally Southbridge Assocs., LLC v. Garofalo*, 53 Conn.App. 11, 728 A.2d 1114 (1999) (declining to find a breach of good faith and fair dealing when the original mortgagee sold its mortgage to a third party).

10.    *Fifth*, allowing Defendants to challenge the validity of the Bankwell Assignment on the eve of trial after previously admitting as much, while also stonewalling discovery, would be highly prejudicial to Avonwood Credit, which has relied on these prior admissions in pursuit of its claim. Not once during this proceeding, or in the pre-petition Connecticut foreclosure action, did the Debtor contest Avonwood Credit's ownership of the Mortgages or Notes, thereby "import[ing] *prima facie* that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity." *Hartford Fed. Sav. & Loan Assoc. v. Tucker*, 196 Conn. 172, 180, 491 A.2d 1084 (1985).

11. For all of these reasons, the Debtor should not be permitted at trial to present evidence that casts doubt on the existence and proper execution of the Bankwell Assignment, or in any way suggests expressly or otherwise, that there was not a valid and enforceable assignment of rights from Bankwell to Avonwood Credit. *In re Decade, S.A.C., LLC*, 625 B.R. 616, 630 (Bankr. D. Del. 2021) (granting a motion in limine seeking to preclude any evidence, testimony, or argument that that an agreement was unenforceable based on, among other things, prior admissions).

## II. THE COURT SHOULD PRECLUDE THE DEBTOR FROM INTRODUCING EVIDENCE NOT PREVIOUSLY PRODUCED, AND DRAW AN ADVERSE INFERENCE AGAINST THE DEBTOR, BECAUSE OF ITS UNEXCUSED AND UNJUSTIFIED DISCOVERY FAILURES.

12. Avonwood Credit (a) seeks to preclude the Debtor from introducing any document, writing or other tangible item of evidence, including oral testimony about such document, writing or other tangible item of evidence, in support of its claims or defenses pertaining to its property taxes default, which have not been properly produced during discovery, and (b) asks the Court to draw an adverse inference against the Debtor pursuant to Rule 37 of the Federal Rules of Civil Procedure, made applicable by Rule 7037 of the Federal Rules of Bankruptcy Procedure.

13. The Debtor has consistently and willfully failed to fulfill its discovery obligations. Even though it received Avonwood Credit's First Request for Production of Documents ("First Request") dated May 2, 2025, and even though the Court's July 22, 2025 Pretrial Discovery Order required the complete production of documents, the Debtor has inexcusably failed to produce specifically requested and clearly relevant documents.

14. This failure prompted Avonwood Credit's Motion to Compel (Docket No. 75) and counsel's July 31, 2025 letter to the Court (*see* Docket No. 106) about the Debtor's

discovery lapses. The Debtor never responded to this letter and otherwise wholly failed to comply with the Court's Pretrial Scheduling Order. Indeed, to date, it has failed to produce even a *single* email in response to *any* of Avonwood Credit's discovery requests.

15. Instead, the Debtor's production amounted to thirteen PDFs – six of which were already publicly available on the docket of this case. *See* Dkt. No. 94, ¶2. Its production completely failed to respond, or produce any documents responsive, to Avonwood Credit's requests for documents related to: (i) the payments to insiders in the year prior to bankruptcy; (ii) insurance claims and proceeds; (iii) receipts and expenditures from June 1, 2024 through the Petition Date; (iv) the expenditures of the net proceeds received in November from the Altbanq loan; or (v) the valuation of the Property or proposals to purchase the Property. All this information which Avonwood Credit seeks is highly relevant to the Debtor's Objection to Avonwood Credit's Claim and to the proposed confirmation of the Amended Chapter 11 Plan. *Id*.

16. Moreover, absent from the production were any documents supporting the Debtor's uncorroborated assertion that Bankwell acknowledged the tax default was cured in June 2024. *See* Dkt. No. 110, ¶84. Not only has Debtor has not produced any evidence to this effect, but it chose at the last minute (on August 8) to withdraw subpoenas for depositions, scheduled for August 11, of two Bankwell representatives. *Id*. Nor has the Debtor furnished any documents or other information to corroborate its assertion that its property taxes were current in January 2025 when Avonwood took assignment of the Loan from Bankwell, or to refute town records which establish that the real estate taxes assessed October 1, 2024, which came due on January 1, 2025, remain unpaid. *Id*.

17. As a result of the Debtor's disregard of its discovery obligations, Avonwood Credit had to proceed with the July 31 deposition of Debtor's principal, Ahron Rudich, without the benefit of a meaningful production of documents that could have significantly undercut the Debtor's grounds for objecting to any part of Avonwood Credit's Claim.

18. As a result, Avonwood Credit must proceed to trial after being deprived of relevant document discovery and without receiving Mr, Rudich's signed deposition transcript or information that Mr. Rudich promised to provide on *twelve* different occasions. Without such information and with Mr. Rudich repeatedly deferring to others who supposedly were familiar with the subjects questioned (such as efforts to market or sell the Property, the Altbanq loan, collection of rental proceeds, or the terms of the Amended Plan), Mr. Rudich's virtual deposition—which was conducted via a phone from his car (thereby causing continual audio and video cutoffs), was not as productive as it might otherwise might have been.

19. Under applicable federal law, an adverse inference, which is equally appropriate where evidence has not been timely produced or not produced at all, is proper when the party seeking it shows: (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind;" and (3) that the missing evidence is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *In re Try the World, Inc.*, No. 18-11764 (JLG), 2025 WL 242233, at *8 (Bankr. S.D.N.Y. Jan. 17, 2025) (granting adverse inference where party failed to produce documents and rejecting argument that such an inference would "give rise to an improper windfall to the

Trustee" when defendant "itself has failed to produce the very documents that could prove or disapprove such a windfall.").

20. In determining whether a party has "a culpable state of mind," the Court need only find that the party acted with ordinary negligence. *Id*. "The party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed or unavailable evidence would have been of the nature alleged by the party affected" by its destruction or unavailability. I*n re Stillwater Asset Backed Offshore Fund Ltd.*, 2017 WL 1956848, at *8 (Bankr. S.D.N.Y. May 10, 2017) (internal brackets omitted) citing *Pension Comm. of U. of Montreal Pension Plan v. Banc of Am. Securities*, 685 F. Supp. 2d 456, 476 (S.D.N.Y. 2010) ("[t]he innocent party must also show that the evidence would have been helpful in proving its claims or defenses—*i.e.,* that the innocent party is prejudiced without that evidence."). Under Rule 37, a court "has wide discretion" in sanctioning a party for discovery abuses. *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

21. Given the Debtor's repeated and willful failure to comply with its discovery obligations—including its refusal to produce any communications with Bankwell specifically related to the status of real estate tax payments or its unsupported assertion that any tax default was cured—an adverse inference is warranted. Indeed, despite multiple requests and a court order, the Debtor failed to produce even a single email related to *any* of Avonwood Credit's requests. The Debtor's conduct, including its deficient document production, withdrawal of key depositions, and evasive testimony by its corporate designee, reflects its culpable state of mind and has prejudiced Avonwood Credit's ability to present its case.

22. Accordingly, Avonwood Credit respectfully submits that such discovery abuses (1) justify the adverse inference that all past due real estate taxes were not timely paid and

remain uncured and (2) warrant preclusion of evidence not previously produced related to the same. *See In re Stillwater Asset Backed Offshore Fund Ltd.*, 2017 WL 1956848, at *9 (finding it permissible for the court to impose an adverse inference "based simply on [defendant's] willfulness" in destroying documents).

Dated: New York, New York
August 14, 2025

**THOMPSON COBURN LLP**

By: */s/ Steven J. Mandelsberg*
Steven J. Mandelsberg
Joseph Orbach
488 Madison Avenue
New York, NY 10022
Telephone: 212-478-7200
Fax: 212-478-7400
smandelsberg@thompsoncoburn.com
jorbach@thompsoncoburn.com

*Attorneys for Secured Creditor 44 Avonwood Road*